UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MIS TRAINING INSTITUTE LLC, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 04-10538-RGS |
| INTERPACT, INC., | : |
| Defendant. | : |

## MOTION TO STAY PROCEEDINGS PENDING OUTCOME OF PLAINTIFF'S MOTION TO TRANSFER CASE PENDING IN ANOTHER JURISDICTION

Defendant Interpact, Inc. ("Interpact"), by and through its counsel, hereby moves the Court to stay these proceedings pending the outcome of a motion to transfer filed by Plaintiff MIS Training Institute LLC ("MIS") in the United States District Court for the Middle District of Florida. As grounds for this motion, Interpact states as follows:

1.    MIS filed the instant suit (the "Massachusetts Litigation") against Interpact seeking a declaration of non-infringement of Interpact's registered trademark, InfowarCon.

2.    Interpact filed suit in Circuit Court in and for Pinellas County, Florida. That state court suit was transferred to the United States District Court for the Middle District of Florida (the "Florida Litigation").

3.    On or about April 30, 2004, MIS filed in the Florida Litigation a *Motion to Transfer Action to District of Massachusetts*, along with a memorandum of law and two declarations, of Linda Burton and Robert A. Bertsche.

True and accurate copies of that motion and related papers are attached
hereto as **Exhibit A**.

4.     Interpact intends to oppose MIS's *Motion to Transfer*. Interpact's
opposition is due on or about May 10, 2004.

5.     Interpact expects that the District Court in the Florida Litigation will rule
expeditiously on MIS's *Motion to Transfer*.

6.     In the interest of judicial economy and to preserve the resources of the
parties, the Massachusetts Litigation should be stayed until the *Motion to
Transfer* in the Florida Litigation has been resolved. The outcome of that
motion directly impacts the scope of this Massachusetts Litigation.

7.     The granting of this motion will not unfairly delay the disposition of this
case and will not unduly prejudice either party.

WHEREFORE, for the foregoing reasons, Interpact respectfully requests that this
Court stay this Massachusetts Litigation pending resolution of MIS's motion to transfer
in the Florida Litigation.

Respectfully submitted,

Dated: May 4, 2004

Jason W. Morgan (BBO #633802)
Drohan, Hughes, Hoffman & Tocchio, P.C.
175 Derby Street, Suite 30
Hingham, MA  02043
(781) 749-7200

-2-

## CERTIFICATE OF SERVICE

I, Jason W. Morgan, hereby certify that, on May, 4, 2004, I served a true and correct copy of the foregoing, by first class mail, to counsel for Plaintiff, Robert A. Bertsche, Esq., Prince, Lobel, Glovsky & Tye LLP, 585 Commercial Street, Boston, MA 02109.

Jason W. Morgan

## LOCAL RULE 7.1(A)(2) CERTIFICATION OF COUNSEL

I, Jason W. Morgan, hereby certify that, on May, 4, 2004, Interpact's Florida-based counsel, Terrence S. Buchert, and I called and left a voice-mail message for MIS's counsel, Robert A. Bertsche, Esq., in a good faith attempt to discuss the nature of this motion and to narrow the issues presented herein.

Jason W. Morgan

# EXHIBIT A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

INTERPACT, INC.,

Plaintiff,

v.                                          C.A. No. 8:04-CV-799-T-27MAP

MIS TRAINING INSTITUTE LLC,

Defendant.

## DEFENDANT MIS TRAINING'S MOTION TO TRANSFER ACTION TO DISTRICT OF MASSACHUSETTS

Defendant MIS Training Institute LLC ("MIS Training") moves, pursuant to 28 U.S.C. §1404(a), to transfer this action to the United States District Court for the District of Massachusetts, where a previously filed action between the same parties and involving the same or substantially similar issues (alleged trademark infringement of the name "InfowarCon") is pending. See MIS Training Institute LLC v. Interpact, Inc., C.A. No. 04-10538-RGS (D. Mass.) ("Massachusetts Action").

There is a strong presumption for allowing the transfer, because Massachusetts is the home state of MIS Training and the Massachusetts Action was commenced before this one. In addition, Massachusetts is a more convenient forum for the parties and witnesses, because the overwhelming majority of likely witnesses, as well as the vast majority of documents and other sources of proof, are located in Massachusetts.

In support of this motion, MIS Training relies on the Memorandum of Law in Support of Defendant MIS Training's Motion to Transfer" and the declarations of Linda Burton and Robert A. Bertsche, all filed herewith.

WHEREFORE, MIS Training moves that this Court transfer this action to the United States District Court for the District of Massachusetts. If, for any reason, this Court declines to transfer the case, MIS Training requests that this Court exercise its inherent powers to stay the instant action until such time as the Massachusetts Action is completed.

## CERTIFICATE OF CONFERENCE PURSUANT TO RULE 3.01

Counsel for Defendants and for Plaintiff have conferred regarding the relief sought herein and have been unable to agree.

Respectfully submitted,

MIS TRAINING INSTITUTE LLC

By its attorneys,

Andrew C. Greenberg
Florida Bar Number 996726
Marty J. Solomon
Florida Bar Number 0523151
CARLTON FIELDS, P.A.
One Harbour Place
777 South Harbour Island Drive (33602)
P.O. Box 3239
Tampa, Florida 33601-3239
Telephone: (813) 223-7000
Facsimile: (813) 229-4133

and

Robert A. Bertsche
Jeffrey A. Dretler
PRINCE LOBEL GLOVSKY & TYE, LLP

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

INTERPACT, INC.,

Plaintiff,

v.                                                     C.A. No. 8:04-CV-799-T-27MAP

MIS TRAINING INSTITUTE LLC,

Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MIS TRAINING'S MOTION TO TRANSFER

Defendant MIS Training Institute LLC ("MIS Training") submits this memorandum in support of its motion to transfer this action to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. §1404(a).

This case belongs in Massachusetts. A previously filed action between the same parties, involving the same or substantially similar issues, is already pending in Massachusetts. See MIS Training Institute LLC v. Interpact, Inc., C.A. No. 04-10538-RGS (D. Mass.) (the "Massachusetts Action").[1] As set out in detail in the declaration of MIS Training's president, Linda Burton, which is filed herewith, MIS Training is located in Massachusetts, and the parties' business relationship was centered there. The likely witnesses, relevant documents, and other sources of proof are located predominantly in Massachusetts. By contrast, this case has no connection to Florida beyond the fact

---

[1] A true and accurate copy of the Complaint in the Massachusetts Action is attached to this memorandum as Exhibit 1. For this Court's convenience, a copy of Interpact's Complaint in this Action is attached hereto as Exhibit 2.

that one of the parties, although a Delaware corporation, happens to be located in Pinellas County, and has brought a state-law claim in addition to its federal trademark action.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Interpact, Inc., ("Interpact") is a Delaware corporation with a principal place of business in Pinellas County, Florida. Defendant MIS Training Institute LLC is a Delaware limited liability company, with a principal place of business in Middlesex County, Massachusetts. Declaration of Linda Burton ("Burton Dec."), ¶ 2.[2]

This trademark dispute arises in the wake of an agreement (the "Agreement" or "InfowarCon Agreement"), entered into by the parties on or about December 3, 1997, to produce a series of educational seminars or conferences on the subject of information warfare.[3] The Agreement was for a term of five calendar years (1998, 1999, 2000, 2001, and 2002), with an option to renew for an additional five years upon mutual agreement. See Burton Dec., Ex. 4.

Pursuant to the Agreement, all of the conferences conducted were to be marketed under the title "InfowarCon." Interpact filed in 1998 to obtain federal trademark registration of the name InfowarCon, and it assigned to MIS Training the right to use the name. Under the terms of the Agreement, MIS Training paid to Interpact the sum of $25,000 upon signing the Agreement, and an additional $25,000 payable upon receipt from Interpact of certain materials relating to prior conferences sponsored by Interpact. The Agreement further provided that profits (and losses) of the InfowarCon conferences were to be allocated 80 percent to MIS Training, and 20 percent to Interpact. See MIS Training's Complaint in the Massachusetts Action, Ex. 1 hereto.

---

[2] The Burton Declaration is filed contemporaneously herewith. Exhibits to that Declaration are referenced herein as "Burton Dec., Ex. __."

[3] The Agreement was entered into by MIS Training Institute, Inc., a Massachusetts corporation, the predecessor in interest to the defendant, MIS Training Institute LLC. See Burton Dec., ¶ 2 & Ex. 4.

Pursuant to the InfowarCon Agreement, MIS Training produced and marketed conferences under the name InfowarCon in the United States and Europe. Conferences took place during each year of the Agreement, and were presented in cooperation with Interpact. Conferences were held in Washington, D.C. in September of 1998, 1999, 2000, 2001 and 2002, and in London in May, 1999 and June, 2000. Conference participants, vendors, and speakers came from all over the United States, as well as from Europe. Burton Dec., ¶ 9.

The InfowarCon Agreement contained an exclusivity clause which prohibited both MIS and Interpact during its five-year term from entering into "contractual agreements regarding this InfowarCon conference with other parties that would pose a competitive threat to either organization or to the conference." Burton Dec., Ex. 4. Notwithstanding this provision, on or about October 9, 2002, Interpact entered into an agreement with Reed Exhibitions, a division of Reed Elsevier Inc., to sell the InfowarCon conferences and to sponsor and promote InfowarCon conferences conducted by Reed Exhibitions. Upon information and belief, Reed Elsevier, Inc. is a Delaware corporation with a principal place of business in New York, New York. Burton Dec., ¶ 13.

Following the expiration of the term of the InfowarCon Agreement (which was not renewed), Interpact (in conjunction with Reed Exhibitions) and MIS Training each produced their own respective conferences relating to the subject of information warfare. Burton Dec., ¶ 14. Interpact/Reed Exhibitions marketed in 2003, and presented beginning September 30, 2003, a conference titled "InfowarCon." MIS Training produced a conference titled "The Forum on Information Warfare." Both conferences were held in Washington, D.C. Id.

By letter dated March 2, 2004, Interpact, by its counsel, wrote to MIS Training, alleging that MIS Training had engaged in, and was continuing to engage in, unlawful trademark

infringement under federal law, as well as other alleged violations of law. In the letter, Interpact threatened litigation "before March 21, 2004," and gave MIS Training 10 days to respond to a list of nine demands, one of which was that MIS Training pay $3,000,000.00 to Interpact. Burton Dec., ¶ 3 & Ex. 1.

On March 17, 2004, MIS Training filed suit in the United States District Court for the District of Massachusetts seeking a declaration that it had not committed trademark infringement. See Complaint in Massachusetts Action, Ex. 1 hereto. Two days later, on March 19, 2004, Interpact filed suit (as it had threatened to do) against MIS Training in the Circuit Court in and for Pinellas County, Florida, alleging trademark infringement, tortious interference with contractual relationship, and violation of Florida's Deceptive and Unfair Trade Practices Act ("DUTPA"), Florida Statutes §§ 501.201 *et seq.* On April 13, 2004, MIS Training removed that Florida state court action to this Court.

The allegations of Interpact's Complaint in this action focus only on MIS Training's alleged conduct *after* the expiration of the InfowarCon Agreement. See Ex. 2, ¶¶ 12-16. The Complaint does not allege, nor could it, that MIS Training conducted *any* activities in Florida which relate to this litigation. MIS Training is based in Massachusetts, and its activities were conducted predominantly in Massachusetts by Massachusetts-based employees. Burton Dec., ¶¶ 2, 10, 15. At least 12 of the possible 15 party witnesses in this case, employees of MIS Training, reside in Massachusetts; at least one non-party witness (a consultant of MIS Training) resides in New York; and several other non-party witnesses (employees of Reed Exhibitions) also presumably reside in New York, where Reed Exhibitions is based. Burton Dec., ¶¶ 9, 10, 16. The vast majority of documents and other sources of proof are also located in Massachusetts, where MIS Training is located. Id., ¶ 16.

- 4 -

## ARGUMENT

I.   **This Court Should Transfer This Case to Massachusetts, Where an Earlier-Filed Case Is Pending, and Where the Bulk of the Witnesses and Documents are Located.**

Pursuant to 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any district where it could have been brought for (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice." Eye Care International, Inc. v. Underhill, 119 F. Supp. 2d 1313, 1317 (M.D. Fla. 2000). "Section 1404 is the statutory codification of the common law doctrine of forum non conveniens." Id. (citing Tampa Bay Storm v. Arena Football League, Inc., 932 F. Supp. 281, 282 (M.D. Fla. 1996)). "The decision whether to transfer venue is within the discretion of the trial court." Eye Care International, Inc., 119 F. Supp. 2d at 1317 (citing Brown v. Connecticut Gen. Life Ins. Co., 934 F.2d 1193, 1197 (11th Cir. 1991)).

This Court has discretion to transfer this action to the District of Massachusetts because that is where the suit "might have been brought." 28 U.S.C. § 1404(a). The only defendant, MIS Training, resides in Massachusetts, and a substantial part of the events or omissions giving rise to Interpact's claim occurred in Massachusetts. See 28 U.S.C. § 1391(b) (venue is proper in federal question cases in a jurisdiction where any defendant resides, or where a substantial part of the events or omissions giving rise to the claim occurred).[4] The Court should exercise that discretion here, and should transfer this action to the District of Massachusetts, because that district is far more convenient for the parties and witnesses, and is the location of most of the sources of proof.

---

[4] Both this Court and the United States District Court for the District of Massachusetts have subject matter jurisdiction over the issues presented in Interpact's Complaint. As stated therein, Interpact seeks relief under the federal Lanham Act, 15 U.S.C. § 1051 *et seq.* Therefore, this Court has original (federal question) jurisdiction over this claim pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1121. This Court has supplemental jurisdiction over Interpact's state law claims pursuant to the provisions of 28 U.S.C. §1367(a).

> In evaluating the convenience and fairness of transfer under § 1404(a), the court must consider both the private interests of the parties and the public interest of the court. Private interests include (1) plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease of access to sources of proof in each forum, including the court's power to compel the appearance of unwilling witnesses at trial and the costs of obtaining the attendance of witnesses, convenience to the parties – specifically, their respective residences and abilities to bear the expense of trial in a particular forum. . . . . Public interest factors include the court's familiarity with applicable law and the desirability of resolving controversies in their locale.

Medi USA v. Jobst Institute, 791 F. Supp. 208, 210 (N.D. Ill. 1992) (citing 15 C. Wright &

A. Miller, Federal Practice §§ 3849-53 (1986)). Here, an analysis of the private and public

factors favors Massachusetts as the proper forum for this dispute.

### A.    Transfer to Massachusetts Is Proper Because a Prior-Filed Action Involving the Same Issues is Pending There.

#### 1.    Settled Law Establishes a Presumption Favoring Venue in the Forum of a First-Filed Action.

Where two actions are pending concurrently in two federal courts, there is a strong

presumption favoring the first-filed action. Jasper Corp. v. National Union Fire Ins., 1999 U.S. Dist.

LEXIS 15334, *13-14 (M.D. Fla. 1999); Nowak v. Tak How Investments, Ltd., 94 F.3d

708, 719 (1st Cir. 1996); Holmes Group, Inc. v. Hamilton Beach/Procter Silex, Inc., 249 F. Supp. 2d

12, 15 (D. Mass. 2002). See also Medi USA, 791 F. Supp. at 211 ("As a general proposition, cases

should be transferred to districts where related actions are pending") (citation omitted). "[T]he

primary purpose of the first-filed rule . . . is to conserve judicial resources and avoid conflicting

rulings." Jasper Corp., 1999 U.S. Dist. LEXIS 15334 at *13.

The presumption is particularly strong when the first-filed action is in the first-filed

plaintiff's home forum. See Kleinerman v. Luxtron Corp., 107 F. Supp. 2d 122, 125 (D. Mass.

2000) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981)). The presumption is equally

applicable to first-filed declaratory judgment actions. Jasper Corp., 1999 U.S. Dist. LEXIS 15334 at

*14. See also Holmes Group, Inc., 249 F. Supp. 2d at 15-16 ("where two identical actions are pending concurrently in two federal courts, the first-filed action is generally preferred, *even if it is a request for declaratory judgment*") (emphasis added) (citing Genetech, Inc. v. Eli Lilly and Co., 998 F.2d 931, 937 (Fed. Cir. 1993)); Biogen, Inc. v. Schering AG, 954 F. Supp. 391, 398 (D. Mass. 1996) (same).

The presumption operates in this case to favor venue in Massachusetts. On March 17, 2004, four days before this action was commenced, MIS Training filed an action in the United States District Court for the District of Massachusetts seeking a declaratory judgment that it had not committed trademark infringement by unlawfully using the name "InfowarCon." See Exhibit 1 hereto. Massachusetts is MIS Training's home forum. Burton Dec., ¶ 2. Interpact's principal, Winn Schwartau, was served on March 15, 2004, by hand, with a copy of the Summons and Complaint.[5] Two days later, on March 19, 2004, with full knowledge of the pending Massachusetts action, Interpact filed a redundant action in the Circuit Court in and for Pinellas County, Florida, alleging that MIS Training had committed trademark infringement by its unauthorized use of the name "InforwarCon." See Complaint (Count I).[6] In the instant case, MIS Training was the first to file its lawsuit, in its home forum. It is therefore entitled to the strong presumption that Massachusetts is the proper forum to resolve the trademark dispute between these parties.

### 2.    There Are No Compelling Circumstances To Rebut The First-Filed-Presumption.

The presence of "compelling circumstances" may sometimes rebut the first-filed presumption. Some courts have held that such "compelling circumstances" may exist as to a first-

---

[5] A true and accurate copy of the return of service in the Massachusetts Action is attached hereto as Exhibit 3.

[6] Interpact's Complaint (attached hereto as Ex. 2) also alleged two state-law causes of action, but they are completely derivative of the trademark infringement issue, as the only act alleged to be unlawful is MIS Training's alleged unauthorized use of the name "InfowarCon." See Ex. 2, Counts II & III.

filed declaratory judgment action where the declaratory plaintiff "(1) misleads the defendant into foregoing litigation in order to negotiate a settlement and then files suit or (2) reacts to a defendant's notice of imminent filing by 'literally springing to the courthouse the same day.'" Holmes Group, Inc., 249 F. Supp. at 15-16. This district, however, has not adopted that approach in prior cases. See Jasper Corp., 1999 U.S. Dist. LEXIS at *13 ("[e]ven where compelling circumstances are present, the first-filed action is preferred, even if it is declaratory, unless consideration of judicial and litigant economy, and the just effective disposition of disputes, require otherwise") (internal quotation omitted). Even if this district adopted such an approach, however, still transfer would be appropriate in this case, because it is recognized that where there is "no false implication that a party will refrain from litigation during ... negotiations, the first-filed presumption may remain intact." Veryfine Products, Inc. v. Phlo Corp., 124 F. Supp. 2d 16, 19 (D. Mass. 2000) (citing GT Plus, Ltd. v. Ja-Ru, Inc., 41 F. Supp. 2d 421, 425-427 (S.D.N.Y. 1998).

The first-filed presumption operates with full force here because there can be no suggestion of any misleading action taken by MIS Training. By letter dated March 2, 2004, Interpact asserted that it had suffered harm on account of MIS Training's allegedly unauthorized use of the name "INFOWARCON" [sic] and that by such alleged use, MIS Training had committed trademark infringement and other wrongs. Burton Dec., ¶ 3 & Ex. 1. Interpact's letter gave MIS Training 10 days to respond to a list of nine demands that included payment of a staggering $3,000,000.00 to Interpact, and indicated that unless its demands were met, "suit will be filed before March 21, 2004." Id.

In response to the letter, MIS Training, by its counsel, denied any infringement, and invited Interpact to provide documentation to support the allegations in the letter. (Declaration of Robert A. Bertsche ("Bertsche Dec."), ¶ 6.) Interpact, by its counsel, then forwarded certain materials to

counsel for MIS Training. Id. At no time did MIS Training indicate that it was engaged in settlement negotiations with Interpact, nor did it request that Interpact forestall suit, nor did it indicate to Interpact that MIS Training would forestall suit. Id., ¶ 7. In fact, at all times, as indicated in Interpact's letter, MIS Training was aware that Interpact could and would file suit on or before March 21. Id., ¶¶ 8, 9. Interpact did so; it filed suit on March 19, 2004. Id., ¶¶9.

On March 17, 2004, more than two weeks after receiving Interpact's letter, MIS Training filed its declaratory judgment action. Burton Dec., ¶ 4. MIS Training did not "spring to the courthouse" on the same day it received Interpact's letter. As such, there is no compelling or special circumstance to defeat the first-filed rule. See Kleinerman v. Luxtron Corp., 107 F. Supp. 2d. 122 (D. Mass. 2000) (no "special circumstances" where alleged patent infringer filed declaratory judgment action in home state, despite ongoing negotiations, when it realized litigation was inevitable); Medi U.S.A. L.P. v. Jobst Institute, Inc., 791 F. Supp. 208, 212 (N.D. Ill. 1992) (transferring patent infringement claim from Illinois to Ohio where first-filed patent infringement declaratory judgment action was already pending; three months of negotiations between the parties did not create "special circumstances"). Cf. GSI Lumonics, Inc. v. Biodiscovery, Inc., 112 F. Supp. 2d. 99, 105 (D. Mass. 2000) ("special circumstances" may exist where first-filer represented that it would not bring suit during negotiations).

**B.  Private Factors Point To Massachusetts as the Most Convenient Forum to Resolve the Parties' Dispute.**

In addition to considering where suit was filed first, a court deciding a motion to transfer is to consider "the convenience of the parties and witnesses, relative ease of access to sources of proof, availability of compulsory process for witnesses, location of relevant documents, financial ability to bear the cost of the change, and all other practical problems that make trial of the case easy, expeditious and inexpensive." Tampa Bay Storm, Inc. v. Arena Football League, Inc., 932 F. Supp.

- 9 -

281, 282 (M.D. Fla. 1996).  All of these factors weigh in favor of transferring this case to Massachusetts.

1.    **The Vast Majority of Witnesses Reside In Massachusetts.**

While it is too early in the litigation to identify all the potential witnesses in this case, it is clear that the overwhelming majority of likely witnesses reside in Massachusetts.

**Non-Party Witnesses.** Interpact alleges in its Complaint that it has suffered more than $3,000,000.00 in damages because of Reed Exhibitions' cancellation of a long-term agreement, allegedly due to the actions of MIS Training. Ex. 2, ¶ 19. Thus, it is likely that employees of Reed Exhibitions will be witnesses. Reed Exhibitions is located in New York City, and it is likely that its employees reside in or near New York. (Burton Dec., ¶ 12.) Even though neither Florida nor Massachusetts federal courts can issue compulsory process on New York citizens, it is more likely that these individuals would voluntarily appear at trial in Massachusetts than in Florida, due to the proximity and ease of travel between Boston and New York.

The focus of Interpact's Complaint is on MIS Training's actions following the termination of the InfowarCon Agreement. Ex. 2, ¶¶ 11-16. On these points, Anita Diamico, an outside consultant who helped with production of MIS Training's "Forum on Information Warfare" in 2003, will be a relevant witness. Ms. Diamico resides in New York. Burton Dec., ¶ 15.

**Party Witnesses.** MIS Training is in the business of marketing and conducting conferences and workshops on a wide variety of topics. Burton Dec., ¶ 2. MIS Training employs approximately 52 employees, 40 of whom are based in Massachusetts, and the rest in London and Asia. Id. As indicated in the InfowarCon Agreement, while MIS Training was to produce the conferences in conjunction with Interpact, MIS Training received 80% of the profits, and assumed 80% of the risk

of loss. Burton Dec., Ex. 4. MIS Training employees, in Massachusetts, performed approximately 90% of the work necessary to produce the conferences. Burton

Dec., ¶ 10. MIS Training produced the brochure and website for the conferences, booked the speakers, marketed the conferences, secured the venue, made vendor sales, and ran the conferences. Id. Virtually all direct mail to promote the InfowarCon Conferences was printed in and mailed from Massachusetts. Id. At least a dozen current or former MIS Training employees were intimately involved in this project, and even more employees assisted in some way. All of these employees reside in Massachusetts. Id.

For example, Michael Sobol, former Chairman and President, negotiated and signed the InfowarCon Agreement and participated in its implementation during his tenure (prior to 1999). Lois Jacobsen, former Chief Executive Officer, had responsibility for overseeing the production of the InfowarCon Conferences during her tenure (1999 through July, 2002). Linda Burton, current President and Chief Executive Officer, has knowledge of the performance of the Agreement from July, 2002 forward, as well as of MIS Training's activities following termination of the Agreement. Sharon Friedman, Sheri Garf, and Elisa Ufland were involved with marketing the conference under the InfowarCon Agreement. Pamela Bissett was the customer service manager; Adam Lennon worked with vendor sales and Gloria Simpson worked with attendee sales; Jean Hey was the Director of the Conference Group; and Rodrigo Vasquez was the director of information technology. Id. All of these employees, most (but not all) of whom are still employed by MIS Training, live in Massachusetts.

By contrast, there are very few witnesses from Florida. Interpact is a Delaware corporation with a principal place of business in Pinellas County, Florida. Complaint, ¶ 1. Upon information and belief, Interpact is operated out of the home of its principal, Winn Schwartau, in Seminole,

Florida. Burton Dec., ¶ 5. Upon information and belief, Interpact has only two employees other than its principal, Mr. Schwartau: Mr. Schwartau's assistant, Betty O'Hearn, and another person, Kelley Walker, both of whom also reside in Florida. Id., ¶ 6. Even if all three of Interpact's employees are witnesses in the case, there are still more than a dozen MIS Training employees in Massachusetts who will likely be witnesses, such that the balance of convenience clearly weighs in favor of Massachusetts.

Moreover, according to Interpact's web site, Mr. Schwartau has speaking engagements several times a month all across the United States, Canada, and Europe. Id., ¶ 5. Given his frequent travel schedule, it would likely be less of an interruption to his business for him to travel to Massachusetts, than for MIS Training to bring more than a dozen people to Florida. During the course of the InforwarCon Agreement, Mr. Schwartau traveled to MIS Training in Massachusetts on approximately three occasions. No MIS Training employee ever traveled to Florida in connection with the InfowarCon Agreement, except on one occasion, when its then-president, Michael Sobol, who was in Florida for other reasons, made a brief visit to Mr. Schwartau. Id., ¶ 12.

### 2. The Vast Majority of Documents and Other Sources of Proof Are Located In Massachusetts.

The location of relevant documents and other sources of proof also favor Massachusetts as the forum for this litigation. Given that approximately 90% of the work to produce the InfowarCon Conferences was done by MIS Training, in Massachusetts, it is not surprising that the vast majority of documents (including electronic information) relevant to this litigation are maintained by MIS Training at its facility in Massachusetts. Burton Dec., ¶¶ 9, 16. Such documents include, among other things:

a.  Communications between MIS Training and Interpact regarding the

negotiation and performance of the InfowarCon Agreement, including production of conferences pursuant to that Agreement;

b.   Communications between MIS Training and third parties regarding the production of the conferences under the InfowarCon Agreement, such as communications with speakers, attendees, hotel contacts and vendors;

c.   Contracts with all vendors, including hotel contracts, mailing and printing services agreements, and exhibitor contracts.

d.   Documents concerning the production of the conferences during the term of the InfowarCon Agreement;

e.   Documents provided to MIS Training by Interpact in the course of performance of the InfowarCon Agreement; and

f.   Documents concerning MIS Training's production of conferences on information warfare issues following expiration of the InfowarCon Agreement.

Burton Dec., ¶ 16. Because the crux of Interpact's claims concern actions alleged to have been performed by MIS Training, it is likely that any additional documents and sources of proof will also be located in Massachusetts, where MIS Training resides.

For all the above reasons, consideration of the "private interests" weighs strongly in favor of Massachusetts. See Medi U.S.A., 791 F. Supp. at 210 (private interests include plaintiff's choice of forum, situs of material events, relative ease of access to sources of proof).

### C.   Public Factors Also Point to Massachusetts as the Most Appropriate Forum to Resolve the Parties' Dispute.

Other factors that this Court may consider in deciding whether to transfer venue include the substantive law to be applied and the connection of the forum state to the dispute. See Laffal v. Overseas Adventure Travel Partners, Inc., 2000 U.S. Dist. LEXIS 4547 at * 3-4 (M.D. Fla. 2000) (citing Seguridad v. Transytur Line, 707 F.2d 1304, 1307 (11th Cir. 1983)). These factors are often referred to as the "public factors." See, e.g., Medi USA, 791 F. Supp. at 210 (citing 15 C. Wright &

- 13 -

A. Miller, Federal Practice §§ 3849-53 (1986)). Here, the public factors point to Massachusetts as the most appropriate forum for the resolution of this dispute.

> ### 1. Because the Substantive Law to be Applied is Federal Trademark Law, There is No Public Interest Against Transferring the Case to Massachusetts.

The primary issue to be litigated in this case is one of federal trademark law under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, with which the United States District Court in Massachusetts (like this Court) is familiar. Interpact's supplemental claim of interference with contractual relations, while pled under Florida common law, is substantially similar to the law on interference in Massachusetts, and would not present an obstacle to resolution in Massachusetts. While a Florida court is certainly more familiar with Interpact's third cause of action under Florida's Deceptive and Unfair Trade Practices Act ("DUTPA"), this claim (like the interference claim) is derivative of the trademark infringement claim; the only allegation concerning DUTPA is MIS Training's alleged unauthorized use of the name "InforwarCon." Ex. 2, ¶ 43. Thus, while the presence of Interpact's state law claims may weigh in favor of a Florida forum, the impact is slight, because the primary law to be applied is federal law. When viewed in light of the fact that transferring the case to Massachusetts is a more convenient forum for the parties and witnesses, the choice-of-law factor should not outweigh those factors. See Eye Care International, Inc., 199 F. Supp. 2d at 1319 ("[this] Court [United States District Court for the Middle District of Florida] gives great weight to the convenience of parties and witnesses").

> ### 2. Massachusetts Has a Stronger Connection to the Dispute.

Massachusetts has more of a connection to the issues in dispute in the case than Florida. The InfowarCon Agreement was executed by MIS Training's then-President, Michael Sobol, in Massachusetts. Approximately 90% of the work done to produce the InfowarCon Conferences was

- 14 -

performed in Massachusetts. The actions of MIS Training after the termination of the InfowarCon Agreement, which are the subject of the Complaint, occurred in Massachusetts. Burton Dec., ¶¶ 7, 9, 14-15.

During the course of the InforwarCon Agreement, Mr. Schwartau traveled to MIS Training in Massachusetts on approximately three occasions. No MIS Training employee ever traveled to Florida in connection with the InfowarCon Agreement, except when the company's then-president, Michael Sobol, who was in Florida for other reasons, made a brief visit to Mr. Schwartau. Id., ¶ 12.

MIS Training is based in Massachusetts, and employs approximately 40 employees there. Id., ¶ 2. Massachusetts has an interest in ensuring that Massachusetts companies continue to thrive and do business, without being hindered by misplaced allegations of infringement. The only connection that Florida has to this litigation is that Interpact, a three-person company, is based in Florida, and alleges that it suffered harm in Florida (and elsewhere). The great majority of events, however, occurred in Massachusetts, not in Florida – giving Massachusetts a stronger connection to the litigation.

The InfowarCon Conferences, the information warfare conference produced by MIS Training in 2003, and the information warfare conference produced by Interpact with Reed Exhibitions in 2003, all occurred in Washington, D.C. (except those that occurred in Europe). Id. at ¶ 7. The attendees and conference speakers were from all over the United States, and Europe. Id. These factors do not favor either forum, but certainly do not weigh against transferring the case to Massachusetts.

**II.    In the Alternative, this Court Should Stay This Action Pending Completion of the Massachusetts Action.**

If, for any reason, this Court declines to transfer this case, then MIS Training requests that the Court exercise its inherent power to stay this action until the Massachusetts Action is completed.

- 15 -

"The power to stay... is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." Lisa, S.A. v. Mayorga, 232 F. Supp. 2d 1325, 1326 (S. D. Fla. 2002) (quoting Landis v. North American Co., 299 U.S. 248 (1939). See also Ortega Trujillo v. Conover & Co., 221 F.3d 1262, 1264 (11th Cir. 2002). A stay would permit the Massachusetts federal court to issue a declaratory judgment on the trademark infringement issue, which would either eliminate or substantially narrow the issues to be tried in this action. See Lisa, S.A. v. Mayorga, 232 F. Supp. 2d 1325, 1326 (S. D. Fla. 2002) (noting that a stay is appropriate where the issues of the pending actions are interrelated, and the parties and relevant facts for both cases are similar).

## CONCLUSION

For the above reasons, this Court should exercise its discretion to transfer this action to the United States District Court for the District of Massachusetts.

Respectfully submitted,

MIS TRAINING INSTITUTE LLC

By its attorneys,

Andrew C. Greenberg
Florida Bar Number 996726
Marty J. Solomon
Florida Bar Number 0523151
CARLTON FIELDS, P.A.
One Harbour Place
777 South Harbour Island Drive (33602)
P.O. Box 3239
Tampa, Florida 33601-3239
Telephone: (813) 223-7000
Facsimile: (813) 229-4133

- 16 -

and

Robert A. Bertsche
Jeffrey A. Dretler
PRINCE LOBEL GLOVSKY & TYE, LLP
585 Commercial Street
Boston, Massachusetts 02109-1024
Telephone: (617) 456-8000
Facsimile: (617) 456-8100
[Admittted pro hac vice]

## CERTIFICATE OF SERVICE

I CERTIFY that a copy of the foregoing was furnished to Terrence S. Buchert, P.O. Box

47121, St. Petersburg, Florida 33743, by U.S. Mail, this 30th day of April, 2004.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

INTERPACT, INC.,

Plaintiff,

v.

MIS TRAINING INSTITUTE LLC,

Defendant.

C.A. No. 8:04-CV-799-T-27MAP

## NOTICE OF FILING DECLARATIONS
## IN SUPPORT OF DEFENDANT MIS TRAINING'S MOTION
## TO TRANSFER ACTION TO DISTRICT OF MASSACHUSETTS

Defendant MIS Training Institute LLC ("MIS Training") hereby gives notice of filing in

support of its motion to transfer action to district of Massachusetts the following declarations:

1.    Declaration of Robert Bertsche, dated April 29, 2004 (electronic signature);

2.    Declaration of Linda Burton, dated April 29, 2004 (facsimile signature).

Counsel will promptly file upon receipt the original signature pages of the above-listed

Declarations.

Respectfully submitted,

MIS TRAINING INSTITUTE LLC

By its attorneys,

Andrew C. Greenberg
Florida Bar Number 996726

Marty J. Solomon
Florida Bar Number 0523151
CARLTON FIELDS, P.A.
One Harbour Place
777 South Harbour Island Drive (33602)
P.O. Box 3239
Tampa, Florida 33601-3239
Telephone:  (813) 223-7000
Facsimile:  (813) 229-4133

and

Robert A. Bertsche
Jeffrey A. Dretler
PRINCE LOBEL GLOVSKY & TYE, LLP
585 Commercial Street
Boston, Massachusetts 02109-1024
Telephone: (617) 456-8000
Facsimile: (617) 456-8100
[Admitted pro hac vice]

## CERTIFICATE OF SERVICE

I CERTIFY that a copy of the foregoing was furnished to Terrence S. Buchert, P.O. Box

47121, St. Petersburg, Florida 33743, by U.S. Mail, this 30th day of April, 2004.

Marty Solomon
Attorney

- 2 -

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

INTERPACT, INC.,

Plaintiff,

v.

C.A. No. 8:04-CV-799-T-27MAP

MIS TRAINING INSTITUTE LLC,

Defendant.

## DECLARATION OF ROBERT A. BERTSCHE

I, Robert A. Bertsche, hereby declare as follows:

1.      My name is Robert A. Bertsche.  I am a member in good standing of the bars of Massachusetts, New York, and Pennsylvania, as well as the United States District Court for the District of Massachusetts, the First Circuit Court of Appeals, and the United States Supreme Court.

2.      My motion for admission to this Court *pro hac vice* has been allowed.

3.      I am a partner in the Boston, Massachusetts law firm of Prince, Lobel, Glovsky & Tye LLP, which I joined in 2003.  From 1989 to 1997, I was associated with the Boston law firm of Hill & Barlow, and I served as a member of that firm from 1997 until its dissolution in 2003.

4.      I represent the defendant, MIS Training Institute LLC ("MIS Training") in this action, in a counterpart declaratory judgment action pending in the United States

District Court for the District of Massachusetts, C.A. No. 04-10538-RGS, which was filed on March 17, 2004.

5.     I responded on behalf of MIS Training to a demand letter dated March 2, 2004, from attorney Terrence Buchert on behalf of Interpact, Inc. ("Interpact") to Linda Burton, president of MIS Training. That letter threatened that Interpact would commence litigation against MIS Training "before March 21, 2004." It gave MIS Training 10 days to respond to a list of nine demands, one of which was that MIS Training pay Interpact $3,000,000.00.

6.     I telephoned attorney Buchert on or about March 12, 2004, and, on behalf of MIS Training, denied the allegations of Interpact's March 2, 2004, demand letter. I invited attorney Buchert to provide documentation of Interpact's claims as set out in the demand letter. He said he would do so, and he subsequently forwarded to me some, although not all, of the information he had said he would provide.

7.     At no time did I, or anyone else on behalf of MIS Training, indicate to attorney Buchert or Interpact that MIS Training was engaging in settlement negotiations with Interpact. Neither did I or anyone else on behalf of MIS Training request that Interpact forestall suit, or represent or suggest that MIS Training would forestall suit.

8.     To the contrary, when I rejected Interpact's $3 million demand to MIS Training, I asked attorney Buchert whether Interpact was serious about that number. He said that it was, and he repeated that Interpact intended to commence litigation against MIS Training on March 21, 2004, if its concerns were not sufficiently addressed.

9.     It was at all times my understanding from attorney Buchert, and from Interpact's demand letter dated March 2, 2004, that Interpact intended to and would

2

commence litigation against MIS Training on or before March 21, 2004. Interpact did indeed file its Complaint against MIS Training, thereby commencing this action on March 19, 2004.

Signed under the pains and penalties of perjury, this 29th day of April, 2004.

_____

Robert A. Bertsche

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

INTERPACT, INC.,

Plaintiff,

v.

C.A. No. 8:04-CV-799-T-27MAP

MIS TRAINING INSTITUTE LLC,

Defendant.

## DECLARATION OF LINDA BURTON

I, Linda Burton, declare as follows:

1.     I am the President and Chief Executive Officer of MIS Training Institute LLC ("MIS Training"). I have served in this role since approximately July, 2002. I reside in Massachusetts. I base this affidavit in part upon my personal knowledge, and in part upon information made available to me as President and CEO of MIS Training.

2.     MIS Training is a Delaware limited liability company, with a principal place of business in Framingham (Middlesex County), Massachusetts. MIS Training is in the business of marketing and conducting conferences and workshops on a wide variety of topics, including "information warfare," which can be generally described as the offensive and defensive use of information and information systems to achieve military or business advantage. Conferences and workshops in the past have addressed specific topics such as network security and information sharing among business, government, and law enforcement. MIS Training employs

approximately 52 employees worldwide, 40 of whom are based in Massachusetts, and the rest in London and Asia.

3.     I received a letter dated March 2, 2004, from the lawyer for Interpact, Inc. ("Interpact") alleging that MIS Training had engaged in, and was continuing to engage in, unlawful trademark infringement under federal law. The demand letter threatened that Interpact would commence litigation "before March 21, 2004." It gave MIS Training 10 days to respond to a list of nine demands, one of which was that MIS Training pay Interpact $3,000,000.00. I have attached a true and accurate copy of the letter as Exhibit 1 to this affidavit.

4.     On March 17, 2004, more than two weeks after receiving Interpact's letter, and prior to the March 21 date by which Interpact had said it would commence litigation, MIS Training filed an action in United States District Court for the District of Massachusetts, C.A. No. 04-10538-RGS, seeking a declaration that it had not infringed on Interpact's rights to the "InfowarCon" mark. A copy of MIS Training's Complaint in the Massachusetts action is attached to this affidavit as Exhibit 2. On March 19, 2004, as threatened in its demand letter, Interpact commenced this action in this Court.

5.     Plaintiff Interpact describes itself in its Complaint as a Delaware corporation with a principal place of business in Pinellas County, Florida. Upon information and belief, it is operated from the home of its principal, Winn Schwartau, at 11511 Pine Street, Seminole, Florida. Upon information and belief, Interpact's business includes information technology security and consulting on security issues. According to Interpact's website, Mr. Schwartau has speaking engagements several times a month across the United States, Canada, and Europe. An excerpt from the Interpact website, www.interpactinc.com, showing Mr. Schwartau's 2003 and 2004 speaking schedules, is attached hereto as Exhibit 3.

- 2 -

6.     Upon information and belief, Interpact has only two employees other than its principal, Mr. Schwartau. They are Mr. Schwartau's assistant, Betty O'Hearn, and another person, Kelley Walker. See www.interpactinc.com (listing only these three individuals on website). Upon information and belief, all three individuals reside in Florida.

7.     On or about December 3, 1997, prior to the start of my employment, MIS Training's predecessor in interest, MIS Training, Inc., a Massachusetts corporation, entered into an agreement with Interpact (the "Agreement" or "InfowarCon Agreement") to produce a series of educational seminars or conferences on the subject of information warfare. The Agreement was for a term of five calendar years (1998, 1999, 2000, 2001, and 2002), with an option to renew for an additional five years upon mutual agreement. A true and accurate copy of the InfowarCon Agreement is attached hereto as Exhibit 4.

8.     MIS Training's then-president, Michael Sobol, signed the InfowarCon Agreement in Massachusetts on behalf of MIS Training. The Agreement does not specify its place of execution, nor does it stipulate what state's law shall apply or what state's courts shall have venue over disputes. See Ex. 4.

9.     Pursuant to the InfowarCon Agreement, MIS Training produced and marketed conferences under the name InfowarCon in the United States and Europe. Conferences took place during each year of the Agreement, and were presented in cooperation with Interpact. Conferences were held in Washington, D.C. in September of 1998, 1999, 2000, 2001 and 2002, and in London in May, 1999 and June, 2000. Conference participants, vendors, and speakers came from all over the United States, as well as from Europe. None of the conferences took place in Florida.

-3-

10.    Approximately 90 percent of the work to produce the InfowarCon conferences under the InfowarCon Agreement with Interpact was conducted by MIS Training employees, in Massachusetts. Among other things, MIS Training produced the brochure and website for the conferences, communicated with the speakers, negotiated the hotel contracts, marketed the conferences, secured the venue, made vendor sales, managed all on-site logistics, and ran the conferences. Virtually all direct mail to promote the InfowarCon Conferences was printed in and mailed from Massachusetts.

11.    I have personal knowledge from July 2002 on, of some aspects of the performance of the Agreement, as well as knowledge, of MIS Training activities following termination of the Agreement. In addition, the following individuals (most of them current MIS Training employees), among others, played some role with respect to MIS Training's production of conferences pursuant to the InfowarCon Agreement:

• Michael Sobol, former Chairman and President, negotiated and signed the InfowarCon Agreement and participated in its implementation during his tenure (prior to 1999);

• Lois Jacobson, former Chief Executive Officer, had responsibility for overseeing the production of the conferences during her tenure (1999 through July, 2002);

• Sharon Friedman, Sheri Garf, and Alisa Ufland were involved with marketing the conferences produced pursuant to the InfowarCon Agreement;

• Pamela Bissett was the customer service manager;

• Adam Lennon worked with vendor sales and Gloria Simpson worked with attendee sales;

• Jean Hey was Director of the Conference Group; and

- 4 -

- Rodrigo Vasquez was the director of information technology. Upon information and belief, all of these current and former MIS Training employees presently reside in Massachusetts. In addition, numerous other MIS Training employees who reside in Massachusetts also played some role in producing the conferences pursuant to the InfowarCon Agreement.

12.   During the term of the InfowarCon Agreement, Mr. Schwartau traveled to MIS Training in Massachusetts on approximately three occasions. No MIS Training employee ever traveled to Florida in connection with the InfowarCon Agreement, except that on one occasion, MIS Training's then-president, Michael Sobol – who was in Florida for other reasons – made a brief visit to Mr. Schwartau.

13.   The InfowarCon Agreement contained an exclusivity clause, which prohibited both MIS and Interpact during its five-year term from entering into "contractual agreements regarding this InfowarCon conference with other parties that would pose a competitive threat to either organization or to the conference." Notwithstanding this provision, on or about October 9, 2002, Interpact entered into an agreement with Reed Exhibitions, a division of Reed Elsevier Inc., to sell the InfowarCon conferences and to sponsor and promote InfowarCon conferences conducted by Reed Exhibitions. Upon information and belief, Reed Elsevier Inc. is a Delaware corporation with a principal place of business in New York, New York.

14.   Following the expiration of the term of the InfowarCon Agreement (which was not renewed), Interpact (in conjunction with Reed Exhibitions) and MIS Training each produced their own respective conferences relating to the subject of information warfare. Interpact/Reed Exhibitions marketed in 2003, and presented beginning September 30, 2003, a conference titled "InfowarCon." MIS Training produced on December 3-4, 2003, a conference titled "The Forum on Information Warfare." Both conferences were held in Washington, D.C.

- 5 -

15.   All of the work to produce and market MIS Training's 2003 conference, "The Forum on Information Warfare," was done by MIS employees in Massachusetts (except the few days in Washington, D.C. to run the conference itself).  Anita D'Amico, an outside consultant who helped with production of the MIS Training conference in 2003, resides in New York..

16.   The vast majority of documents (including electronic information) relevant to this litigation are maintained by MIS Training at its facility in Massachusetts.  Such documents include, among other things:

    a.   Communications between MIS Training and Interpact regarding the negotiation and performance of the InfowarCon Agreement, including production of conferences pursuant to that Agreement;

    b.   Communications between MIS Training and third parties regarding the production of the conferences under the InfowarCon Agreement, such as communications with speakers, attendees, hotel contacts, and vendors;

    c.   Contracts with all vendors, including hotel contracts, mailing and printing services agreements, and exhibitor contracts.

    d.   Documents concerning the production of the conferences during the term of the InfowarCon Agreement;

    e.   Documents provided to MIS Training by Interpact in the course of performance of the InfowarCon Agreement; and

    f.   Documents concerning MIS Training's production of conferences on information warfare issues following expiration of the InfowarCon Agreement.

Signed under the pains and penalties of perjury, this 29th day of April, 2004.

Linda Burton

- 6 -

# Speaking Schedule for 2003

| 2003 Dates | Location |
|---|---|
| April 7-9 | Las Vegas, Infowarcon |
| April 29-30 | London |
| June 2-3 | Toronto Infowarcon |
| June 6-7 | Orlando |
| June 11-12 | New York Citry |
| July 2-10 | London |
| August 1-3 | Las Vegas, Defcon |
| September 11-13 | New York City |
| September 30-October1 | Washington, D.C., Infowarcon |
| November 12-14 | |
| November 20-26 | Dusseldorf |
| November 26-28 | Australia, Infowarcon |
| December 9-10 | New York City, Infowarcon |
| December 11-12 | New York City |
| **2004 Dates** | **Location** |
| *The 2004 schedule is filling up quickly, so be sure to book in advance!* | |
| March | Dublin |
| March | New York City |
| April | Las Vegas, Infowarcon |
| April | Brussels, E-commerce |
| June | Toronto, Infowarcon |
| June | New York City |
| August | Las Vegas |
| September | Washington, D.C., Infowarcon |
| September | New York City |
| November | New York City |
| December | New York City, Infowarcon |