UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MIS TRAINING INSTITUTE LLC, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 04-10538-RGS |
| | : |
| INTERPACT, INC., | : |
| | : |
| Defendant. | : |
| | : |
| | : |

## AFFIDAVIT OF TERRENCE S. BUCHERT

I, Terrence S. Buchert, do hereby depose and state as follows:

1.    I am an attorney, licensed to practice in the State of Florida, a member in good standing of The Florida Bar, and admitted to practice before the United States District Court for the Middle District of Florida.

2.    I represent the Defendant, Interpact, Inc. ("Interpact"), in this action and in a related action filed in the Middle District of Florida, C.A No. 8:04-CV-799-T-27MAP. I submit this affidavit in support of Interpact's motion to dismiss this case, or, in the alternative, to transfer it to the Middle District of Florida. Unless otherwise noted, the statements in this affidavit are based on my personal knowledge.

3.    On March 2, 2004, I sent a letter to Linda Burton, President of Defendant, MIS Training Institute LLC ("MIS"). A copy of that letter is attached to this affidavit as **Exhibit A**. In that letter, I advised Ms. Burton that certain rights of my client associated with its federal

trademark of the name "InfowarCon" had been violated, and demanded that certain actions be taken immediately, not the least of which was that MIS cease and desist from further use of the "InfowarCon" mark. I also advised Ms. Burton that if we did not receive written assurance that the infringing activities had ceased and that other demands would be met, we would initiate suit to protect Interpact's rights.

4.     On March 12, 2004, I was contacted by attorney Robert A. Bertsche, Esquire, who explained that he represented MIS. In response to his inquiry, subsequently followed up by a letter, a copy of which is attached as **Exhibit B,** I provided him with electronic documentation of the evidence that my client had discovered.

5.     I provided Mr. Bertsche with four separate emails on March 12, 2004. Copies of those emails are attached to this affidavit as **Exhibit C.** In each communication, I specifically stated that it was a protected settlement discussion pursuant to Florida Statute §90.408 and the Federal Rules of Evidence. I did so in the good faith belief that he and I were indeed engaging in settlement discussions on behalf of our respective clients.

6.     In response to Mr. Bertsche's March 12 letter (Ex. B), on March 16, 2004, I faxed him a copy of the termination agreement between Interpact and Reed Exhibitions, a copy of which is attached to this affidavit as **Exhibit D.**

7.     I had another telephone conference with Mr. Bertsche late in the afternoon on March 16, 2004.

8.     In the March 16 telephone conference, I pressed Mr. Bertsche for his client's response to the information that I had sent to him. He responded that his client had not yet processed all of the information that I had sent. I expressed to Mr. Bertsche my frustration with

-2-

the pace of discussions that we had begun towards a mutually acceptable resolution of the dispute and with his client's inability to move faster to review the information. Mr. Bertsche responded that I could not have expected that his client would simply write a check that week. I ended the conversation, *not* with an understanding that my client's demand had been rejected and the court action was necessary, but rather with the expectation that Mr. Bertsche would call me the next day, to revisit our discussions after his client had reviewed the information that I sent.

9.    Instead, the next day, my client was served in Florida with a complaint that had been filed that day by MIS in federal court in Massachusetts.

10.    I was blind-sided by the Massachusetts filing. At no time had Mr. Bertsche indicated that our discussions were fruitless or that the dispute would need to be resolved in a court of law. In the interest of judicial economy, I had made a huge effort to open the dialogue with Mr. Bertsche and provide him information that would allow us to continue that dialogue.

11.    Had I believed that our discussions reached an end point, I would have filed suit on behalf of Interpact in Florida, immediately. While Mr. Bertsche never directly stated that his client would not bring legal action, I certainly understood the nature of our discussions to mean that both sides were in the midst of trying to work out an amicable resolution without court intervention.

Signed this 11th day of June 2004 under the pains and penalties of perjury.

Terrence S. Buchert

- 3 -

# EXHIBIT A

LAW OFFICES

# TERRENCE S. BUCHERT, P.A.

6707 FIRST AVENUE SOUTH
ST. PETERSBURG, FL 33707
P.O. Box 47121
St. Petersburg, FL 33743

E-Mail: tsbgator@tampabay.rr.com
Website: www.lawyers.com/BUCHERTLAW

Phone (727) 302-0351
Fax (727) 345-0171

Terrence S. Buchert

March 2, 2004

Via fax (508) 872-1153, email (Lburton@Misti.Com) and U.S. Mail

Linda Burton, President
MIS Training Institute, Inc.
498 Concord St.
Framingham, MA 01702-1153

Re: INFOWARCON

Dear Ms. Burton:

I represent Interpact, Inc., a Delaware Corporation, which maintains its office in Seminole, Florida. My client is the owner of United States Copyright registration for its products, as well as the Federal Trademark registered in the United States Patent and Trademark Office respecting the name "Infowarcon". I am writing to you regarding your company's unauthorized use of that name, and the damage it has caused my client.

In 1997 Interpact, Inc., and MIS Training Institute, Inc. entered into a written five-year joint venture agreement, in which my client assigned use of the name "Infowarcon" to the joint venture for marketing and production of an annual conference under that name. However, after the 2002 event, the agreement was not renewed. My client then negotiated a 20-year agreement to assign use of the name to Reed Exhibitions, a division of Reed Elsevier, Inc.

When my client and Reed Exhibitions attempted to market their conference in fall 2003, they learned that your company had continued to use the name for your own purposes - to market a competing conference. In fact, you simply recreated the same conference, using lists and other materials which belonged to my client. You used the name in your promotional brochures, embedding the trademarked name into your marketing materials so that internet search engines would direct inquiries to the MIS Training web site, and also intentionally employed security techniques that prohibited anyone from modifying the file and prevented my client, the owner of the name, from modifying it.

Your marketing included a deceptive electronic mass mailing campaign to prospective attendees and exhibitors which stressed that the name of the conference had simply been "renamed". This falsely implied to prospective speakers and attendees in a very public fashion that you actually had control of the registered trademark. Potential attendees were provided with a PDF file that contained the infringed trademark. Your telemarketing staff also left telephone messages explaining that the name had simply been changed. Some attendees and exhibitors from prior year's conferences were even offered "alumni" discounts.

## EXHIBIT A

Use of the registered trademark "Infowarcon" has already created confusion, deception and misrepresentation as to the source of the services being provided. Many persons even called my client asking for clarification of the changes. The resulting confusion caused by your acts contributed directly to a loss of expected profits for my client's 2003 conference. It has also now resulted in the cancellation of the long-term agreement by Reed Exhibitions, an action that will cost my client actual damages of at least $3,000,000.00 which it would have made over the life of the agreement.

Under the United States Copyright Act and Federal and State Trademark and Unfair Competition laws, Interpact, Inc. has the exclusive right to use of its trademarks and service marks, and to authorize — or deny authorization — to others for such use. Any unauthorized use of the name represents trademark infringement, and could subject you to all of the remedies of the United States Trademark Act and state statutes and common law. These include temporary and permanent injunctive relief; seizure, impoundment and destruction of infringing articles and the means to produce them; the award of money damages of up to $200,000 for *each* instance in which the trademark was infringed, and actual damages, which can be trebled due to the theft; disgorgement of any profits that you have been earned; and attorneys fees and costs.

Accordingly, we demand that your company immediately:

1. Cease and desist all use, adaptation, and distribution of the registered trademark "INFOWARCON" or any substantially similar name or mark;
2. Make arrangements through this office to deliver all infringing copies of INFOWARCON materials and the means to make them, for immediate destruction or other disposition;
3. Provide an accounting of all receipts and profits earned directly from your use of the registered trademark "INFOWARCON", those derived indirectly from events that were marketed and sold with the unauthorized embedded trademark in your literature on the Internet, as well as from email and telephone solicitations;
4. Cease and desist permanently from infringing my client's trademark and other intellectual property rights;
5. Remove all references with search engines, every Internet caches, ISP caches, PDFs, and html references to InfowarCon and INfowarCon2003 (which leads to MIS) at your expense;
6. Cease any and all references in writing or verbally, that the name InfowarCon has been changed, and publish a retraction on your website, calculated to reach those persons who received such false information;
7. Remove and document the removal of software, lists, or materials developed by Interpact, Inc. from all websites, brochures, and company computers and provide an affidavit certifying discontinued use of them;
8. Provide us with lists of attendees, sponsors, and exhibitors for the 1997-2002 conferences in XLS spreadsheet form, including amounts and methods of payment and full contact information; business cards, contacts and leads provided to you by Interpact, Inc., and complete mailing lists of conference prospects, attendees and exhibitors; and
9. Pay the amount of $3,000,000.00 to my client, an amount that approximates the total amount of damages which have been suffered by Interpact, Inc., along with those that it will suffer as a result of the cancellation of the agreement with Reed Exhibitions.

The causes of action available to my client include, in addition to the federal trademark infringement action, state law claims for breach of contract, civil theft, tortious interference with contractual relationship and violation of the Deceptive and Unfair Trade Practices Act. Should court action become necessary, my client will seek immediate injunctive relief against all use of the trademark, monetary damages which could easily exceed the amount stated above, attorney's fees and costs of litigation.

Please contact me to discuss these matters within ten (10) days of receipt of this letter. I also ask that you advise your Errors and Omissions insurer of this action, so that I can deal with that company directly regarding the claim. If I do not receive written assurance that you are ceasing this course of conduct and activities, and complying in all other respects with the demands outlined above, my instructions are clear, and suit will be filed before March 21, 2004.

PLEASE BE GOVERNED ACCORDINGLY.

Sincerely,

TERRENCE S. BUCHERT
cc: Winn Schwartau

# EXHIBIT B

ROBERT A. BERTSCHE
·bertsche@plgt.com
(617) 456.8018 Tel

Prince Lobel Glovsky & Tye LLP
Attorneys at Law

585 Commercial Street        March 12, 2004
Boston, MA 02109-1024
(617) 456.8000 Tel
(617) 456.8100 Fax
www.plgt.com

### BY FAX AND FIRST-CLASS MAIL

Terrence S. Buchert, P.A.
6707 First Avenue South
St. Petersburg, FL 33707

Re:     MIS Training Institute, Inc./Infowarcon

Dear Mr. Buchert:

As you know, I represent MIS Training Institute, Inc. I appreciated the opportunity to
speak with you by telephone this morning regarding your March 2, 2004 letter on
behalf of Interpact, Inc.

As I said to you, my client is confident that it has not in any way infringed upon
trademark rights with respect to the name "Infowarcon." Specifically, my client is not
aware of any incidents in which the Infowarcon name has been used in promotional
brochures by MIS Training, has been embedded into internet marketing materials, has
been used in emails to potential attendees, or any of the other matters alleged in your
letter. You agreed that if you have any such materials that you believe support your
allegations, you will send them to me. You also agreed to send a copy of the contract
between your client and Reed Elsevier, as well as any correspondence in which Reed
Elsevier documented the reasons for termination of the contract.

Until I receive such materials, I will dispense with a point-by-point refutation of your
allegations. When I receive them, I will respond to you promptly.

Sincerely,

Robert A. Bertsche

RAB/gml

**EXHIBIT B**

PRINCE ∎ LOBEL ∎ GLOVSKY & TYE ≞

# EXHIBIT C

## tsbgator

| | |
|---|---|
| **From:** | "Terry Buchert" <tsbgator@tampabay.rr.com> |
| **To:** | <rbertsche@plgt.com> |
| **Sent:** | Friday, March 12, 2004 4:51 PM |
| **Attach:** | yahoo search infowarcon 17june03 544PM.jpg; excite 12.jpg; google iwc mis 1 2.jpg; google iwc mis 2003 8.jpg; mis google more2.jpg; yahoo mis iwc2003 1.jpg; yahoo search #7 infowarcon 17june03 544PM.jpg; excite 1.jpg |
| **Subject:** | Unayuthotized use of trademark "inforwarcon" by MIS Training |

Mr. Bertsche:

This is a protected settlement discussion pursuant to Fla. Stat. §90.408 and the Federal Rules of Evidence.

In an effort to hopefully resolve the dispute between our respective clients, and to rapidly get you the requested evidence of your client's misapproariation of my client's trademark, I have attached serveral "snapshots" taken at various times in the past few months. Each represents a visit to a popular search engine at a particularly critical time. If you were to make the same search today, using "inforwarcon 2003" the reference to "infowarcon bro 2003" still pops up, although its position on each list will have changed. The latter is the name created by your client.

For example, go to
www.google.com

Seach for: InfowarCon
Go to Page 2 of the search (or scroll a couple depending upon settings...)

**[PDF] InfowarCon Bro 2003**
File Format: PDF/Adobe Acrobat
Page 1. www.misti.com EZ ACCESS IW03 Government, Military, and Industry's
Response to Emerging Cyber Security Threats • Congressman ...
www.misti.com/IncludedFiles/Brochures/iw03.pdf - Similar pages

Now click on or enter the PDF URL line above
You will note, there is no active link. The offending page, though obviously there at one time, has been removed in the past ten days.

Put more simply, when a search is made for the registered trademark belonging to Interpact, Inc., MISTI appears with the trademark embedded in the URL.

I will have to provide addional information in separate emails to follow, due to mail server capabiities.

TERRY BUCHERT

## EXHIBIT C

* Winn Schwartau, President
* InterPact, Inc. - The Security Awareness Company
* *Providing innovative security awareness programs through newsletters, seminars, online training and customized artwork on posters, screensavers and anything a printed image can be stamped with.*
* http://www.interpactinc.com
* Voice: 727.393.6600 Fax: 727.393.6361

—

Some files have not been scanned

Checked by AVG anti-virus system (http://www.grisoft.com).
Version: 6.0.590 / Virus Database: 373 - Release Date: 2/16/04



15. **Information Security News: InfowarCon 2001** ⬚
Information Security News; InfowarCon 2001. From: Kelley Walker (kwalker2 at gte.net) Date: 2001 ... http://www.interpactinc.com/**infowarcon**.html ...
lists.insecure.org/lists/isn/2001/Jun/0083.html cached | more results from this site

16. **InfoWarCon/TRCCon** ⬚
www.info-sec.com cached

17. **ISN 2001/06: [ISN] InfowarCon 2001** ⬚
[ISN] InfowarCon 2001. From: Kelley Walker (kwalker2@gte.net) Date: Fri Jun 15 2001 - 00:42 NETOPPS: Networking opportunities abound at **InfowarCon** 2001 ...
lists.jammed.com/ISN/2001/06/0071.html cached | more results from this site

18. **InfowarCon Bro 2003 [PDF]** ⬚
Page 1 www.misti.com E-Z ACCESS MU03 Government, Military, and Industry's Response to E Cyber Security Threats ·Congressman....
www.misti.com/includeFiles/Brochures/IW03.pdf

19. **InfoWarCon/TRCCon** ⬚
www.trccon.com cached

20. **CFP: InfowarCon 2002** ⬚
CFP: **InfowarCon** 2002. Kelley kelley@interpactinc.com Fri, 25 Jan 2002 18:35:12 -0500; Previ message: Cute; Next message: Googlehacking....
www.xent.com/pipermail/fork/2002-January/0088.3 html cached | more results from this site

**Results Page:**
⬚ **2 3 4 5 6 7 8 9 10** ▶ **Next**

Web | Directory | ...

Your Search: InfowarCon [          ] Search   Advanced Settings



produced and managed by Reed Exhibitions
http://www.infowarcon.com/App/main.cfm?appname=100208&moduleid=428linkid=1916 (Non-Sponsor

10. infowar australia | information warfare and security related conferences.
infowar australia: future, current and past conferences, forums, workshops, and seminar
http://www.infowar.com.au/conferences/index.php (Non-Sponsored Result) | FAST

11. [ISN] InfowarCon 2001
Thread Index] [ISN] InfowarCon 2001 To: isn@securityfocus.com Subject: [ISN] Infowa
Walker http://www.interpactinc.com/infowarcon.html InfowarCon 2001: Techniques
http://lists.virus.org/isn-0106/msg00072.html (Non-Sponsored Result) | FAST

12. InfowarCon Bro 2003
... December 2 & 5 Vendor Expo December 3 The International Leader in Audit & Informa
Information Operations 2003 Training Information ...
http://www.misti.com/IncludedFiles/Brochures/IW03.pdf (Non-Sponsored Result) | Google



ppInfowarCon Bro 2003
File Format: PDF/Adobe Acrobat
... Call 508-879-7999 Fax 508-872-1153 E-mail mis@misti.com Web www.misti.com EZ Access
IW03 SCHEDULE Optional, One-Day Workshops Tuesday December 2, 2003 8:00 AM ...
www.misti.com/IncludedFiles/Brochures/IW03.pdf - Similar pages

MIS Training Institute
... Register by September 30, 2003, and SAVE $100 or attend a workshop for FREE! ... Eleven
of MIS' top IT audit seminars in one week, under one roof ...
Description: Describes their audit and information security curriculum, seminars, and services.
Category: Regional > North America > ... > Business and Economy > Computers
www.misti.com - 48k - Sep 16, 2003 - Cached - Similar pages

3/12/04







Yahoo! Search Results for Infowarcon 2003 - Microsoft Internet Explorer

Renaissance Washington DC Hotel, Washington, DC, USA. More information ...
www.ncipher.com/company/events/ev_view.php?itemId=14 cached | more results from this site

4.  **Interpact Security Awareness and Information Security Services**
   ... Interpact Sponsors, InfowarCon 2003. Learn the tactics and technologies of digital warfare.
   REGISTER NOW! Download the InfowarCon 2003 Brochure. TRICon 2003 ...
   www.interpactinc.com/ cached | more results from this site

5.  **PRG Conventions: September, 2003**
   ... 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 09, 00 D
   InfowarCon 2003 September 30-October 3, 2003, Washington, DC. Top of page ...
   www.parallaxresearch.com/conventions/2003/09.html cached | more results from this site

6.  **Information Warfare/InfoSec**
   links to information warfare sites.
   www.infowar.com/ cached
   • More sites about Intelligence > Information Warfare and Cyberterrorism

7.  **InfowarCon Bro 2003** (PDF)
   ... December 2 & 6 Vendor Expo December 3 The International Leader in Audit & Information Se
   aiding Information Operations 2003 Training Information ...
   www.misti.com/includedFiles/Brochures/IW03.pdf

8.  **July 2003**
   ... InfowarCon 2003 TF., Sept. 30-Oct. 3 Washington, DC www.infowarcon.com Sessions foc
   detecting, protecting against and reacting to cyberattacks. ...
   infosecuritymag.techtarget.com/2003/jul/happenings.shtml cached | more results from this site

9.  **Virus Bulletin -> News -> Calendar**
   ... September. Black Hat Federal 2003 Sept 29 - Oct 2, Washington DC, USA. InfowarCon 200
   - Oct 3, Washington DC, USA. ICTCS 201 ...
   www.virusbtn.com/news/calendar/index.xml cached | more results from this site

10.  **Compsec Online**
   ... 2003 Location: Guarujá, São Paulo, Brazil E-mail: monica.berton@cenpra.gov.br Website ...
   http://www.cenpra.gov.br/GE-conference/InfowarCon 2003 30 September ...



## tsbgator

| | |
|---|---|
| **From:** | "Terry Buchert" <tsbgator@tampabay.rr.com> |
| **To:** | "Rob Bertsche" <rbertsche@plgt.com> |
| **Sent:** | Friday, March 12, 2004 5:56 PM |
| **Attach:** | MIS BROCHURE CONTENTS.jpg; MIS BROCHURE CONTENTS 2.jpg; MIS BROCHURE CONTENTS 3.jpg; MIS BROCHURE CONTENTS 4.jpg; MIS BROCHURE CONTENTS 1.jpg |
| **Subject:** | MIS Training - Interpact |

Mr. Bertsche:

Again, this is a protected settlement discussion pursuant to Fla. Stat. §90.408 and the Federal Rules of Evidence.

These pictures were taken directly from the MIS brochure entitled "InfowarCon Bro 2003".

These document did not exist when MIS and Interpact worked together. The information was manually entered when it was created on Aug 7, 2003 -six weeks prior to my client's scheduled 2003 event.

Also note that the formatting of the file name, "InfowarCon Bro 2003" is the exact same format as is displayed on the Search engines.

On that on CONTENT4.jpg, the document was intentionally secured from modification by manually adding security. I am informed that to do that one must know know the name of the file and the infringed trademark.


TERRY BUCHERT


---

Some files have not been scanned

Checked by AVG anti-virus system (http://www.grisoft.com).
Version: 6.0.590 / Virus Database: 373 - Release Date: 2/16/04

3/12/04



JUN-11-2004 15:14 PRSHAN HUGHES HOFFMAN 781 540 4335 P.22/32
Case 1:04-cv-10538-RGS Document 12 Filed 06/11/2004 Page 21 of 34

Page 3 of 5



__tsbgator__

| | |
|---|---|
| **From:** | "Terry Buchert" <tsbgator@tampabay.rr.com> |
| **To:** | "Rob Bertsche" <rbertsche@pigt.com> |
| **Sent:** | Friday, March 12, 2004 5:58 PM |
| **Attach:** | MIS BROCHURE CONTENTS.jpg; MIS BROCHURE CONTENTS 2.jpg; MIS BROCHURE CONTENTS 3.jpg; MIS BROCHURE CONTENTS 4.jpg; MIS BROCHURE CONTENTS 1.jpg |
| **Subject:** | MIS Training - Interpact |

Mr. Bertsche:

Again, this is a protected settlement discussion pursuant to Fla. Stat. §90.408 and the Federal Rules of Evidence.

These pictures were taken directly from the MIS brochure entitled "InfowarCon Bro 2003".

These document did not exist when MIS and Interpact worked together. The information was manually entered when it was created on Aug 7, 2003 -six weeks prior to my client's scheduled 2003 event.

Also note that the formatting of the file name, "InfowarCon Bro 2003" is the exact same format as is displayed on the Search engines.

On that on CONTENT4.jpg, the document was intentionally secured from modification by manually adding security. I am informed that to do that one must know know the name of the file and the infringed trademark.


TERRY BUCHERT


--

Some files have not been scanned

Checked by AVG anti-virus system (http://www.grisoft.com).
Version: 6.0.590 / Virus Database: 373 - Release Date: 2/16/04

3/12/04



3/12/04

P.04/14    1 781 740 4335    DROHAN HUGHES HOFFMAN    JUN-11-2004 15:25



3/12/04



Government, Military, and Industry's Response
to Emerging Cyber Security Threats

- *Asymmetric warfare*

## tsbgator

| | |
|---|---|
| **From:** | "Terry Buchert" <tsbgator@tampabay.rr.com> |
| **To:** | "Rob Bertsche" <rbertsche@plgt.com> |
| **Sent:** | Friday, March 12, 2004 6:01 PM |
| **Attach:** | infowarcon2003mis.pdf; IWCON2002.pdf |
| **Subject:** | MIS - Interpact |

Again, this is a protected settlement discussion pursuant to Fla. Stat. §90.408 and the Federal Rules of Evidence.

This is a comparison of the 2002 joint venture brochure in PDF and your client's 2003 brochure in PDF.
- Nearly identical

To view,
1. Open the 2003 pdf file
2. File _ Properties or File-Document Properties, and the images will appear.

----

Some files have not been scanned

Checked by AVG anti-virus system (http://www.grisoft.com).
Version: 6.0.590 / Virus Database: 373 - Release Date: 2/16/04

3/12/04

## tsbgator

**From:** "Terry Buchert" <tsbgator@tampabay.rr.com>
**To:** "Rob Bertsche" <rbertsche@plgt.com>
**Sent:** Friday, March 12, 2004 6:15 PM
**Attach:** A01.WAV; Voicemail from MIS Eric.txt; Lies in writing from MIS.txt
**Subject:** MIS - Interpact

Mr. Bertsche:

Again, this is a protected settlement discussion pursuant to Fla. Stat. §90.408 and the Federal Rules of Evidence.
A01.WAV is from your client's solicitation. Text file is from somnone who contaced my client to complain about the confusion.

In "Lies in Writing" your client admitted renaming InfowarCon.
This is the tip of the iceberg. A forensics expert can easily determine more, and pinpoint the actual number of times my client's registered trademark was used without authorization.

Please review this and the preceding emails and attachments with your client, and get back to me on Monday. Though I appreciate and encourage a conciliatory tone in our communications, I also must advise that my client sees no reason to alter its original timetable regarding filing suit if we do not make progress by mid-week.

TERRY BUCHERT

—

Some files have not been scanned

Checked by AVG anti-virus system (http://www.grisoft.com).
Version: 6.0.590 / Virus Database: 373 - Release Date: 2/16/04

# EXHIBIT D

LAW OFFICES

# TERRENCE S. BUCHERT, P.A.

6707 FIRST AVENUE SOUTH
ST. PETERSBURG, FL 33707

P.O. Box 47121
ST. PETERSBURG, FL 33743
WEBSITE:www.lawyers.com/BUCHERTLAW
EMAIL: TSBGATOR@TAMPABAY.RR.COM

Phone (727) 302-0351
Fax (727) 345-0171

Terrence S. Buchert

DATE:            March 16, 2004

FROM:            Terrence S. Buchert, Esq.

TO:              Robert A. Bertsche, Esq.

TO FAX NO.:      (617) 456-8100

RE:              Interpact, Inc. v. MIS Training Inc.

MESSAGE:         Please see the enclosed copy of the Termination
                 Agreement between my client and Reed Exhibitions.

NUMBER OF PAGES BEING SENT (including Cover Sheet): _5_

**If you have not received all pages as indicated above or have a problem with
illegible/incomplete pages, please call at (727) 302-0351**

NOTICE: THE INFORMATION CONTAINED IN THIS TRANSMISSION MAY BE ATTORNEY PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED SOLELY FOR THE USE OF THE RECIPIENT NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE RECIPIENT NAMED ABOVE, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, COPYING OR DISCLOSURE OF THE CONTENTS OF THIS TRANSMISSION IS PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, COLLECT IF NECESSARY, AND RETURN THE ORIGINAL OF THIS TRANSMISSION TO US AT THE ABOVE ADDRESS BY U.S. MAIL. WE WILL REIMBURSE YOU FOR THE POSTAGE. THANK YOU.

## EXHIBIT D

# TERMINATION AGREEMENT

**THIS TERMINATION AGREEMENT** (this "Agreement"), is entered into as of this 31st day of December, 2003 by and between **REED EXHIBITIONS**, a division of Reed Elsevier Inc., a Massachusetts corporation having an office at 383 Main Avenue, Norwalk, Connecticut 06851 ("RX") and Interpact, Inc., a Delaware corporation located at 11511 Pine Street, Seminole, Florida 33772 ("Interpact").

## W I T N E S S E T H

**WHEREAS**, RX is engaged in the business of organizing, promoting and operating trade and technical conferences and exhibitions; and

**WHEREAS**, Interpact is a security consulting organization specializing in security awareness, consulting, strategic gaming, and electronic civil defense;

**WHEREAS**, pursuant to an Agreement dated as of October 9, 2002, (i) RX agreed to purchase from Interpact an annual exhibition known as "InfowarCon" which focuses on infrastructure protection strategies and serves the infowar, IO, CIP, and cyber-terrorism industry, its purchasers and suppliers (the "Event") and the Event Assets (as defined in the 2002 Agreement) and (ii) Interpact agreed to continue to sponsor and promote the Event (the "2002 Agreement");

**WHEREAS**, in the 2002 Agreement Interpact represented and warranted to RX as a condition of the purchase of the Event and the Event Assets that Interpact was the sole, exclusive and unconditional owner of, and had good and marketable title to, all Interest (as defined in the 2002 Agreement) in the Event and Event Assets, and that the 2002 Agreement and any instruments of transfer executed and delivered pursuant thereto would effectively vest in RX such title free and clear of all Encumbrances (as defined in the 2002 Agreement);

**WHEREAS**, since the execution of the 2002 Agreement it the parties have been engaged in a dispute regarding whether Interpact breached its representations and warranties in such Agreement with respect to: (i) whether Interpact does, in fact, have exclusive and unconditional ownership of the Event and Event Assets, since Interpact has not been able to procure the Event lists and other key Event Assets from its previous joint venture partner, MIS Training Institute, for RX's use, nor prevent the MIS Training Institute from using the event lists for an event virtually identical to InfowarCon called "Forum on Information Warfare"; and (ii) whether Interpact has the exclusive and uncontestable right to the Event name.

**WHEREAS**,   RX has not been able to organize to organize a successful Event due to the issues in dispute as described above and, in fact, lost $185,000 on InfowarCon 2003, which was held from September 30 through October 3, 2003 in Washington, D.C.;

**WHEREAS**, the parties wish to resolve their disputes amicably and provide for termination of the 2002 Agreement and each party's responsibilities and obligations thereunder prior to its presently scheduled expiration date:

**NOW, THEREFORE**, in consideration of the mutual promises and agreements contained herein, the parties agree as follows:

1:   Definitions. Unless otherwise defined herein, all capitalized terms used in this Agreement shall have the meanings given them in the 2002 Agreement.

2.   Termination. The term of the 2002 Agreement shall come to an end as of December 31st, 2003, with the same force and effect as if said term had been scheduled to expire on said date, and each party shall be released from all of its obligations and responsibilities thereunder.

3.   No Additional Monies Owed.   Interpact hereby acknowledges that RX has paid to Interpact since the execution of the 2002 Agreement the sum of Fifty-One Thousand Six Hundred and Sixty-Seven Dollars ($51,667) and that no additional monies are owed or shall be owed by RX to Interpact and that no additional monies shall be required from RX in order to terminate the 2002 Agreement. Interpact also hereby acknowledges that RX has paid to Betty O'Hearn since the execution of the 2002 Agreement the sum of $15,599.97 and that no additional monies are owed or shall be owed by RX to Betty O'Hearn and that no additional monies shall be required from RX in order to terminate the 2002 Agreement.

4.   Re-Assignment.   RX hereby conveys, transfers, assigns, and delivers to Interpact, and Interpact hereby acquires and accepts back from RX, all of the right, title and interest in and to the Event and the Event Assets which Interpact transferred to RX pursuant to the 2002 Agreement.

5.   Mutual Release.   Each party hereby releases and forever discharges the other and all of its officers, directors, agents and employees, of and from all debts, demands, actions, suits, agreements, damages, claims and liabilities whatsoever, of every name and nature, both in law and in equity, arising out of or relating to the 2002 Agreement, with the exception of any and all obligations arising under this Agreement. Each party hereby covenants that it will not in the future file, instigate or encourage the filing of any lawsuit by any party in any local, state or federal court, or of any proceeding before any local, state or federal agency, based upon any matters, acts or omissions occurring prior to the date of execution of this Agreement, claiming that the other party has violated

any local, state or federal laws, statutes, ordinances or regulations, or concerning any allegations of tortious conduct and/or violation of contractual relationships of any kind.

6.    Governing Law.    This Agreement, and the rights, duties and obligations of the parties hereunder, shall be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to principles of conflicts of law thereunder.

7.    General Provisions.

(a)  This Agreement contains the sole and entire agreement of the parties as to the subject matter hereof and fully and correctly sets forth the rights, duties, and obligations of each party in respect thereof as of the date of this Agreement. All prior agreements, promises, negotiations, representations, or understandings of the parties with respect to the subject matter hereof, whether written or oral, are merged and superseded hereby.

(b)  This Agreement shall be binding upon the respective successors and assigns of the parties hereto, and inure to the benefit of and be enforceable by the respective permitted successors and assigns of the parties hereto.  This Agreement shall not inure to the benefit of, or be construed to confer any right, remedy or claim hereunder or by reason hereof upon, any other person.

(c)  This Agreement may not be amended or modified except by a written instrument executed by all of the parties.

(d)    This Agreement may be executed in any number of duplicate counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

3

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement by their officers duly thereunto authorized as of the day and year first above written.

**REED EXHIBITIONS**
**a division of Reed Elsevier Inc.**

By: _____

Name: Vincent T. Polito
Title: Senior Vice President

**INTERPACT, INC.**

By _____

Name: Winn Schwartau
Title:    President
PRESIDENT, INTERPACT, INC.

4