**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **MIS TRAINING INSTITUTE LLC,** | |
| **Plaintiff,** | |
| **v.** | **C.A. No.  04-10538-RGS** |
| **INTERPACT, INC.,** | |
| **Defendant.** | |

**PLAINTIFF'S OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE,**
**TO TRANSFER VENUE TO THE MIDDLE DISTRICT OF FLORIDA**

Plaintiff MIS Training Institute LLC ("MIS Training") hereby opposes the motion of defendant Interpact, Inc. ("Interpact") to dismiss this action for lack of personal jurisdiction or, in the alternative, to transfer it to the Middle District of Florida.

Interpact's claim that it does not have enough Massachusetts contacts for this Court to exercise jurisdiction over it flies in the face of indisputable facts:

- Interpact entered into a five-year joint venture agreement with the Massachusetts corporation that was MIS Training's predecessor in interest.

- Interpact shared in the profits and losses of annual programs that were marketed, promoted, and administered from MIS Training's offices in Massachusetts.

- Interpact's role in the joint venture included recruiting program faculty – several of whom came from Massachusetts – and receiving 20 percent of the profits drawn from attendees – who were solicited by mailings that were sent in the thousands to Massachusetts alone.

- This declaratory judgment action arises out of activities alleged by Interpact to constitute trademark infringement, which were undertaken by MIS Training from its offices in Framingham, Massachusetts.

- MIS Training's claim of non-infringement arises, in part, out of Interpact's termination of the joint venture by contracting with Reed Exhibitions, a division of a Massachusetts corporation, Reed Elsevier, Inc.

- This action was triggered by Interpact's mailing of a demand letter to MIS Training in Massachusetts.

There is no basis for transferring this action to the Middle District of Florida, where Interpact's three employees reside. Notwithstanding the colorful rhetoric in its brief, Interpact was neither "duped" nor "lulled" by MIS Training's pre-litigation response to Interpact's strident demand letter. MIS Training commenced this action only after Interpact issued it an inflexible ultimatum: Pay $3 million for alleged trademark infringement, or else be sued before March 21, 2004, in a distant forum. MIS Training flatly denied liability, and did not ask Interpact to delay filing suit. Interpact never reduced its demand or offered to compromise its claim in any way.

Moreover, Interpact cannot satisfy its burden of showing that the Middle District of Florida is a "substantially more convenient forum" for this litigation. To the contrary, because the vast majority of party witnesses, third-party witnesses, and documents relevant to this action are located in or near Massachusetts, it is in the interests of justice for this action to remain in this Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Interpact is in the business of information technology security and consulting on security issues. (Affidavit of Linda Burton ("Burton Aff."), submitted herewith, ¶ 6.) In late

1997, Interpact entered into a joint venture agreement with a Massachusetts corporation, MIS

Training Institute,[1] to produce a series of "InfowarCon" conferences in the United States and

Europe. (Burton Aff., Ex. 3.)  The agreement was signed by MIS Training's then-president in

Massachusetts.  (Burton Aff., ¶ 9.)  The joint venture agreement was for five years – "1998,

1999, 2000, 2001 and 2002" – with an option to extend for another five years.

Pursuant to the agreement, Interpact and MIS Training were to "co-produce" the

conferences.  (Burton Aff., Ex. 3.)  Interpact's role was to "be responsible for the conference

program and contents," including booking the speakers – at least three of whom came from

Massachusetts. (Burton Aff., ¶ 19.)  MIS Training's role was "marketing and production," the

vast majority of which was handled by MIS Training's employees in Massachusetts. (Burton

Aff., ¶¶ 10-11.)  Virtually all direct mail to promote the InfowarCon conference was printed in

and mailed from Massachusetts (Burton Aff., ¶ 11), and thousands of the recipients were located

in Massachusetts (Burton Aff., ¶¶ 13-18).  Planning for the conferences took place in part by

telephone or internet between MIS Training in Massachusetts and Interpact in Florida, except

that Interpact's president admits he made at least one business trip to Massachusetts for the joint

venture. (Affidavit of Winn Schwartau ("Schwartau Aff."), submitted with Interpact's motion, at

¶ 6; see also Burton Aff., ¶ 22 (recalling three such visits).)

Pursuant to the joint venture agreement, Interpact registered the trademark "InfowarCon"

and assigned to MIS Training the rights to use that name.  (Burton Aff.,

Ex. 3; Schwartau Aff., ¶ 4.)  The agreement contained an "exclusivity clause" prohibiting the

parties, during the time of the joint venture agreement, from entering into contractual agreements

that would pose a corporative threat "to either organization or to the conference." (Burton Aff.,

---

[1] MIS Training Institute, Inc. was the predecessor in interest to the plaintiff, MIS Training Institute LLC.  Their principal place of business is in Framingham, Massachusetts.  (Burton Aff., ¶ 2.)

Ex. 3, p. 2.)  It further states that if Interpact does "not complete this five-year arrangement," then "MIS Training will have the right to the name InfowarCon and to continue these events on its own." (Burton Aff., Ex. 3, p. 2.)  Those clauses are relevant to this action because in October 2002 – before the joint venture agreement was to expire – Interpact entered into an agreement with MIS Training competitor Reed Exhibitions ("Reed") to jointly present InfowarCon conferences, without MIS Training.  (Schwartau Aff., ¶ 11.)  Reed is a division of Elsevier Inc., a Massachusetts corporation with offices in Newton, Massachusetts and in Connecticut.[2]  (Burton Aff., ¶ 23.)

Interpact's president, Winn Schwartau, asserts that during the early months of 2003, he had email and telephone communications with Linda Burton and other employees of MIS Training – located in Massachusetts – regarding use of the "InfowarCon logo and trademark" and regarding the joint venture's "customer and lead list."  (Schwartau Aff., ¶ 12.)  Then, on or about March 2, 2004, Interpact's counsel sent a demand letter to MIS Training in Massachusetts. (Schwartau Aff., ¶ 3; Burton Aff., ¶ 4 & Ex. 1.)  That letter alleged that MIS Training had continued to use the trademark "InfowarCon" and had thereby engaged in unlawful trademark infringement.  The letter informed MIS Training that Interpact would commence litigation "before March 21, 2004" unless MIS Training provided written assurance that it would comply "in all respects" with a list of nine demands – one of which was that MIS Training pay Interpact the sum of $3 million.  It gave MIS Training 10 days to reply.  (See Burton Aff., Ex. 1.)

In response, MIS Training expressly rejected Interpact's claims and its $3 million demand.  MIS Training brought this declaratory judgment action on March 17, 2004, in order to

---

[2] Reed has already begun to produce documents in this action in response to third-party discovery served on its general counsel in Newton, Massachusetts. Its Massachusetts outside counsel has negotiated, on Reed's behalf, a Stipulation and Agreement on Confidentiality respectfully such production; that stipulation has been signed by all counsel to Reed, Interpact, and MIS Training, and has been filed with this Court.

remove the "cloud on MIS Training's ability to conduct its business" created by Interpact's allegations. (Complaint ¶ 8; Affidavit of Robert A. Bertsche ("Bertsche Aff.,"), submitted herewith, at ¶¶ 4-5.) Service of process was made on Interpact on March 17. There were no settlement negotiations; MIS Training did not ask Interpact to forgo or postpone the filing of suit, and Interpact never moved from (indeed, its counsel said it would not move from) its $3 million demand or its promise to commence suit by March 21, 2004. (Bertsche Aff., ¶¶ 4-9.)

Interpact kept that promise by initiating litigation against MIS Training on March 19, 2004 – but not in Massachusetts, where MIS Training was located, where the allegedly infringing activities had taken place, where the joint venture that bore the InfowarCon trademark conducted its marketing activities, and where Interpact's new conference partner was incorporated and located. Instead, Interpact's suit (the "Florida Action") was brought in state court in Seminole County, Florida. MIS Training removed the Florida Action to the United States District Court from the Middle District of Florida, then promptly brought a motion to transfer that case to Massachusetts – where this action was already in progress. MIS Training's motion to transfer is still pending in the Middle District of Florida.

This action and the later-filed Florida Action[3] involve the same parties and events. In opposition to MIS Training's motion to transfer, Interpact's primary argument was that this Court in Massachusetts cannot exercise jurisdiction over Interpact in this Massachusetts Action. (See Interpact's Opposition to Motion to Transfer, a copy of which is attached hereto as Exhibit 1.) In the Reply in support of its Motion to Transfer the Florida Action, MIS Training addressed Interpact's personal jurisdiction arguments on the merits. MIS Training further argued that as a matter of comity, the federal court hearing the Florida Action should allow this Massachusetts

---

[3] Interpact, Inc. v. MIS Training Institute LLC, C.A. No. 8:04-CV-0799-T-27MAP (M.D. Fla.).

court to decide the issue of personal jurisdiction in Massachusetts.[4]  (A copy of MIS Training's

Reply in the Florida Action is attached hereto as Exhibit 2.)

Instead of raising its jurisdictional defenses in this Court, Interpact first filed a Motion to

Stay, which this Court denied on June 2, 2004.  Interpact then filed this motion to dismiss on

June 11, 2004.

## ARGUMENT

### I.    Interpact Is Subject to Personal Jurisdiction in Massachusetts. [5]

#### A.    Exercise of Jurisdiction is Proper Under the Massachusetts Long Arm Statute.

The Massachusetts long arm statute provides, in relevant part, that:

> A court may exercise personal jurisdiction over a person, who acts directly or by
> an agent, as to a cause of action in law or equity arising from the person's …
> transacting any business in this commonwealth [of Massachusetts]….

Mass. Gen. Laws c. 223A, § 3(a).   Physical presence in Massachusetts is not required; rather,

the court looks to whether the defendant attempted to participate in the Commonwealth's

economic life.  See Fairview Mach. & Tool, Inc. v. Oakbrook Intern., Inc., 56 F. Supp. 2d 134

(D. Mass. 1999).  As set forth in detail in the affidavit of MIS Training's president, Linda

Burton, Interpact has participated in the economic life of Massachusetts on its own account, as

well as by entering into and participating in both the five-year InfowarCon "joint venture" with

Massachusetts resident MIS Training and the later InfowarCon agreement with Reed

Exhibitions, a Massachusetts corporation and resident.  (See also Schwartau Aff., ¶¶ 3, 11.)

---

[4] "Where the overlap between two suits is nearly complete, the usual practice is for the court that first had
jurisdiction to resolve the issues and the other court to defer."  TPM Holdings, Inc. v. Intra-Gold Industries, Inc., 91
F.3d 1, 4 (1st Cir. 1996).

[5] As the facts presented by MIS Training in support of its proof of this Court's personal jurisdiction over Interpact
are relatively undisputed, this Court should apply a *prima facie* standard, accepting MIS Training's properly
documented evidentiary proffers as true.  Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st
Cir. 1995).

Moreover, Interpact sent into Massachusetts the demand letter that gave rise to this litigation. (Affidavit of Terrence Buchert ("Buchert Aff."), submitted with Interpact's motion, at ¶ 3; Burton Aff., ¶ 3 & Ex. 1.)  This single purposeful act is enough, under these circumstances, to satisfy the Massachusetts long arm statute.  See Nova Biomedical Corp. v. Moller, 629 F.2d 190, 194-196 (1st Cir. 1980) (finding jurisdiction under long arm statute in patent infringement action where declaratory judgment defendant was already conducting patent-related business activity in the forum, and where declaratory judgment plaintiff was pursuing a competing line of work there); Measurement Computing Corp. v. General Patent Corp. Int'l, 304 F. Supp. 2d 176, 180 (D. Mass. 2004) (holding that demand letter and related communication to Massachusetts satisfy "transacting business" requirement of long arm statute); GSI Lumonics, Inc. v. Biodiscovery, Inc., 112 F. Supp. 2d 99, 110 (D. Mass. 2000) (same).

**B.    Exercise of Jurisdiction is Proper Under the Due Process Clause of the Fourteenth Amendment.**

The First Circuit has set forth a tripartite analysis for determining whether the requirements of the Due Process Clause have been met.  These requirements have been met in this case because (1) MIS Training's claims "relate to" Interpact's contacts with Massachusetts, including its entry into a joint venture here; (2) those contacts constitute "purposeful availment" of the benefits and protections afforded by Massachusetts law; and (3) the exercise of jurisdiction over Interpact here is reasonable.  See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144 (1st Cir. 1995); First Act, Inc. v. Brook May Music Company, 311 F. Supp. 2d 258, 260 (D. Mass. 2004).

The "relatedness" requirement is satisfied because this declaratory judgment action relates to Interpact's exclusive licensing of the InfowarCon mark to MIS Training in Massachusetts.  GSI Lumonics, 112 F. Supp. 2d at 111 (finding jurisdiction where plaintiff's

- 7 -

claim of non-infringement was "very closely related" to defendant's contracts with distributors, including the plaintiff). Indeed, MIS Training asserts in its Complaint that even otherwise infringing activities would be permitted because, by breaching the exclusivity clause of the joint venture agreement, Interpact had ceded the trademark to MIS Training. (Complaint, ¶¶ 14, 15, 18.) Thus, the joint venture agreement, which was carried out primarily in Massachusetts, created obligations that directly impacted MIS Training's rights to use the InfowarCon trademark. See Akro Corp. v. Luker, 45 F. 3d 1541, 1548 (Fed. Cir. 1995) (finding jurisdiction arising out of in-forum license where license was exclusive and thus barred declaratory judgment plaintiff from permissive use of patent), cited in Measurement Computing, 304 F. Supp. 2d at 181-182.

Second, Interpact purposefully availed itself of the benefits and protections afforded by Massachusetts law by entering into the joint venture agreement with MIS Training and by its president's visit to Massachusetts, at least once, on related business. See GSI Lumonics, 112 F. Supp. 2d at 110-111, citing Nova, 629 F. 2d at 197. By entering into (and accepting profits from) a joint venture pursuant to which five years of conferences were marketed from Massachusetts, using the trademark (InfowarCon) that is at the center of this case, Interpact purposefully availed itself of the protection of Massachusetts law and "could reasonably anticipate being haled into court here on any claim" relating to its agreement with MIS Training. See GSI Lumonics, 112 F. Supp. 2d at 111; Measurement Computing, 304 F. Supp. 2d at 181 (finding activities "purposefully directed" to Massachusetts residents where defendant and patentee had entered into license agreements with Massachusetts companies). Interpact's multi-year joint ventures with two Massachusetts companies (MIS Training and the Reed Exhibitions division of Reed Elsevier, Inc.), and its full participation therein and profit therefrom, more than

satisfy the cornerstones of "voluntariness and foreseeability" which signify purposeful availment. Back Bay Farm, LLC v. Collucio, 230 F. Supp. 2d 176, 186-187 (D. Mass. 2002).

Whether assertion of jurisdiction over a defendant satisfies the third element of the due process analysis – that it be "reasonable" -- is determined by examining the following factors: "(1) the burden on the defendant in appearing; (2) the interest of the forum state in adjudicating the dispute; (3) the interest of the plaintiff in obtaining convenient and effective relief; (4) the interest of the judicial system in obtaining the most effective resolution of the controversy; and (5) the interests common to all sovereigns in promoting substantial social policies." First Act, Inc., 311 F. Supp. 2d at 261. When considering this third requirement, the First Circuit has directed that "courts considering jurisdictional issues generally should accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience." Foster-Miller, 46 F.3d at 151 (internal quotation omitted). Analysis of these so-called "gestalt" factors demonstrates that it is reasonable for Interpact to defend itself in a Massachusetts forum.

First, litigating the matter in Massachusetts imposes no undue burden on Interpact, as its principal, Winn Schwartau, is a professional speaker who regularly travels all over the country, and overseas, on a regular basis. (Burton Aff., ¶ 6 & Ex. 2.) Second, Massachusetts has a strong interest in resolving this trademark dispute, which substantially affects two Massachusetts companies, MIS Training and Reed Elsevier. Third, Massachusetts has an interest in providing a forum for its residents who are accused of trademark infringement, without compelling them to travel to distant parts of the country to defend themselves. Fourth, the interests of the judicial system are served by providing a single forum where the parties can resolve all the disputes between them; in light of the procedural posture of this case, this Court is in a position to have Massachusetts be that forum.

As part of the five-year, renewable joint venture agreement, the parties jointly engaged in an extensive marketing campaign to promote the InfowarCon conferences between 1998 and 2002. (See Burton Aff., Ex. 3.) This marketing activity included, among other things, the mailing of hundreds of thousands of postcards and brochures to potential attendees – thousands of them within Massachusetts. (Burton Aff., ¶¶ 11-18.) Interpact received 20 percent of the profits from the joint venture, and asserts that it did 40 percent of the work. (Schwartau Florida Aff., ¶ 13.)[6] Thus, aside from Interpact's direct contacts, Interpact's participation in the joint venture – which reached into Massachusetts to do business, and which is now at the center of this lawsuit – satisfies the Due Process Clause. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 55 (1st Cir. 2002) (for purposes of personal jurisdiction, the actions of an agent may be attributable to the principal); Champion Exposition Servs., Inc. v. Hi-Tech Electric, LLC, 273 F. Supp. 2d. 172, 178 (D. Mass. 2003) (defendant's entering into business arrangement with Massachusetts company rendered foreseeable the prospect of "being haled into a Massachusetts court"); Der-Tex Corp. v. Thatcher, 815 F. Supp. 41, 42 (D. Mass. 1993) (denying motion to dismiss declaratory judgment action filed by Massachusetts plaintiff where defendant had sent demand letter into Massachusetts and sold its product in Massachusetts, and its licensee maintained a customer list showing Massachusetts companies as retailers of its product).

Thus, for all of the above reasons, this Court should conclude that the exercise of personal jurisdiction over Interpact is consistent with both the Massachusetts long arm statute and the Due Process Clause.

---

[6] "Schwartau Florida Aff." refers to the May 6, 2004, Affidavit of Winn Schwartau, which was filed with the Florida Court in opposition to MIS Training's motion to transfer. A copy is attached hereto as Ex. 3.

**II.    Interpact Cannot Satisfy Its Burden of Showing that the Middle District of <u>Florida</u> Would be a "Substantially More Convenient Forum" for this Action.**

As an alternative to dismissing this case for lack of personal jurisdiction, Interpact asks this Court to dismiss it or to transfer it to the Middle District of Florida pursuant to 28 U.S.C. §1404(a).  Interpact expends considerable energy arguing that this Court should not apply the "first-filed" preference in favor of keeping this action in the venue chosen by the plaintiff, MIS Training.  Its argument is misguided, however, for reasons that are set forth in detail below.  Even more fundamental, though, is the fact that even if the first-filed presumption were ignored, still Interpact has failed to show that the Middle District of Florida is a more appropriate forum for resolution of this dispute.

"A defendant seeking transfer to a forum that it claims is more convenient has the burden of proving that transfer is warranted."  <u>Nowak v. Tak How Invs., Ltd.</u>, 94 F.3d 708, 719 (1st Cir. 1996).  Factors that the Court should consider include "the convenience of parties and witnesses, … the availability of documents; the possibility of consolidation; and the order in which the district court obtained jurisdiction."  <u>Coady v. Ashcraft & Gerel</u>, 223 F.3d 1, 11 (1st Cir. 2000).  <u>See also</u> <u>Reebok International Ltd. v. Dunkadelic, Inc.</u>, 2004 U.S. Dist. LEXIS 3167, *7-8 (D. Mass. March 2, 2004) (same).

**A.    MIS Training Is Entitled To The First-Filed Presumption.**

The United States Supreme Court has instructed that the plaintiff's choice of forum is to be disturbed only "rarely."  <u>Foster Miller, Inc. v. Babcock & Wilcox Canada</u>, 975 F. Supp. 30, 39 (D. Mass. 1997), <u>citing</u> <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 507 (1947).  Where two actions are pending concurrently in two federal courts, there is a strong presumption favoring the first-filed action.  <u>Nowak v. Tak How, Ltd.</u>, 94 F.3d 708, 719 (1st Cir. 1996); <u>Cianbro Corp. v. Curran-Lavoie, Inc.</u>, 814 F.2d 7, 11 (1st Cir. 1987); <u>Holmes Group, Inc. v. Hamilton</u>

- 11 -

Beach/Procter Silex, Inc., 249 F. Supp. 2d 12, 15 (D. Mass. 2002). The presumption is particularly strong when the first-filed action is in the first-filed plaintiff's home forum. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981). It does not matter that the first-filed action is one for declaratory judgment. Holmes Group, 249 F. Supp. 2d at 15-16 ("where two identical actions are pending concurrently in two federal courts, the first-filed action is generally preferred, *even if it is a request for declaratory judgment*") (emphasis added), citing Genetech, Inc. v. Eli Lilly and Co., 998 F.2d 931, 937 (Fed. Cir. 1993); Biogen, Inc. v. Schering AG, 954 F. Supp. 391, 398 (D. Mass. 1996) (same).

MIS Training filed this action on March 17, 2004, and served Interpact's President, Winn Schwartau, with a summons and complaint that same day. Interpact did not file its action against MIS Training in Florida until March 19, 2004. Thus, MIS Training was the first party to file.[7] Interpact urges that this Court should not apply the first-filed presumption because, it alleges, MIS Training filed this action without telegraphing to Interpact in advance that it planned to do so. (Interpact's Memo., at 6.) However, Interpact cites no authority – and MIS Training has found none – to suggest that a party who receives a demand letter – and a promise that suit will be filed by a date certain unless $3 million is paid – must sit and wait to be sued in a foreign court, rather than immediately reducing uncertainty by filing for declaratory judgment in its home state.

Interpact seeks to shoe-horn the facts of this dispute to fit those cases in which courts found "compelling circumstances" to rebut the first-filed presumption. It is true that courts have declined to honor the first-filed presumption where the first-filing party had misled the other party by feigning good-faith interest in settlement discussions, inducing the other party to forgo

---

[7] For the Court's convenience, true and accurate copies of the docket in this action and in the Florida Action are attached hereto as Ex. 4.

filing of a lawsuit, only to preemptively file in a forum inconvenient to the other party. The United States Supreme court has cautioned, however – and the First Circuit has reiterated – that the plaintiff "should not be deprived of the presumed advantages of his home jurisdiction except up on a *clear showing* of facts which establish *such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience,* which may be shown to be slight or inconvenient." Koster v. Lumbermens Mut. Cas. Co., 330 U. S. 518, 524 (1947), cited in Nowak, 94 F.3d at 720 (noting that administrative or legal problems particular to the court may also justify transfer) (emphasis added). Where there is "no false implication that a party will refrain from litigation during … negotiations, the first-filed presumption may remain intact." Veryfine Products, Inc. v. Phlo Corp., 124 F. Supp. 2d 16, 19 (D. Mass. 2000) citing GT Plus, Ltd. v. Ja-Ru, Inc., 41 F. Supp. 2d 421, 425-427 (S.D.N.Y. 1998).

The first-filed presumption operates with full force here because MIS Training did nothing to mislead Interpact. See Bertsche Aff., ¶¶ 4-9. As Interpact's counsel acknowledges, at no time did MIS Training indicate that it was engaging in settlement negotiations with Interpact, nor did it request that Interpact forestall suit, nor did it indicate to Interpact that MIS Training would forestall suit.[8] (Id., ¶ 7; Buchert Aff., ¶11.) In fact, at all times, as indicated in Interpact's demand letter, MIS Training was aware that Interpact could and would file suit on or before March 21. (Bertsche Aff., ¶ 6.) Interpact did so; it filed suit on March 19, 2004. (Id.)

The first-filed presumption should apply in full force her because, as in Holmes Group, MIS Training

> did not misrepresent its intention to negotiate and then, suddenly, file a declaratory judgment suit to avoid an inconvenient forum. Instead, [MIS Training] replied to [Interpact's]… "cease and desist" letter by denying liability. It made no promise or implication that it would enter into

---

[8] Interpact's counsel presses the point that his correspondence to MIS Training's counsel bore reference to "ongoing settlement discussions." Notably, MIS Training's correspondence bore no such reference. Bertsche Aff., ¶ 7.

negotiations with [Interpact.] [Interpact] did not, therefore, rely on any assurance that its claims would be resolved short of litigation.

Holmes Group, 249 F. Supp. 2d 12, 16 (D. Mass. 2002). As in Holmes Group, the parties had

not engaged in any settlement negations before MIS Training filed suit. 249 F. Supp. 2d at 12.

Interpact had not forgone filing suit (indeed, its ability to file two days later strongly suggests it

was fully intending to keep its promise to sue MIS Training "before March 21"). See 249 F.

Supp. 2d at 12. Rather, both parties "stood on equal footing" when MIS Training filed its

declaratory judgment action. See id., see also Reebok, 2004 U.S. Dist. LEXIS 3167, *8-11

(denying motion to transfer where no "vexatious or oppressive" action by plaintiff was

established). MIS Training's choice to face suit in its home forum represents, as in the usual

case, "considerations of convenience rather than harassment of the defendant." Kleinerman v.

Luxtron Corp., 107 F. Supp. 2d 122, 125 (D. Mass. 1998); Nowak, 94 F.3d at 719.

**B.      Private Factors Point To Massachusetts as the Most Convenient Forum to Resolve the Parties' Dispute.**

**1.      The Vast Majority of Witnesses Reside In Massachusetts.**

While it is too early in the litigation to identify all the potential witnesses in this case, it is

clear that the overwhelming majority of likely witnesses reside in Massachusetts.

**Non-Party Witnesses.** Interpact alleges that it has suffered more than $3 million in

damages because of Reed Exhibitions' cancellation of a long-term agreement, allegedly due to

the actions of MIS Training. (Buchert Aff., Ex. A.) Thus, Reed Exhibitions is a critical third-

party witness. Reed Exhibitions is a division of Reed Elsevier, Inc., a Massachusetts corporation

with offices in Newton, Massachusetts, as well as in Connecticut. (Buchert Aff., Ex. D; Burton

Aff., ¶ 23.) Thus, Massachusetts is a far more convenient location than Florida for witnesses

from Reed Exhibitions. More importantly, Massachusetts has subpoena power over Reed Exhibitions' witnesses and documents; Florida does not.

The focus of Interpact's claims is on MIS Training's allegedly infringing actions following the termination of the InfowarCon Agreement. (Burton Aff., Ex. 1.) On these points, Anita D'Amico, an outside consultant who helped with production of MIS Training's "Forum on Information Warfare" in 2003, will be a relevant witness. Ms. Diamico resides in New York. (Burton Aff., ¶ 25.)

**Party Witnesses.** MIS Training is in the business of marketing and conducting conferences and workshops on a wide variety of topics. (Burton Aff., ¶ 3.) MIS Training employs approximately 52 employees, 40 of whom are based in Massachusetts, and the rest in London and Asia. (Id.) As indicated in the InfowarCon Agreement, while MIS Training was to produce the conferences in conjunction with Interpact, MIS Training received 80 percent of the profits, and assumed 80 percent of the risk of loss. (Burton Aff., Ex. 3.) MIS Training employees, in Massachusetts, performed approximately 90 percent of the work necessary to produce the conferences. (Burton Aff., ¶ 11.) MIS Training produced the brochure and website for the conferences, communicated with the speakers, marketed the conferences, secured the venue, made vendor sales, and ran the conferences. (Id.) Virtually all direct mail to promote the InfowarCon Conferences was printed in and mailed from Massachusetts. (Id.) At least a dozen current or former MIS Training employees were intimately involved in this project, and even more employees assisted in some way. All of these employees reside in Massachusetts. (Burton Aff., ¶¶ 20-21.)

For example, Michael Sobol, former Chairman and President, negotiated and signed the InfowarCon Agreement and participated in its implementation during his tenure (prior to 1999).

Lois Jacobsen, former Chief Executive Officer, had responsibility for overseeing the production of the InfowarCon Conferences during her tenure (1999 through July, 2002). Linda Burton, current President and Chief Executive Officer, has knowledge of the performance of the Agreement from July, 2002 forward, as well as of MIS Training's activities following termination of the Agreement. Sharon Friedman, Sheri Garf, and Elisa Ufland were involved with marketing the conference under the InfowarCon Agreement. Pamela Bissett was the customer service manager; Adam Lennon worked with vendor sales and Gloria Simpson worked with attendee sales; Jean Hey was the Director of the Conference Group; and Rodrigo Vasquez was the director of information technology. (Burton Aff., ¶ 20.) All of these employees, most (but not all) of whom are still employed by MIS Training, live in Massachusetts. (Id. ¶ 21.)

By contrast, there are very few witnesses from Florida. Interpact is a Delaware corporation with its place of business in Seminole, Florida. (Schwartau Aff., ¶ 2.) Mr. Schwartau is Interpact's only full time employee. (Id.) Aside from Mr. Schwartau, Interpact has only two part-time employees: Schwartau's assistant, Betty O'Hearn, and another person, Kelley Walker, both of whom reside in Florida. (Burton Aff., ¶ 7.) Even if all three of Interpact's employees are witnesses in the case, there are still more than a dozen MIS Training employees in Massachusetts who will likely be witnesses, such that the balance of convenience clearly weighs in favor of Massachusetts.

Moreover, according to Interpact's web site, Mr. Schwartau has speaking engagements several times a month all across the United States, Canada, and Europe. (Burton Aff., ¶ 6 & Ex. 2.) Given his frequent travel schedule, it would likely be less of an interruption to his business for him to travel to Massachusetts, than for MIS Training to bring more than a dozen people to Florida. During the course of the InfowarCon Agreement, Mr. Schwartau traveled to MIS

Training in Massachusetts on approximately three occasions. (Burton Aff., ¶ 22; Schwartau Aff.,

¶ 6) (admitting travel to Massachusetts with respect to InfowarCon on one occasion). No MIS

Training employee ever traveled to Florida in connection with the InfowarCon Agreement,

except on one occasion, when its then-president, Michael Sobol, who was in Florida for other

reasons, made a brief visit to Mr. Schwartau. (Burton Aff., ¶ 22.)

### 2.   The Vast Majority of Documents and Other Sources of Proof Are Located In Massachusetts.

The location of relevant documents and other sources of proof also favors Massachusetts

as the forum for this litigation. Given that approximately 90 percent of the work to produce the

InfowarCon Conferences was done by MIS Training, in Massachusetts, it is not surprising that

the vast majority of documents (including electronic information) relevant to this litigation are

maintained by MIS Training at its facility in Massachusetts. (Burton Aff., ¶ 26.) Such

documents include, among other things:

a.   Communications between MIS Training and Interpact regarding the negotiation and performance of the InfowarCon Agreement, including production of conferences pursuant to that Agreement;

b.   Communications between MIS Training and third parties regarding the production of the conferences under the InfowarCon Agreement, such as communications with speakers, attendees, hotel contacts and vendors;

c.   Contracts with all vendors, including hotel contracts, mailing and printing services agreements, and exhibitor contracts.

d.   Documents concerning the production of the conferences during the term of the InfowarCon Agreement;

e.   Documents provided to MIS Training by Interpact in the course of performance of the InfowarCon Agreement; and

f.   Documents concerning MIS Training's production of conferences on information warfare issues following expiration of the InfowarCon Agreement.

(Id.)  Because the crux of Interpact's claims concerns actions alleged to have been performed by MIS Training, it is likely that any additional documents and sources of proof will also be located in Massachusetts, where MIS Training resides.

For all of the above reasons, consideration of the "private interests" weighs strongly in favor of keeping this case where MIS Training filed it:  in Massachusetts.  See Medi U.S.A., 791 F. Supp. at 210 (private interests include plaintiff's choice of forum, situs of material events, relative ease of access to sources of proof).

### C.     Public Factors Also Point to Massachusetts as the Most Appropriate Forum to Resolve the Parties' Dispute.

Other factors that this Court may consider in deciding whether to transfer venue include the substantive law to be applied and the connection of the forum state to the dispute.  These factors are often referred to as the "public factors."  See, e.g., Medi USA , 791 F. Supp. at 210 (citing 15 C. Wright & A. Miller, Federal Practice §§ 3849-53 (1986)).  Here, the public factors point to Massachusetts as the most appropriate forum for the resolution of this dispute.

### 1.     Because the Substantive Law to be Applied is Federal Trademark Law, There is No Public Interest Favoring Transferring the Case to Florida.

The only issue to be litigated in this case is one of federal trademark law under the Lanham Act, 15 U.S.C. § 1051 et seq., with which the United States District Court in Massachusetts can be presumed to have at least the same familiarity as its counterpart in the Middle District of Florida.

### 2.     Massachusetts Has a Stronger Connection to the Dispute.

Massachusetts has more of a connection to the issues in dispute in the case than Florida, as the dispute involves two Massachusetts companies – MIS Training and Reed Exhibitions –

and substantial activities undertaken in Massachusetts, as set forth above.  The only connection Florida has to this dispute is that Interpact's principal, Winn Schwartau, resides there.[9]

The InfowarCon Conferences, the information warfare conference produced by MIS Training in 2003, and the information warfare conference produced by Interpact with Reed Exhibitions in 2003, all occurred in Washington, D.C. (except those that occurred in Europe). Id. at ¶ 7.  The attendees and conference speakers were from all over the United States and Europe.  Id.  These factors do not favor either forum, but certainly do not favor transferring the case to Florida.

## CONCLUSION

For all of the above reasons, Interpact's motion to dismiss or, alternatively, to transfer this action to the Middle District of Florida, should be denied.

Respectfully submitted,

MIS TRAINING INSTITUTE LLC

By its attorneys,

June 29, 2004

Robert A. Bertsche, BBO# 555433
Jeffrey A. Dretler, BBO# 558953
PRINCE, LOBEL, GLOVSKY & TYE LLP
585 Commercial Street
Boston, MA  02109
(617) 456-8000

---

[9] Interpact's reference to MIS Training activities in Florida that bear no relation to InfowarCon or the issues in dispute in this case are entitled to no weight in determining whether to transfer.