UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**INTERPACT, INC.,**
a Delaware Corporation,

    Plaintiff,

vs.                                             C.A. No. 8:04-CV-799-T-27MAP

**MIS TRAINING INSTITUTE, LLC,**
a Delaware Limited Liability Corporation,

    Defendant.

_____/

**MEMORANDUM OF LAW IN OPPOSITION
TO MIS TRAINING'S MOTION TO TRANSFER ACTION**

    Plaintiff, Interpact, Inc. ("Interpact"), by and through its undersigned attorney, submits this memorandum in opposition to the Motion filed by Defendant, MIS Training Institute, LLC ("MIS Training") to transfer this action to the United States District Court for the District of Massachusetts. In support of this memorandum, Interpact offers the Affidavits of Winn Schwartua (the "Schwartau Aff.") and Terrence S. Buchert (the "Buchert Aff."), and states as follows.

    This action is a three-count complaint brought by Interpact for infringement of its trademark rights under the Lanham Act, 15 U.S.C. §1051 et esq., for common law tortious interference with its contractual relationship with a third party, and for violation of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat., Chapter 501). The action was originally filed in the Sixth Judicial Circuit, in St. Petersburg, Florida on March 19, 2004. MIS Training then removed the case to this Court. The

action to which MIS Training seeks to transfer this case is an action for declaratory judgment filed in the United States District Court for the District of Massachusetts (the "Massachusetts Litigation") only <u>two days</u> earlier.

MIS Training's primary argument in support of its motion to transfer is that, because its case was filed two days earlier, a presumption in favor of that first-filed case justifies transfer to Massachusetts. However, that presumption is rebuttable, and, in this case, applying the presumption would defeat the interests of justice. That is especially true where, as here, MIS Training precipitously filed its action for declaratory judgment simply to gain an advantageous forum (i.e., "forum shopping") while Interpact was attempting to negotiate a non-judicial resolution of the dispute.

Not only should the first-filed presumption not apply in this case, there are serious doubts about whether the Massachusetts court would exercise personal jurisdiction over Interpact. Under First Circuit law, the mere fact that Interpact contracted with a Massachusetts resident, without more, is not enough to establish personal jurisdiction. The Massachusetts court thus likely would dismiss or transfer the Massachusetts Litigation in any event. Moreover, factors of convenience are actually in favor of the Florida forum chosen by Interpact, and MIS Training has not met its burden of proving that transfer is warranted. The Court should therefore deny the motion to transfer.

## FACTUAL BACKGROUND

In 1997, MIS Training and Interpact entered into a five-year joint venture agreement (the "Agreement). The Agreement required that they work together to promote, market, and conduct annual conferences on information security under the

name "InforwarCon", a concept originally developed by Winn Schwartau, the president of Interpact. Schwartau Aff. ¶5. As part of the Agreement, Interpact applied for and obtained a federal trademark of the name, and then assigned the use of that name to the joint venture for the term of the Agreement. Schwartau Aff. ¶¶4, 5. The parties successfully conducted annual conferences for five years, splitting the workload, 60% by MIS Training and 40% by Interpact. Schwartau Aff. ¶13.

When the relationship was not renewed, Interpact retained exclusive control of the trademarked name. Schwartau Aff. ¶15. It then contracted with a third party, Reed Exhibitions, for a 20-year relationship for use of the name and concept. Schwartau Aff. ¶16. MIS Training had full knowledge that Interpact intended to use the name and logo to conduct annual conferences with Reed Exhibitions. Schwartau Aff. ¶18.

In 2003, Interpact again conducted its Inforwarcon conference. That same year, MIS Training also created, marketed, and conducted a conference on information security, which it called "The Forum on Information Warfare". Burton Declaration ¶¶14, 15. This case is about the events that occurred in 2003, and the manner in which Interpact's erstwhile partner conducted its 2003 marketing campaign for that conference.

## ARGUMENT

1. **The Defendant's conduct negates any application of the presumption in favor of the first-filed action.**

MIS Training filed its complaint in Massachusetts two days before this case was filed in state court in Florida. While there is a presumption in favor of the first-

filed suit, there are compelling circumstances here to rebut that presumption. While Interpact was attempting to work within the sound judicial policy of promoting extrajudicial dispute resolution before initiating suit, MIS Training was simply keeping Interpact at bay while it crafted its declaratory judgment filing. MIS Training should not be permitted to benefit from Interpact's good faith and judicially responsible decision to defer filing suit while the parties continued their out-of-court negotiations.

Interpact's counsel initiated contact with MIS training. Buchert Aff. ¶3. It is obvious from the emails sent by its counsel to counsel for MIS Training that the contact continued for the express purpose of attempting to reach an amicable out-of-court resolution. Buchert Aff. ¶5. In response to an inquiry by MIS Training's counsel, Interpact's counsel undertook to provide a portion of the evidence – four emails were sent with attached examples of the actions described in the demand letter. Buchert Aff. ¶5. A copy of the agreement terminating Interpact's 20-year relationship with Reed Exhibitions was also faxed. Buchert Aff. ¶6. Interpact's counsel thought he was negotiating a possible settlement, as is shown by the disclaimer that all information was being provided as part of protected settlement discussions. Buchert Aff., Exhibit C. At no time did MIS Training's counsel indicate that he was even contemplating taking the dispute to court. Interpact's counsel was blind-sided when he learned that MIS Training had filed suit in Massachusetts concerning the very issues that he had been negotiating with MIS Training's counsel just a day earlier; namely, for a declaration of non-infringement concerning Interpact

registered trademark, "InfowarCon". That declaratory judgment action is simply derivative of this case, which was filed two days later in Florida.

The primary purpose of the "first-filed" rule is to conserve judicial resources. As such, the matter is one of discretion for the trial court. Allstate Insurance Company v. Clohessy, 9 F. Supp. 2d 1314 (M.D. Fla. 1998). However, compelling circumstances that may justify departure from the rule are instances where one party, as here, which is on notice of a potential lawsuit, files a declaratory judgment in its home forum simply to win the race to the courthouse for forum selection.

Treatment of the first-filed rule by the Massachusetts federal court is particularly instructive here. That court has held that the first-filed rule is not a rigid one and that the presumption can be rebutted under the circumstance present here. See Davox Corp. v. Digital Sys., Int'l, Inc., 846 Supp. 144, 147-49 (D. Mass. 1993); see also Symbol Tech., Inc. v. Quantum Assoc., Inc., 2002 WL 225934, at *2-3 (D. Mass. Jan. 30, 2002); Kleinerman v. Luxtron Corp., 107 F. Supp. 2d 122, 124-25 (D. Mass. 2000).

For example, in Davox, under facts very similar to here, the court declined to exercise personal jurisdiction over the defendant. Of particular importance to the Massachusetts court was the fact that, though the initial demand from counsel for the infringed party was ominous enough to generate a reasonable apprehension of a lawsuit, it also invited the infringing party to address those concerns and attempted to avoid potentially expensive and time-consuming litigation. Instead, the infringing party initiated preemptive litigation in another forum. The court declined to reward "conduct which was inconsistent with the sound judicial policy of promoting extra

5

judicial dispute resolution and conservation of judicial resources." Davox, 846 Supp. at 148. It held that:

> Here, [the plaintiff] should not be permitted to take advantage of the fact that [the defendant] responsibly deferred filing potentially protracted and expensive litigation and, indeed, was perhaps misled into believing it would not be prejudiced by doing so by [the plaintiff's] responses to its letters.

Id.

Another Massachusetts court has likewise rejected a plaintiff's attempt to forum shop by creating the appearance that it would entertain settlement, but then filing a preemptive suit. See Symbol Tech., 2002 WL 225934. In that case, the court again recognized the first-filed preference, but indicated that the arguments in favor of keeping the case in Massachusetts were "weakened by the strong indication that its decision to file [there was] an attempt at forum shopping." Id. at *3. The court noted that the plaintiff brought a declaratory judgment action a mere one month after being notified of the potential dispute. In rejecting the first-filed presumption, the court stated that courts "are aware that plaintiffs at times try to use the Declaratory Judgment Act 'to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action'." Id.

MIS Training's reliance on Kleinerman is perplexing. In that case, the court denied a motion to transfer a *second*-filed action in Massachusetts because the first-filed California action was nothing more than a "race to the courthouse." Kleinerman, 107 F. Supp. 2d at 124. It noted that the first-to-file California plaintiff "pounce[ed]

preemptively" to beat the Massachusetts plaintiff in securing the forum. Kleinerman involved patent infringement, but the court's holding is persuasive:

> This Court is persuaded that in the patent infringement cases, where 1) the patentee notifies an alleged infringer of suspected infringement, 2) good faith negotiations ensue and 3) the alleged infringer then files a declaratory judgment action in another forum, a subsequently-filed action by the patentee in the nature of patent infringement filed within a reasonable time after the first action is entitled to some deference and that the "first-filed rule" will not be dispositive.

Id. at 124-25. Here, two days surely is a "reasonable time after the first action" sufficient to dispose of the first-filed rule.

Two of the other Massachusetts cases cited by MIS Training in its memorandum are distinguishable from the case before this court on their facts:

- The court in Veryfine Products, Inc. v. Phlo Corp., 124 F. Supp. 2d (D. Mass. 2000) cited Davox favorably, but denied a motion to transfer because the two parties had been in negotiations for a long time, and there was no immediate reaction to a threat to sue.

- The court in The Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F. Supp. 2d (D. Mass. 2002) denied the motion to transfer a case from its jurisdiction, but also cited Davox favorably, and noted that when a party's effort to have the first-filed suit is motivated by its desire secure the best forum, deference to later-filed forum may be appropriate.

2. **Interpact is not subject to personal jurisdiction in Massachusetts.**

MIS Training took advantage of Interpact's willingness to engage in a dialogue rather than filing suit in Florida, and thus won the race to the courthouse in Massachusetts. In its haste, however, MIS Training has overlooked the fact that Interpact does not have sufficient "minimum contacts" with Massachusetts to be subject to personal jurisdiction there. Interpact has solicited no business from

Massachusetts and has had virtually no contact with Massachusetts whatsoever. This is in sharp contrast to MIS Training, which conducts over 20 seminars per year in Florida. Schwartau Aff., ¶19. Moreover, not one of the seminars and conferences conducted by the parties pursuant to the Agreement was held in Massachusetts. Under Massachusetts law, which governs the personal jurisdiction question in the Massachusetts Litigation,[1] Interpact is not subject to personal jurisdiction in Massachusetts.[2] This Court should therefore maintain jurisdiction over the parties' dispute.

It is well settled in Massachusetts that the plaintiff bears the burden of proving the existence of personal jurisdiction. Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995); Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995); LaVallee v. Parrot-Ice Drink Products of Am., Inc., 193 F. Supp. 2d 296, 298 (D. Mass. 2002). MIS Training is the plaintiff in the Massachusetts Litigation. It thus must present "specific facts" to support its claim of personal jurisdiction there. LaVallee, 193 F. Supp. 2d at 298. This it cannot do.

Before subjecting a non-resident to its jurisdiction, the Massachusetts court must find sufficient contacts that meet the requirements of both its long-arm statute and the due process clause of the Fourteenth Amendment. Nowak v. Tak How Inv., Ltd., 94 F.3d 708, 712 (1st Cir. 1996); LaVallee, 193 F. Supp. 2d at 299-300. Even assuming that Interpact's sending of a demand letter to MIS Training in Massachusetts would satisfy the long-arm statute requirements, the Massachusetts

---

[1] See Bearse v. Main Street Investments, 170 F. Supp. 2d 107, 111 (D. Mass. 2001).

[2] While Interpact has moved to stay the Massachusetts Litigation pending resolution of this motion, it will move to dismiss that litigation for lack of personal jurisdiction, if and when necessary.

court must find that Interpact had direct contacts with Massachusetts sufficient to satisfy due process concerns other than the letter. Absent extensive and direct business activities in that forum, the Massachusetts court will not exercise personal jurisdiction over Interpact simply by virtue of having sent a demand letter to a Massachusetts resident. Nova Biomedical Corp. v. Moller, 629 F.2d 190, 197 (1st Cir. 1980); Boston Scientific Corp. v. Bonzel, 132 F. Supp. 2d 45, 50-51 (D. Mass. 2001); GSI Lumonics, Inc. v. Biodiscovery, Inc., 112 F. Supp. 2d. 99, 110 (D. Mass. 2000); Polaroid Corp. v. Feely, 889 F. Supp. 21, at 27 (D. Mass. 1995).

The First Circuit uses a tripartite analysis to determine if sufficient contacts exist to exercise personal jurisdiction over a party. First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must be reasonable. "An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction." Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999); see also Sawtelle, 70 F.3d at 1387-89; Clark v. City of St. Augustine, FL, 977 F. Supp. 541, 543 (D. Mass. 1997).

    A.    <u>MIS Training's declaratory judgment action in Massachusetts does not arise out of Interpact's activities in Massachusetts.</u>

The first consideration under the Massachusetts tripartite framework is whether MIS Training's declaratory judgment action in Massachusetts arises out of or relates to Interpact's activities in Massachusetts. Sawtelle, 70 F. 3d at 1389. Simply put, there is no connection between the two.

"The relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state." Id.; see also Phillips Exeter, 196 F.3d at 290. As shown in Winn Schwartau's affidavit, Interpact conducts no business in Massachusetts. The Agreement itself was negotiated via telephone and facsimile. Schwartau Aff., ¶8. And the "mere existence of a contractual relationship between an out-of-state defendant and an in-state plaintiff does not suffice, in and of itself, to establish jurisdiction in the plaintiff's home state." Phillips Exeter, 196 F.3d at 290. This is especially true where, as here, "most performance required from [MIS Training] was to be rendered *outside* of Massachusetts." Lyle Richards Int'l, Ltd. V. Ashworth, Inc., 132 F.3d 111, 113 (1st Cir. 1997).

Schwartau traveled only once to Massachusetts in connection with the joint venture, whereas MIS Training has conducted at least 20 conferences per year in Florida, and its representatives traveled to Florida in connection with the joint venture on several occasions. Schwartau Aff., ¶¶9-11, 19. Other than pure speculation and surmise, which is rebutted by Schwartau's sworn affidavit, MIS Training cannot show more than a fleeting connection between Interpact and Massachusetts. As was the case in Lyle Richards, the Agreement "did not even require that the internal

administrative functions actually conducted by [MIS Training] in Massachusetts be performed there." Id. Thus, the fact that MIS Training organized the out-of-state conferences and seminars from its Massachusetts offices is completely irrelevant.

MIS Training also cannot meet the "arising out of" requirement because its Massachusetts Litigation seeks only a declaration of non-infringement of Interpact's "Infowarcon" trademark. Under the federal trademark laws, a declaration of non-infringement is not specific to any particular forum. Other than the fact that it is located in Massachusetts, MIS Training's infringing activities are not specific to Massachusetts. Indeed, the most evident and recently pervasive infringement concerns MIS Training's activities in connection with its 2003 "The Forum on Information Warfare" conference in Washington, D.C.

> B. <u>Interpact did not avail itself of the privilege of doing business in Massachusetts and thus it was not foreseeable that Interpact would be haled into court there.</u>

The Massachusetts court also could not find that Interpact purposefully availed itself of the privilege of conducting business in Massachusetts, such that it could foresee being brought into court there. Sawtelle, 70 F.3d at 1391; Boston Scientific, 132 F. Supp. 2d at 51. It is not enough that Interpact contracted with a company located in Massachusetts. "Without evidence that the defendant actually reached out to the plaintiff's state of residence to create a relationship – say, by solicitation – the mere fact that the defendant willingly entered into a tendered relationship does not carry the day." Phillips Exeter, 196 F.3d at 290.

Interpact does not advertise or solicit business in Massachusetts. It does not benefit from the laws or regulations of Massachusetts. The fact that it maintains a

11

general internet presence, without more, does not subject it to jurisdiction in Massachusetts. Comer v. Comer, 295 F. Supp. 2d 201, 210 (D. Mass. 2003). Other than its having contracted with MIS Training to conduct conferences *outside of Massachusetts*, Interpact has had virtually no contact with that state. "The very exiguousness of these contacts suggests that [Interpact] could not reasonably have foreseen its susceptibility to suit in a [Massachusetts] court." Phillips Exeter, 196 F.3d at 292; see also Boston Scientific, 132 F. Supp. 2d at 51. MIS Training thus cannot satisfy the second prong of the Massachusetts tripartite analysis.

    C.    <u>The Massachusetts court's exercise of jurisdiction over Interpact would be unfair and unreasonable.</u>

It also would be unreasonable for the Massachusetts court to exercise jurisdiction over Interpact. First, it is relevant that MIS Training has already subjected itself to jurisdiction in Florida. See Boston Scientific, 132 F. Supp. 2d at 51. MIS Training can obtain the relief it is seeking in this action, which will resolve the infringement issue and several others. Second, the judicial system's interest in obtaining the most efficient resolution of the controversy favors the more comprehensive action. Id. This case involves the single claim present in the Massachusetts Litigation, plus one common law claim and one Florida-specific statutory claim. This Court thus has a greater adjudicatory interest in the outcome of the dispute. It also would be more efficient, for the courts and the parties, to resolve the entire dispute here. Third, as shown in Section 3, *infra*, the convenience factors weigh in favor of litigating the parties' dispute in Florida.

3. **Convenience factors are in favor of a Florida venue.**

    A. <u>The relevant convenience factors were not properly represented in MIS Training's memorandum.</u>

Contrary to the assertion made in its memorandum, the vast majority of material witnesses do <u>not</u> reside in Massachusetts. Since the claims involve actions that took place after the contractual period, simply listing the persons who were involved during the previous five years, as MIS Training has done, is disingenuous. Certainly not all of MIS Training's employees possess material knowledge of the activities that Interpact has alleged have caused damages to it. However, *all* of Interpact's employees and independent contractors have material knowledge regarding that evidence, and are material witnesses in the case.

As to non-party witnesses, it is a bald assumption made by MIS Training that anyone, who is not otherwise compelled to do so by subpoena or court order, would rather travel out of state and testify in Massachusetts over Florida. One might as easily argue that a snow-bound resident of New York would surely rather travel to sunny Florida.

One absolutely critical witness is Michael Sobol, the former CEO of MIS Training. Schwartau Aff. ¶¶9, 15. Fortunately, he already resides in this state, (Schwartau Aff. ¶11) so the subpoena power of the Court is effective to compel his attendance in this district.

MIS Training has implied that it is not convenient for its employees to travel to this forum. However, the involvement of its employees in this state is already well established and pervasive. It has conducted numerous seminars, conferences,

13

clinics, symposiums, and other training sessions in the State of Florida – at least 20 per year, primarily in the counties that encompass the Middle District. Schwartau Aff. ¶19. It has on numerous occasions enjoyed the benefits of conducting business in this state, and did so throughout its contractual relationship and afterward. It is therefore subject to general personal jurisdiction in Florida (whereas Interpact is not subject even to specific personal jurisdiction in Massachusetts).

Schwartau has previously met in Orange County, Florida with various officers and employees of MIS Training regarding the InforwarCon conference on several occasions, including with its CEO, Lois Jacobson. Schwartau Aff. ¶10. Even MIS Training's final contact with Interpact came when it sent a final payment by check to Interpact at its Pinellas County, Florida business location. Schwartau Aff. ¶17.

The party moving to transfer a case for the convenience of parties and witnesses has the burden of persuading the trial court that transfer is appropriate. Tampa Bay Storm, Inc. v. Arena Football League, Inc., 932 F. Supp. 281 (M.D. Fla. 1996). In order to overcome the presumption in favor of a Plaintiff's chosen forum, it must show that the balance of convenience is "strongly in favor" of the transfer. Id. at 282.

A reasonable review of the declaration of Linda Burton and the affidavit of Winn Schwartau shows that the actual number of material witnesses associated with each company is likely to be roughly equal, and the number of unaffiliated witnesses is split among several other states, with the notable exception of Michael Sobol, who is amenable to process in Florida. In such a case, where there is no clear difference in the convenience of the parties and witnesses, a transfer will merely shift the

inconvenience from one party to the other. Under such circumstances, as this court previously decided in <u>Eyecare International, Inc. v. Underhill</u>, 119 F. Supp. 2d 1313 (M.D. Fla. 2000), the choice of forum made by the plaintiff, Interpact, should remain.

B. <u>Document location is irrelevant.</u>

Very little of the "documentary" evidence in this case is on paper. Instead, it will primarily consist of emails, electronic PDF files, audiotapes, and graphic presentations showing the work of electronic search engines. As such, the evidence largely resides in any computer anywhere. Employees and associates of Interpact found the evidence while sitting at computer terminals in Pinellas County, Florida. They took electronic "photographs" of the condition of websites or search engines on particular dates. Buchert Aff. Exhibit C.

Moreover, in attempting to paint a bleak picture of a voluminous document production, MIS Training again focuses on the five-years worth of documents related to the seminars and conferences. As noted previously, however, this case does not concern performance under the Agreement during those five years. Rather, it concerns MIS Training's post-Agreement actions. There simply cannot be an unduly burdensome amount of documents in MIS Training's possession on that score.

4. **<u>Public factors favor the Florida forum.</u>**

As was pointed out in the MIS Training brief, a court in either forum is equally able to hear evidence regarding the violation of the Lanham Act. However, the other two claims are not merely derivative of the infringement claim. As the complaint stated, MIS Training did not merely *accidentally* use the Infowarcon trademark. Instead, it used knowledge gained during the joint venture period to knowingly

contact customers of Interpact through internet and telephone marketing, and explained that the name of the conference had simply been "renamed", and sent them PDF files with the embedded logo of Infowarcon. In doing so, it knowingly interfered with Interpact's new contractual relationship with Reed Exhibitions.

A Federal court in Florida is better equipped than a Federal court in Massachusetts to hear and consider evidence regarding the Florida claim of tortious interference and the Florida statutory claim. As this court determined in <u>Tampa Bay Storm, Inc. v. Arena Football League, Inc.</u>, 932 F. Supp. 281 (M.D. Fla. 1996), it is also not in the best interest of nor convenience of the parties to ask a federal court in one state to interpret the statutory scheme of another state.

**CONCLUSION**

This Court has discretion to decide which of two forums should hear this case. Based on the evidence presented, the convenience factors favor this Plaintiff's choice of forum. This Court should therefore deny the motion to transfer.

I HEREBY CERTIFY that a copy of the foregoing has been furnished by U.S. Mail to Robert A. Bertsche, Esq., Prince, Lobel, et al., 585 Commercial St., Boston, MA 02109, and Marty J. Solomon, Esq., Carlton Fields, P.A., P.O. Box 3239, Tampa, FL 33601-3239, this 10 day of May, 2004.

TERRENCE S. BUCHERT, ESQ.
P.O. Box 47121
St. Petersburg, FL 33743
(727) 302-0351/Fax (727) 345-0171
FBN 0776793
Attorney for Plaintiff