UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**INTERPACT, INC.,**
a Delaware Corporation,

    Plaintiff,

vs.                                     C.A. No. 8:04-CV-799-T-27MAP

**MIS TRAINING INSTITUTE, LLC,**
a Delaware Limited Liability Corporation,

    Defendant.

_____/

### AFFIDAVIT OF WINN SCHWARTAU

STATE OF FLORIDA     )
COUNTY OF PINELLAS    )

Winn Schwartau, after being duly sworn, deposes and says, based on his personal knowledge, as follows:

1. I am over the age of eighteen years old.

2. I am now, and at all times material to this matter have been, the President of Interpact, Inc. ("Interpact"), a Delaware corporation whose only office is located in Seminole, Florida. I am the only full time employee of the business.

3. I am personally familiar with the facts involving the creation of the Infowarcon conferences and the joint venture between Interpact and MIS Training Institute, LLC ("MIS Training") that produced them.

4. The joint venture was intended to combine the experience of MIS Training in putting on conferences of various types with the specific expertise of Interpact in developing its substance, content and marketing, designing the program, coordinating speakers, and distributing information.

5. I developed the concept for the conference several years before commencing the joint venture with MIS Training. Interpact then applied for and obtained the registered trademark for the name "InforwarCon". A copy of the United States trademark registration is attached to this affidavit as **Exhibit A**.

6. I have reviewed the declaration of Linda Burton, which was filed by Defendant in support of its Motion for Transfer. With all due respect, she is not competent to testify on personal knowledge as to any of the facts regarding Infowarcon that occurred before she joined MIS Training in July 2002. Her accounts of events and occurrences before that time are pure speculation or hearsay.

7. I negotiated the written agreement for the joint venture as an authorized representative of Interpact with Michael Sobol, my good friend, who was at that time the CEO and President of MIS Training. A true and correct copy of the joint venture agreement (the "Agreement") is attached to this affidavit as **Exhibit B**.

8. The negotiations occurred largely on the telephone, but drafts of a written agreement were faxed to me.

9. I recall traveling to Massachusetts once on business associated with the Infowarcon joint venture. Michael Sobol also traveled at least once to Pinellas County, Florida on business associated with the InfowarCon joint venture.

10. I met in Orange County, Florida with various officers and employees of MIS Training regarding the InforwarCon conference on several occasions, including its then-CEO Lois Jacobson.

11. Michael Sobol has owned a home in Collier County, Florida for as long as I have known him, and at least since 1997 when we began discussing a joint venture between our respective companies. I have also spoken to him on the

2

telephone while he was at that location many times since he ended his affiliation with MIS Training in 1999.

12. None of the actual InfowarCon conferences conducted by the joint venture took place in either Florida or Massachusetts.

13. In my experience with the InfowarCon joint venture, putting on conferences from 1998 through from 2002, the workload was usually split - 60% of the work was performed by MIS Training employees, and 40% by Interpact employees. Primarily, communication and development of the conferences was accomplished on the web and telephone, with face-to-face meetings either at the Inforwarcon conferences themselves or at Florida locations for other MIS Training events.

14. Ms. Burton is correct in her statement that the agreement with MIS Training was not renewed after completion of the obligation. However, it was not for a lack of trying on my part. I recall discussing that subject with Lois Jacobson, Ms. Burton's predecessor as CEO of MIS Training, in September 2001. However, we did not come to an agreement in that regard.

15. The final conference that was required under the terms of the agreement took place in September 2002. At that point, the obligations that Michael Sobol and I had negotiated for our separate companies were completed. Exclusive control of the trademarked name "InfowarCon" then reverted back to Interpact.

16. I executed an agreement in October 2002 with Reed Exhibitions to sell the name "InforwarCon" and to assist it in presenting annual InforwarCon conferences for the next twenty years, commencing in fall 2003.

17. During the early months of 2003, I continued to have email and telephone conferences with various MIS Training employees, including Linda Burton,

primarily regarding the transfer and cancellation of hotel reservations in the Washington D.C. area that had been made by MIS Training. Until this issue was resolved, MIS Training held back the final payment that was due to Interpact for the last InfowarCon conference. MIS Training finally sent the final payment by check to Interpact at its Pinellas County, Florida business location.

18. Throughout early 2003, I continued to have email and telephone conferences with various MIS Training employees, including Linda Burton, in attempts to resolve the issue of which company was entitled to continue to use the InfowarCon logo and trademark. I also communicated with her from my Pinellas County, Florida business location regarding my demand for return of the InfowarCon customer and lead list, which was jointly developed by both companies as part of the joint venture. That list was never returned to Interpact.

19. In the years that I have been associated with MIS Training, I am aware that it has conducted at least 20 conferences of various types in the state of Florida *each year*, usually in Orange County. I have witnessed the manner in which the staff of MIS Training travels to the site and conducts detailed on site planning for each conference, often one to three years ahead of time.

20. Further Affiant sayeth naught.

_____
Winn Schwartau

Winn Schwartau, being by me first duly sworn, deposes and says that he is the Affiant in the foregoing Affidavit, that he has read same, and that the things and matters therein contained are true and correct.

SWORN TO AND SUBSCRIBED before me by Winn Schwartau, this 6 day of May, 2004 who is personally known to me, and who did take an oath.



_____
Notary Public
Commission No. DD 0045799
Betty G O HEAEN
(Name of Notary typed, printed or stamped)

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by mail to Robert A. Bertsche, Esq., Prince, Lobel, et al., 585 Commercial St., Boston, MA 02109, and Marty J. Solomon, Esq., Carlton Fields, P.A., P.O. Box 3239, Tampa, FL 33601-3239, this 10 day of May, 2004.

_____
TERRENCE S. BUCHERT, Esquire
P.O. Box 47121
St. Petersburg, FL 33743
Phone (727) 302-0351
Fax (727) 345-0171
FBN 0776793/ SPN 919573

FILING RECEIPT FOR TRADEMARK APPLICATION

Page 01 of 01

May 9, 1998

Receipt on the DATE OF FILING of the application for registration and filing fees is acknowledged for the mark identified below. The DATE OF FILING is contingent upon the collection of any payment made by check or draft. Your application will be considered in the order in which it was received and you will be notified as to the examination thereof. Action on the merits should be expected from the Patent and Trademark Office in approximately 06 months from the filing date. When inquiring about this application, include the SERIAL NUMBER, DATE OF FILING, OWNER NAME, and MARK.

GORDON E R TROY
RR 1 BOX 272
LINCOLN BROOK RD
WARREN VT 05674

ATTORNEY
REFERENCE NUMBER
1410-001

**PLEASE REVIEW THE ACCURACY OF THE FILING RECEIPT DATA.**
A request for correction to the filing receipt should be submitted within 30 days to the following address: ASSISTANT COMMISSIONER FOR TRADEMARKS, 2900 CRYSTAL DRIVE, ARLINGTON, VIRGINIA 22202-3513. The correspondence should be marked to the attention of the Office of Trademark Program Control. The Patent and Trademark Office will review the request and make corrections when appropriate.

```
SERIAL NUMBER:  75/456710
FILING DATE:    Mar 26, 1998
REGISTER:       Principal
LAW OFFICE:     103
MARK:           INFORWARCON
MARK TYPE(S):   Service Mark
DRAWING TYPE:   Words, letters, or numbers in typed form
FILING BASIS:   Sect. 1(a) (Use in Commerce)
```

ATTORNEY: GORDON E R TROY

OWNER: INTERPACT, INC. (DELAWARE, Corporation)
       11511 Pine Street
       Seminole, FLORIDA  33772

FOR: Educational seminars, namely, seminars aimed at protecting information and computer systems against crime, unauthorized access or use and industrial espionage
INT. CLASS: 041
FIRST USE: Sep 15, 1993    USE IN COMMERCE: Sep 15, 1993
ALL OF THE GOODS/SERVICES IN EACH CLASS ARE LISTED

EXHIBIT A

TMFRF3 (REV 2/97)    ADDITIONAL INFORMATION MAY BE PRESENT IN THE PTO RECORDS

FINAL

# EXHIBIT 1

## MIS Training Institute, Inc. (MIS)
## And InterPact Inc. (IP)

### InfoWarCon Conferences US and Europe

MIS Training Institute (MIS) and InterPact (IP) will form a joint venture to produce a series of InfoWarCon conferences in the United States and Europe. All of the following arrangements are agreed upon by Michael L. Sobol, President of MIS Training Institute and Winn Schwartau, President of InterPact, Inc.

### Contract Length

The term of this contract is five years; 1998, 1999, 2000, 2001 and 2002. This contract has an option to extend for an additional five years, pending the agreement of both parties. Any other strategic alliances that are formed between MIS and IP will be covered under a separate contractual agreement. It is anticipated that MIS and IP will co-produce other InfoWarCons in other places throughout the world.

### Name

The name InfoWarCon will be registered with the Patent and Trade Mark Office within 10 days of the signing of this contract and the rights to use that name will be assigned to MIS as part of this contract.

### Finance

MIS will produce, at its discretion, at least 2 InfoWarCon conferences a year (one in the USA and one in Europe). MIS will be responsible for the marketing and production of these conferences and IP will be responsible for the conference program and content. Neither organization will incur or commit the other to incur any expenses without the approval of the other's designee. A budget will be proposed by MIS, for which IP will provide the budget for speakers, and approved by each party. MIS or IP may incur expenses that it intends to pay for, so long as these expenses are not to be reimbursed by the joint venture.

MIS will advance costs for brochure marketing and pay all other conference-related expenses including speakers fees (if any) and speaker expenses (if any), hotel, food, audiovisual, etc. out of conference proceeds.

Net profit from attendee, vendor and other revenue directly derived from these events will be split 80% MIS and 20% IP. Profit share check will be issued to IP no later than 30 days after all

*W. 12/3/97*

1

revenues are collected and expenses paid. If requested, the financial records will be made available for auditing.

Losses, should they occur, would be shared 80% (MIS) and 20% (IP).

In addition, MIS will pay to IP $25,000 upon signing of this agreement and $25,000 upon receipt of the following from IP: all available hard copy and/or electronic copy of materials from previous conferences; complete speaker contact and subject information from the previous conferences; and all lists, including but not limited to InfoWarCon attendee lists (at least 4), vendor lists, media lists, electronic lists, and business cards.

### Program Content

IP will select and submit to MIS for advice and consent the focus, objectives, topics, speakers and other factors that determine the overall content of the conference program. MIS will have final approval of program content.

### Program Booking and Speaker Materials

IP is responsible for booking speakers for the programs and upon doing so will provide to MIS a complete list of the speakers, their companies, titles, phone, fax, and email numbers. IP will provide promotional copy to MIS by 22 weeks prior to the conference. MIS will confirm to speakers, in writing, information on hotel and expenses, and requirements for promotional copy, biographies and handout materials. MIS will be responsible for notebook preparation.

### Hotel Management

MIS will make all hotel arrangements, including food and beverage, meeting rooms, speaker ready/breakfast room(s), conference office, registration area, break area, audiovisual equipment and set-up, and a block of sleeping rooms. MIS will make hotel arrangements for speakers, and others, if any, whom IP and MIS have agreed to host.

### Registration

MIS will be responsible for all registration administration, including confirmation letters, invoicing and receipt of registration fees. Details of how to register will be included in the conference brochure and on any promotional materials so that attendees will know what is expected of them when registering.

### Promotion

MIS will design, produce, market and supervise mailing of the conference brochures. IP will specify any additional quantity needs to MIS and provide any additional mail lists or prospect contacts to MIS for the distribution of the conference brochure. MIS and IP will arrange for

*WP 12/3/97*

2

suitable publicity via press releases and web sites. Costs, if any, for such publicity must be approved by both parties.

### Exhibits

MIS will be responsible for exhibit sales and management. MIS and IP will have free booths in the exhibit hall.

### Conference Materials

MIS will prepare the conference participants' handout material, including a program schedule, session handouts and evaluation form. MIS will design and prepare nametags with both organizations' logos. MIS will provide conference binders, and other collateral material for the registration area, podium, and head table and session rooms. MIS and IP will each have a table to display their products and services. MIS will provide session signs and directional signs (if necessary).

### On-Site

MIS will take on-site registrations. MIS will manage the administration of all sessions, lunches, breaks, morning coffee/breakfasts, evening reception and special equipment or services rendered.

### Cancellation

Should IP not complete this five-year arrangement, MIS will have the right to the name InfoWarCon and to continue these events on its own.

### Exclusivity Clause

Once engaged in this contract, neither MIS nor IP may enter into contractual agreements regarding this InfoWarCon conference with other parties that would pose a competitive threat to either organization or to the conference. MIS and IP may enter into contractual agreements with other parties that do not compete with these InfoWarCon conferences.

For MIS                                    For IP

_____ 12/3/97        _____ 12/3/97
Michael Sobol         Date          Winn Schwartau        Date
President                           President

3

TOTAL P.003