UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**MIS TRAINING INSTITUTE LLC,**

**Plaintiff,**

**v.**

**INTERPACT, INC.,**

**Defendant.**

C.A. No. 04-10538-RGS

### AFFIDAVIT OF LINDA BURTON

I, Linda Burton, do on oath depose and say as follows:

1. I am the President and Chief Executive Officer of MIS Training Institute LLC ("MIS Training"). I have served in this role since approximately July, 2002. I reside in Massachusetts. I base this affidavit in part upon my personal knowledge, and in part upon information made available to me as President and CEO of MIS Training.

2. MIS Training is a Delaware limited liability company, with a principal place of business in Framingham (Middlesex County), Massachusetts. MIS Training's predecessor in interest, MIS Training Institute, Inc., a Massachusetts corporation, entered into the "joint venture" with Interpact, Inc. ("Interpact") that is the underpinning of this litigation.

3. MIS Training is in the business of marketing and conducting conferences and workshops on a wide variety of topics including "information warfare," which can be generally described as the offensive and defensive use of information and information systems to achieve military or business advantage. MIS Training employs approximately 52 employees worldwide, 40 of whom are based in Massachusetts, and the rest in London and Asia.

4.  I received a letter dated March 2, 2004, from the lawyer for Interpact, alleging that MIS Training had engaged in, and was continuing to engage in, unlawful trademark infringement under federal law. The demand letter stated, with no uncertainty, that Interpact would commence litigation "before March 21, 2004" unless MIS Training provided written assurance that it would comply in all respects with a list of nine demands, one of which was that MIS Training pay Interpact $3,000,000.00. It gave MIS Training 10 days to reply. I have attached a true and accurate copy of the letter as Exhibit 1 to this affidavit.

5.  On March 17, 2004, more than two weeks after receiving Interpact's letter, and prior to the March 21 date by which Interpact had said it would commence litigation, MIS Training filed this action, seeking a declaration that it had not infringed on Interpact's rights to the "InfowarCon" mark. On March 19, 2004, as promised in its demand letter, Interpact commenced an action in Florida state court, which MIS Training later removed to the United States District Court for the Middle District of Florida, where it is now pending. That action (the "Florida Action") is titled Interpact, Inc. v. MIS Training Institute LLC, C.A. No. 8:04-CV-0799-T-27MAP (M.D. Fla.).

6.  Upon information and belief, Interpact is a Delaware corporation, operating from the home of its principal, Winn Schwartau, at 11511 Pine Street, Seminole, Florida. Upon information and belief, Interpact's business includes information technology security and consulting on security issues. According to Interpact's website, Mr. Schwartau has speaking engagements several times a month across the United States, Canada, and Europe. An excerpt from the Interpact website, www.interpactinc.com, showing Mr. Schwartau's 2003 and 2004 speaking schedules, is attached hereto as Exhibit 2.

7. Upon information and belief, Interpact has only two employees other than its principal, Mr. Schwartau. They are Mr. Schwartau's assistant, Betty O'Hearn, and another person, Kelley Walker. See www.interpactinc.com (listing only these three individuals on website). Upon information and belief, all three individuals reside in Florida.

8. On or about December 3, 1997, prior to the start of my employment, MIS Training's predecessor in interest, MIS Training Institute, Inc., a Massachusetts corporation, entered into an agreement with Interpact (the "Agreement" or "InfowarCon Agreement") to produce a series of educational seminars or conferences on the subject of information warfare. The Agreement was for a term of five calendar years (1998, 1999, 2000, 2001, and 2002), with an option to renew for an additional five years upon mutual agreement. A true and accurate copy of the InfowarCon Agreement is attached hereto as Exhibit 3.

9. MIS Training's then-president, Michael Sobol, signed the InfowarCon Agreement in Massachusetts on behalf of MIS Training. The Agreement does not specify its place of execution, nor does it stipulate what state's law shall apply or what state's courts shall have venue over disputes. See Ex. 3.

10. Pursuant to the InfowarCon Agreement, MIS Training produced and marketed conferences under the name InfowarCon in the United States and Europe. Conferences took place during each year of the Agreement, and were presented in cooperation with Interpact. Conferences were held in Washington, D.C. in September of 1998, 1999, 2000, 2001 and 2002, and in London in May, 1999 and June, 2000. Conference participants, vendors, and speakers came from all over the United States, as well as from Europe. None of the conferences took place in Florida.

11. Approximately 90 percent of the work to produce the InfowarCon conferences under the InfowarCon Agreement with Interpact was conducted by MIS Training employees, in Massachusetts. Among other things, MIS Training produced the brochure and website for the conferences, communicated with the speakers, negotiated the hotel contracts, marketed the conferences, secured the venue, made vendor sales, managed all on-site logistics, and ran the conferences. Virtually all direct mail to promote the InfowarCon Conferences was printed in and mailed from Massachusetts.

12. I have reviewed Interpact's assertions that it has not conducted any business in Massachusetts, and that it has had "virtually no contact with this state.[1] <u>Those assertions are inaccurate.</u> As a party to a five-year agreement with MIS Training, and as a joint venturer in conferences produced from Massachusetts, Interpact engaged in <u>substantial</u> solicitations to and contacts with this Commonwealth.

13. Pursuant to the "joint venture" agreement between Interpact and MIS Training, the parties engaged together in an extensive marketing campaign targeted to Massachusetts and elsewhere, to promote the InfowarCon conferences from 1997 to 2002.

14. As set out in detail below, this marketing plan included, among other things, an advance mail piece that went to thousands of potential attendees. Another mailing was sent to attendees of past years' conferences. Thousands of potential attendees later received a hard copy of the conference brochure, and most also received one or more e-mail messages with reminders of the conference. These mailings (hard copy and e-mail) were distributed nationally, and many were directed to Massachusetts residents.

---

[1] Interpact's Memorandum in Support of Motion to Dismiss, or, Alternatively, to Transfer, at pp. 9-10.

15. In the year 2000, Interpact and MIS Training sent 17,918 advance mail pieces, 634 of them to Massachusetts residents; 726 alumni mail pieces, 24 of them to Massachusetts residents; and 115,277 brochures, 1,077 of them to Massachusetts residents.

16. In the year 2001, Interpact and MIS Training sent 21,016 advance mail pieces, 891 of them to Massachusetts residents; 722 alumni mail pieces, 12 of them to Massachusetts residents; 40,412 brochures, 1,451 of them to Massachusetts residents; and 13,599 e-mail messages, 450 of them to Massachusetts residents.

17. For the year 2002 conference, Interpact and MIS Training sent 104,199 brochures, 4,797 of them to Massachusetts residents; and 57,275 e-mail messages, 1,566 of them to Massachusetts residents.

18. All of the marketing activities described above were generated from Massachusetts, with Interpact's knowledge and approval, as part of the joint venture – from which Interpact received 20% of the profits, pursuant to the Agreement. See Ex. 3, p. 1.

19. During the five years that the InfowarCon conferences were held in Washington, D.C., 17 Massachusetts residents attended the conferences, and at least 3 of the conference faculty members came from Massachusetts (some may have attended more than one year). Under the parties' five-year agreement, Interpact was specifically responsible for booking the speakers. (See Ex. 3, p. 2, "Program Booking and Speaker Materials.")

20. Most of the individuals with knowledge relevant to this action are located in Massachusetts. I have personal knowledge, from July 2002 on, of some aspects of the performance of the Agreement, as well as knowledge of MIS Training's activities following termination of the Agreement. In addition, the following individuals (most of them current MIS

Training employees), among others, played some role with respect to MIS Training's production of conferences pursuant to the InfowarCon Agreement:

- Michael Sobol, former Chairman and President, negotiated and signed the InfowarCon Agreement and participated in its implementation during his tenure (prior to 1999).

- Lois Jacobson, former Chief Executive Officer, had responsibility for overseeing the production of the conferences during her tenure (1999 through July, 2002).

- Sharon Friedman, Sheri Garf, and Alisa Ufland were involved with marketing the conferences produced pursuant to the InfowarCon Agreement.

- Pamela Bissett was the customer service manager overseeing communications with attendees and others.

- Adam Lennon worked with vendor sales and Gloria Simpson worked with attendee sales.

- Jean Hey was Director of the Conference Group.

- Rodrigo Vasquez was the director of information technology.

21. <u>Upon information and belief, all of these current and former MIS Training employees presently reside in Massachusetts</u>. In addition, numerous other MIS Training employees who reside in Massachusetts also played some role in producing the conferences pursuant to the InfowarCon Agreement.

22. During the term of the InfowarCon Agreement, Mr. Schwartau traveled to MIS Training in Massachusetts on approximately three occasions. No MIS Training employee ever traveled to Florida in connection with the InfowarCon Agreement, except that on one occasion, MIS Training's then-president, Michael Sobol – who was in Florida for other reasons – made a

brief visit to Mr. Schwartau. (Upon information and belief, Michael Sobol maintains a vacation home in Florida.)

23.   The InfowarCon Agreement contained an exclusivity clause, which prohibited both MIS and Interpact during the five-year term from entering into "contractual agreements regarding this InfowarCon conference with other parties that would pose a competitive threat to either organization or to the conference." Notwithstanding this provision, on or about October 9, 2002, Interpact entered into an agreement with Reed Exhibitions, a division of Reed Elsevier Inc., to sell the InfowarCon conferences and to sponsor and promote InfowarCon conferences conducted by Reed Exhibitions. Upon information and belief, Reed Elsevier Inc. is a Massachusetts corporation with offices in Newton, Massachusetts (Middlesex County) and Connecticut.

24.   Following the expiration of the term of the InfowarCon Agreement (which was not renewed), Interpact (in conjunction with Reed Exhibitions) and MIS Training each produced their own respective conferences relating to the subject of information warfare. Interpact/Reed Exhibitions marketed in 2003, and presented beginning September 30, 2003, a conference titled "InfowarCon." MIS Training produced on December 3-4, 2003, a conference titled "The Forum on Information Warfare." Both conferences were held in Washington, D.C.

25.   All of the work to produce and market MIS Training's 2003 conference, "The Forum on Information Warfare," was done by MIS employees in Massachusetts (except the few days in Washington, D.C. to run the conference itself). Anita D'Amico, an outside consultant who helped with production of the MIS Training conference in 2003, resides in New York.

26. The vast majority of documents (including electronic information) relevant to this litigation are maintained by MIS Training at its facility in Massachusetts. Such documents include, among other things:

    a. Communications between MIS Training and Interpact regarding the negotiation and performance of the InfowarCon Agreement, including production of conferences pursuant to that Agreement;

    b. Communications between MIS Training and third parties regarding the production of the conferences under the InfowarCon Agreement, such as communications with speakers, attendees, hotel contacts, and vendors;

    c. Contracts with all vendors, including hotel contracts, mailing and printing services agreements, and exhibitor contracts;

    d. Documents concerning the production of the conferences during the term of the InfowarCon Agreement;

    e. Documents provided to MIS Training by Interpact in the course of performance of the InfowarCon Agreement; and

    f. Documents concerning MIS Training's production of conferences on information warfare issues following expiration of the InfowarCon Agreement.

Signed under the pains and penalties of perjury, this 28th day of June, 2004.

_____
Linda Burton