UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MIS TRAINING INSTITUTE LLC, | : |
| | : |
| Plaintiff and Counterclaim Defendant, | : |
| | : |
| v. | :   Civil Action No. 04-10538-RGS |
| | : |
| INTERPACT, INC., | : |
| | : |
| Defendant and Counterclaim Plaintiff. | : |
| | : |

## ANSWER AND COUNTERCLAIMS

Defendant Interpact, Inc. ("Interpact"), by and through its counsel, responds to the Complaint against it as follows:

1.      Paragraph 1 is an introduction to which no response is required.  To the extent that a response is required, Interpact admits that Plaintiff MIS Training Institute, LLC ("MIS") has brought a declaratory judgment action, but denies that MIS has not unlawfully infringed on Interpact's registered mark, *InfowarCon*.

### Parties

2.      On information and belief, Interpact admits the allegations of Paragraph 2.

3.      Admitted.

### Jurisdiction and Venue

4.      Interpact admits that MIS's declaratory judgment claim falls under the Lanham Act.  Interpact denies that MIS has made proper use of the Declaratory Judgment Act.  Interpact denies that it is subject to personal jurisdiction in Massachusetts.

5.    Interpact admits that the parties are citizens of different states and that the amount of the underlying controversy between the parties exceeds $75,000. Interpact denies that it is subject to personal jurisdiction in Massachusetts.

6.    Denied.

7.    Denied.

8.    Interpact admits that an actual case or controversy has arisen between the parties, but denies that MIS has made proper use of the Declaratory Judgment Act. Interpact admits that MIS has engaged in unlawful trademark infringement, but denies that its allegations of infringement had the effect of casting a cloud on MIS's ability to conduct business.

### Facts

9.    Interpact admits that, in December 1997, the parties entered into a five-year joint venture agreement (the "Agreement), for the five calendar years, 1998, 1999, 2000, 2001, and 2002. The Agreement speaks for itself. Interpact cannot admit or deny whether a true and accurate copy of the Agreement was attached to the Complaint as Exhibit 1 because the Complaint that is on the electronic docket and the Complaint that Interpact received has no exhibits attached thereto.

10.    Interpact states that the Agreement speaks for itself. Interpact admits that all conferences conducted pursuant to the Agreement were marketed under the *InforwarCon* name. Interpact admits that it obtained a federal trademark registration for the name *InforwarCon*, but the MIS's right to use that mark is governed by the terms of the Agreement.

- 2 -

11.     Interpact states that the Agreement speaks for itself. Interpact admits that it received the sum of $25,000 upon signing the Agreement and an additional $25,000 after providing MIS with certain materials concerning prior conferences sponsored by Interpact.

12.     Interpact states that the Agreement speaks for itself.

13.     Interpact states that the Agreement speaks for itself. Interpact admits that MIS produced and marketed conferences under the name *InfowarCon* in the United States and Europe; however, it denies that a European conference took place in each year of the Agreement.

14.     Interpact states that the Agreement speaks for itself. Further answering, Interpact denies any suggestion that it breached any provision of the Agreement.

15.     Interpact admits that, on October 9, 2002, it entered into a contract with Reed Exhibitions to conduct *InfowarCon* conferences after expiration of the Agreement. Further answering, Interpact denies any suggestion that its contract with Reed Exhibitions constituted a breach of the Agreement.

16.     Admitted.

17.     Interpact states that the Agreement speaks for itself. Interpact denies the allegations in Paragraph 17 insofar as the Agreement created a joint venture that prohibited MIS from retaining exclusive possession of certain joint venture assets and insofar as, pursuant to the Agreement, the rights to use the *InfowarCon* name belonged exclusively to Interpact upon expiration of the Agreement.

- 3 -

18.     Interpact states that the Agreement speaks for itself.  Interpact denies the allegations in Paragraph 18 insofar as the Agreement created a joint venture that prohibited MIS from retaining exclusive possession of certain joint venture assets and insofar as, pursuant to the Agreement, the rights to use the *InfowarCon* name belonged exclusively to Interpact upon expiration of the Agreement.  Interpact denies any suggestion that it breached any provision of the Agreement.

19.     Interpact admits that, after expiration of the Agreement, Reed Exhibitions, with Interpact's assistance, produced a conference on information warfare entitled *InfowarCon*, and that such conference took place in September 2003.  Interpact further admits that MIS produced a competing conference entitled *The Forum on Information Warfare* in December 2003, but states that MIS improperly used the *InfowarCon* mark in promoting and producing that conference.

20.     Interpact admits that it was permissible for the parties to produce competing conferences after expiration of the Agreement, but denies that MIS was allowed to withhold joint venture assets and denies that MIS was allowed to use the *InfowarCon* name in doing so.

21.     Denied.

22.     Interpact admits that its counsel sent a letter to MIS, but states that the letter speaks for itself.

23.     Interpact is without information or knowledge sufficient to admit or deny the allegations in Paragraph 23.

## COUNT I
### Declaratory Judgment (28 U.S.C. § 2201)

24.     Interpact incorporates by reference its responses to Paragraphs 1-23, as set forth above.

25.     Interpact admits that an actual controversy exists between the parties, but denies that MIS has made proper use of the Declaratory Judgment Act.

26.     Denied.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Complaint fails to state a claim upon which relief can be granted insofar as MIS has misused the declaratory judgment statute.

### Second Affirmative Defense

MIS's claim is barred, in whole or in part, by the doctrines of laches, estoppel, waiver, acquiescence, and/or unclean hands.

## COUNTERCLAIM

### Parties

1.     Counterclaim Plaintiff Interpact, Inc. ("Interpact") is a Delaware corporation with its principal place of business in Seminole, Florida.

2.     On information and belief, Counterclaim Defendant MIS Training Institute LLC ("MIS") is a Delaware limited liability company with a principal place of business in Framingham, Massachusetts, and is the successor-in-interest to MIS Training Institute, Inc.

- 5 -

Jurisdiction

3.      These are compulsory counterclaims, because the Court has denied Interpact's motion to dismiss this action, or, in the alternative, to transfer this action to United States District Court for the Middle District of Florida, where a related action is pending.

Facts

4.      In 1997, MIS and Interpact entered into a five-year joint venture agreement (the "Agreement"). The Agreement required that they work together to promote, market, and conduct annual conferences on information security under the name *InforwarCon*, a concept and trade name originally developed by Winn Schwartau, the president of Interpact.

5.      As part of the Agreement, Interpact applied for and obtained a federal trademark of the name *InfowarCon*, and then assigned the use of that name to the joint venture for the term of the Agreement.

6.      MIS knew that, when it signed the Agreement with Interpact, the rights to the registered name *InfowarCon* would remain with Interpact upon expiration of the Agreement.

7.      As part of the Agreement and the joint venture relationship, Interpact shared with MIS materials from previous *InfowarCon* conferences, including speaker lists, vendor lists, attendee lists, and other conference-related materials.

8.      During the term of the joint venture, Interpact provided all materials requested by MIS to conduct the *InfowarCon* conferences from 1998 through 2002.

9.      The parties conducted the *InfowarCon* conference for each of the five years required under the Agreement.

10.     The last *InfowarCon* conference planned during the term of the Agreement was scheduled to take place in September 2002.  That conference took place in September 2002.

11.     After the September 2002 *InfowarCon* conference, the Agreement was not renewed.

12.     When the Agreement was not renewed, Interpact retained the exclusive rights to the *InfowarCon* trademark.

13.     In October 2002, after the last *InfowarCon* conference scheduled under the Agreement took place, Interpact contracted with a third party, Reed Exhibitions (a division of Reed Elsevier, Inc.), for use of the *InfowarCon* name and conference concept over the next 20 years.

14.     MIS had full knowledge that Interpact intended to use the *InfowarCon* mark to conduct annual conferences with Reed Exhibitions.  Nevertheless, MIS continued to use the *InfowarCon* mark to advertise its own competing conference in 2003, which it called *The Forum on Information Warfare*.

15.     When Interpact and Reed Exhibitions attempted to promote and market their first conference in 2003, they learned that MIS was using the *InfowarCon* mark to promote and market a competing conference.

16.     In marketing and producing *The Forum on Information Warfare*, MIS used attendee lists, speaker lists, vendor lists, exhibitor lists, and other materials that had been provided by Interpact as part of the Agreement and/or had been developed by the joint venture as during the term of the Agreement.

17.     In marketing and producing *The Forum on Information Warfare*, MIS used the *InfowarCon* mark in its promotional brochures for its conference and embedded the mark into its

- 7 -

web-based marketing materials so that internet search engines would direct inquiries for "InfowarCon" to the MIS website.

18.     In marketing and producing *The Forum on Information Warfare*, MIS used an electronic mass mailing campaign to prospective attendees and exhibitors that indicated that the name of its conference had been renamed from the *InfowarCon* conference.

19.     MIS's use of the *InfowarCon* mark was intended to make prospective speakers, attendees, and exhibitors believe that MIS owned the *InfowarCon* mark.

20.     MIS's use of the *InfowarCon* mark was intended to make prospective speakers, attendees, and exhibitors believe that *The Forum on Information Warfare* was the same conference as the previous *InforwarCon* conferences, with a different name.

21.     MIS understood that Interpact was conducting an *InfowarCon* conference in 2203 and that *The Forum on Information Warfare* was not the same as the *InfowarCon* conference.

22.     MIS provided prospective attendees of *The Forum on Information Warfare* with a .pdf computer file that contained the *InfowarCon* mark.

23.     MIS's employees left telephone messages with prospective attendees of *The Forum on Information Warfare* stating that the name of the *InfowarCon* conference had been renamed to *The Forum on Information Warfare*.

24.     MIS also provided some prospective attendees and exhibitors of *The Forum on Information Warfare* from previous *InfowarCon* conferences with what they referred to as "alumni" discounts.

25.     MIS's use of the *InfowarCon* mark caused actual confusion, deception, and misrepresentation as to the source of its conference and services being provided.

- 8 -

26.     The resulting confusion caused by MIS contributed directly to a loss of profits for the 2003 *InfowarCon* conference, a loss of goodwill amongst previous *InfowarCon* attendees, speakers, and exhibitors, and ultimately led to the cancellation of Interpact's 20-year contract with Reed Exhibitions.

## COUNT I
### (Unfair Competition and Trademark Infringement in Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

27.     Interpact hereby repeats and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

28.     Interpact's *InfowarCon* conference and MIS's *The Forum on Information Warfare* are closely related in terms of the services and the prospective attendees, speakers, and exhibitors.

29.     After expiration of the Agreement, MIS no longer had any contractual right to use the name *InforwarCon*, and had no right to market its conference *The Forum on Information Warfare* by using the *InfowarCon* mark or by informing people that *The Forum on Information Warfare* was the same conference as *InfowarCon*, under a different name.

30.     The use by MIS of the *InfowarCon* mark in marketing and promoting a competing conference – *The Forum on Information Warfare* – in literature, on its website, and/or in telemarketing has caused and is likely to continue to cause confusion or mistake or deception in the minds of prospective attendees, speakers, and exhibitors as to the source of the conferences, and to create the false impression that *The Forum on Information Warfare* in some way originates with or is sponsored or endorsed by Interpact, to Interpact's irreparable harm and detriment.

31.     MIS's use of the *InfowarCon* mark constitutes unfair competition and infringement of Interpact's mark, in violation of 15 U.S.C. § 1125(a).

- 9 -

32.    As a direct and proximate result of MIS's actions, Interpact has been, and will continue to be, irreparably harmed.

**COUNT II**
**(Common Law Unfair Competition and Trademark Infringement)**

33.    Interpact hereby repeats and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

34.    Interpact had used the *InfowarCon* mark in promoting and conducting conferences before the Agreement.  Pursuant to the Agreement, in 1998, Interpact applied for and obtained a federal trademark of the *InfowarCon* mark, and then assigned the use of that mark to the joint venture for the term of the Agreement.

35.    Interpact has generated substantial goodwill and thereby acquired common law trademark rights in and to the trademark *InfowarCon*.

36.    MIS deliberately adopted and used, and continues to use, Interpact's *InfowarCon* mark in promoting and conducting conferences.

37.    Any right that MIS once had to use the *InfowarCon* mark in connection with the Agreement expired upon expiration of the Agreement.

38.    MIS's use of the *InfowarCon* mark after expiration of the Agreement constitutes unfair competition and infringement of Interpact's common law rights to the exclusive use of the *InfowarCon* mark.

39.    As a direct and proximate result of MIS's actions, Interpact has been, and will continue to be, irreparably harmed.

- 10 -

## COUNT III
### (Trademark Dilution in Violation of M.G.L. c. 110)

40.    Interpact hereby repeats and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

41.    MIS has used and continues to use the *InfowarCon* mark in promoting and marketing conferences from the Commonwealth of Massachusetts without the written consent of Interpact, in violation of M.G.L. c. 110.

42.    As a direct and proximate result of MIS's actions, Interpact has been, and will continue to be, irreparably harmed.

## COUNT IV
### (Trademark Dilution in Violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))

43.    Interpact hereby repeats and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

44.    The *InfowarCon* mark is famous and distinctive within the meaning of 15 U.S.C. § 1125(c).

45.    MIS's adoption and use of the *InfowarCon* mark in connection with promoting, marketing, and conducting conferences has caused injury to the business reputation of Interpact, and MIS's use of the *InfowarCon* mark detracts from and/or otherwise appropriates the goodwill and reputation of Interpact's mark.

46.    MIS's adoption and use of the *InfowarCon* mark has diluted and continues to dilute the distinctive quality of the *InfowarCon* mark and has caused injury to the value of the mark.

- 11 -

47.     MIS's adoption and use of the *InfowarCon* mark on or in connection with its conferences and services dilutes the distinctive quality of the *InfowarCon* mark to the point where the *InfowarCon* mark will lose or be deprived of its distinctiveness.

48.     As a direct and proximate result of MIS's actions, Interpact has been, and will continue to be, irreparably harmed.

## COUNT V
### (Conversion)

49.     Interpact hereby repeats and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

50.     Pursuant to the Agreement, Interpact and MIS entered into a joint venture relationship.

51.     As part of the Agreement and the joint venture relationship, Interpact shared with MIS materials from previous *InfowarCon* conferences, including speaker lists, vendor lists, and attendee lists, and other conference-related materials.

52.     During the term of the joint venture, Interpact provided all materials requested by MIS to conduct the *InfowarCon* conferences from 1998 through 2002.

53.     After the expiration of the Agreement, Interpact requested from MIS certain materials that both had been provided by Interpact as part of the Agreement and had been developed by the joint venture in conducting the *InfowarCon* conferences during the term of the Agreement.

54.     Interpact had an ownership interest in and a legal right to use the requested materials.

55.    MIS knew that the requested information was important to Interpact in conducting an *InfowarCon* conference in 2003.

56.    MIS refused to provide Interpact with the requested information.

57.    MIS's refusal to provide Interpact with the requested materials was without justification.

58.    As a direct and proximate result of MIS's actions, Interpact has been, and will continue to be, irreparably harmed.

**COUNT VI**
**(Tortious Interference with Advantageous Business Relations)**

59.    Interpact hereby repeats and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

60.    Interpact has had ongoing business relationships with its customers, vendors, and attendees of its conferences for many years.  Interpact has spent considerable time and money developing those relationships.

61.    During the course of its joint venture with Interpact, MIS gained important knowledge about the identity of persons with whom Interpact had those business relationships.

62.    After expiration of the Agreement, MIS contacted persons that it knew to have a business relationship with Interpact and misrepresented to those persons both the nature of MIS's continuing relationship with the *InfowarCon* conference and the actual promoter of the *InfowarCon* conferences after 2002.

63.    In contacting those persons, MIS used – in marketing literature, during telemarketing calls, and on its website – the *InfowarCon* mark.

- 13 -

64.    MIS's actions were taken with the express purpose of deceiving prospective conference attendees, speakers, and vendors into believing that MIS's *The Forum on Information Warfare* was related to *InfowarCon* and/or the successor to the *InfowarCon* conference.

65.    MIS's actions were deceptive and improper.

66.    MIS's actions were done with the improper motive of attempting to sever Interpact's established business relationships and to handicap Interpact's ability to conduct further *InfowarCon* conferences.

67.    As a direct and proximate result of MIS's actions, Interpact has been, and will continue to be, irreparably harmed.

## COUNT VII
### (Tortious Interference with Contractual Relations)

68.    Interpact hereby repeats and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

69.    Interpact told MIS about its contractual relationship with Reed Exhibitions.

70.    After expiration of the Agreement, Interpact requested from MIS information about attendees, speakers, and vendors from previous *InfowarCon* conferences.  Interpact also informed MIS that it needed the requested information to conduct the 2003 *InfowarCon* conference with Reed Exhibitions.

71.    MIS refused to provide Interpact with the requested information.

72.    MIS knew that its refusal to provide the requested information would negatively impact both the 2003 *InfowarCon* conference and Interpact's relationship with Reed Exhibitions.

73.     Interpact requested that MIS stop using the *InfowarCon* name to promote and market its competing conference, *The Forum on Information Warfare*.

74.     MIS knew that its use of the *InfowarCon* mark in 2003 would negatively impact both the 2003 *InfowarCon* conference and Interpact's relationship with Reed Exhibitions.

75.     Through its actions, as stated above, MIS caused the 2003 *InfowarCon* conference to lose money and caused the cancellation of Interpact's contract with Reed Exhibitions.

76.     MIS's actions were deceptive and improper.

77.     MIS's actions were done with the improper motive of attempting to destroy the *InfowarCon* conference and to destroy Interpact's contractual relationship with Reed Exhibitions.

78.     As a direct and proximate result of MIS's actions, Interpact has been, and will continue to be, irreparably harmed.

## COUNT VIII
### (Violation of M.G.L. c. 93A)

79.     Interpact hereby repeats and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

80.     Interpact and MIS were at all relevant times engaged in the conduct of trade or commerce within the meaning of M.G.L. c. 93A, § 11.

81.     MIS's actions as described herein constitute unfair and deceptive acts or practices, in violation of M.G.L. c. 93A

82.     MIS's unfair and deceptive acts were knowing and willful.

83.     As a direct and proximate result of MIS's actions, Interpact has been, and will continue to be, irreparably harmed.

- 15 -

## COUNT IX
### (Violation of Fla. Stat. Chapter 501)

84.     Interpact hereby repeats and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

85.     Interpact is a "consumer" as that term is defined under Fla. Stat. § 501.203.

86.     MIS conducted trade or commerce as that term is defined under Fla. Stat. § 501.203.

87.     Under Chapter 501, unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, such as those conducted by MIS, are unlawful.

88.     By its actions stated above, MIS violated Chapter 501.

89.     As a direct and proximate result of MIS's actions, Interpact has been, and will continue to be, irreparably harmed.

### Prayer for Relief

WHEREFORE, Interpact respectfully prays that this Court enter judgment in its favor and against MIS, as follows:

a)     Declaring that MIS's use of the *InfowarCon* mark constitutes unfair competition and trademark infringement in violation of 15 U.S.C. § 1125(a) and in violation of Massachusetts and Federal common law; that MIS's use of the *InfowarCon* mark constitutes trademark dilution in violation of M.G.L. c. 110B and 15 U.S.C. § 1125(c); that MIS's refusal to provide information and materials to which Interpact is legally entitled constitutes conversion; that MIS, by its actions, has intentionally and improperly interfered with Interpact's advantageous business relationships with customers and its contractual relationship with Reed Exhibitions; that MIS has acted knowingly and willfully; and that MIS's actions constitute a knowing and willful violation of M.G.L. c. 93A and Fla. Stat. § 501.203;

b)     Preliminarily and permanently enjoining MIS, together with its agents, servants and employees, officers, directors, parents, subsidiaries, affiliates, successors and assigns, and all others acting or purporting to act in concert with any of them,

from using the *InfowarCon* mark or otherwise infringing in any manner Interpact's exclusive rights in the *InfowarCon* mark;

c)  Directing an accounting of all gains, profits and advantages that MIS has received or derived through *The Forum on Information Warfare*, through other use of the *InfowarCon* mark, and through use of the information that MIS refused to provide to Interpact;

d)  Requiring MIS to deliver for impoundment and destruction after final judgment any and all products, labels, documents, and other things in its possession or control, or in the possession or control of its agents, that bear the *InfowarCon* mark, and to remove all such references to the *InfowarCon* mark on MIS's website and other electronically-stored data;

e)  Awarding Interpact treble damages, plus interest, costs of suit, and reasonable attorneys fees; and

f)  Granting such other and further relief as the Court deems just and proper.

## Jury Trial

Interpact requests a trial by jury on all claims so triable.

Respectfully submitted,

Dated:  September 17, 2004

Jason W. Morgan (BBO #633802)
Drohan, Hughes, Hoffman & Tocchio, P.C.
175 Derby Street, Suite 30
Hingham, MA  02043
(781) 749-7200

Terrence S. Buchert (*pro hac vice*)
P.O. Box 47121
St. Petersburg, FL 33743
(727) 302-0351

*Attorneys for Defendant*

- 17 -

## CERTIFICATE OF SERVICE

I, Jason W. Morgan, hereby certify that, on September 17, 2004, I served a true and correct copy of the foregoing, by first class mail, to counsel for Plaintiff, Robert A. Bertsche, Esq., Prince, Lobel, Glovsky & Tye LLP, 585 Commercial Street, Boston, MA 02109.

Jason W. Morgan