UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **MIS TRAINING INSTITUTE LLC,**<br><br>**Plaintiff and Counterclaim Defendant,**<br><br>v.<br><br>**INTERPACT, INC.,**<br><br>**Defendant and Counterclaim Plaintiff.** | **Civ. Action. No.  04-10538-RGS** |

## MEMORANDUM IN SUPPORT OF MIS TRAINING INSTITUTE LLC'S MOTION TO DISMISS CERTAIN OF INTERPACT, INC.'S COUNTERCLAIMS

In this trademark dispute, MIS Training Institute LLC ("MIS Training") seeks declaratory judgment stating that it has not infringed the "*InfowarCon*" service mark; Interpact, Inc. ("Interpact") has asserted counterclaims seeking declaratory and injunctive relief.  MIS Training, as plaintiff and counterclaim defendant, submits this memorandum of law in support of its motion to dismiss several of Interpact's counterclaims.  As to its allegations of state and federal trademark dilution, conversion, and unfair and deceptive trade practices under Florida law, Interpact has failed to state a claim upon which relief can be granted.  Therefore, Counts III, IV, V, VI, and IX must be dismissed. Fed. R. Civ. P. 12(b)(6).[1]

### INTERPACT'S ALLEGATIONS[2]

In 1997, MIS Training and Interpact entered into an agreement to produce a series of educational seminars or conferences on the subject of "information warfare" (the "Agreement" or "InfowarCon Agreement").  (Interpact Counterclaims ("Countercl.") ¶ 4.)  The Agreement

---

[1] Those counterclaims not addressed herein are the subject of MIS Training's Answer to Interpact, Inc.'s Counterclaims.

[2] For purposes of this motion to dismiss only, MIS Training takes as true the factual allegations of Interpact's Counterclaims.

was for a term of five years (1998, 1999, 2000, 2001, and 2002), with an option to renew for an additional five years upon mutual agreement. (Countercl. ¶¶ 8-12.) Conferences took place during each year of the Agreement, and were presented in cooperation with Interpact. (Countercl. ¶ 9.) Pursuant to the Agreement, all of the conferences conducted were to be marketed under the title "InfowarCon" (Countercl. ¶ 4) – a mark for which Interpact did not seek federal trademark registration until 1998, after entering into the Agreement. Interpact then assigned to MIS Training the right to use the name. (Countercl. ¶ 5.) See n.5, infra, and accompanying text.

In October 2002, during the last year of the Agreement, Interpact entered into an agreement to sell the InfowarCon conferences to Reed Exhibitions, a division of Reed Elsevier Inc. ("Reed"), and to sponsor and promote InfowarCon conferences conducted by Reed. (Countercl. ¶ 13.) Interpact and MIS Training did not renew the Agreement. (Countercl. ¶ 11.) Interpact (in conjunction with Reed Exhibitions) and MIS Training then produced their own respective conferences relating to the subject of information warfare. In 2003, MIS Training produced a conference titled "The Forum on Information Warfare." (Countercl. ¶ 14.) Interpact and Reed marketed and presented a conference titled "InfowarCon," which fared poorly. (Countercl. ¶¶ 14-15, 26.)

In its Counterclaims to MIS Training's declaratory judgment action, Interpact does not allege that MIS Training breached any provision of the joint venture Agreement. Rather, it alleges that while marketing and promoting its 2003 "Forum on Information Warfare," MIS Training: (i) used attendee lists, speaker lists, and other materials that had been provided to the joint venture by Interpact or were developed by the parties during the term of their joint venture; (ii) made reference to the *InfowarCon* mark in promotional brochures; (iii) "embedded" the

*InfowarCon* mark in internet-based marketing materials, with the result that internet searches for "InfowarCon" led to MIS Training's site; (iv) sent electronic mailings that "indicated" to prospective conference-goers that "the name of its conference had been renamed from the *InfowarCon* conference"; (v) left telephone messages with some prospective attendees stating that the conference had been renamed; (vi) provided so-called "alumni discounts" to some prospective attendees and exhibitors who had attended previous InfowarCon conferences; and (vii) provided prospective attendees with a computer file "that contained the *InfowarCon* mark." (Countercl. ¶¶ 16-24.) Interpact alleges that, by these acts, MIS Training caused confusion that contributed to the poor results of Interpact's 2003 conference and led to other harmful consequences, including Reed's decision to cancel its contract with Interpact. (Countercl. ¶¶ 15-26.)

Interpact further asserts that at some time <u>after the expiration</u> of the term of its Agreement with MIS Training, it requested that MIS Training provide it with copies of certain speaker lists, vendor lists, attendee lists, and other conference-related materials that had been developed by the joint venture, and that MIS Training allegedly refused to provide the requested materials. (Countercl. ¶¶ 51, 53 and 56.)

## ARGUMENT

In considering this motion to dismiss, the Court must accept as true all <u>well pleaded</u> factual allegations in the Counterclaims, and must draw all <u>reasonable</u> inferences in favor of Interpact as the counterclaim plaintiff. <u>See Chongris v. Board of Appeals</u>, 811 F.2d 36, 37 (1st Cir. 1987). But the Court need not credit "those 'facts' which have since been conclusively contradicted by the plaintiffs' concessions or otherwise," and should not rely on "bald assertions" or "unsupportable conclusions." <u>Chongris</u>, 811 F.2d at 37. Because Interpact's

allegations are expressly linked to – and dependent upon – the InfowarCon Agreement, the Court may properly consider the terms of the Agreement (attached hereto as Exhibit 1) in considering this motion to dismiss.[3]  Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (concluding that a contrary approach would permit a plaintiff to "thwart the consideration of a critical document merely by omitting it from the complaint").  Likewise, the Court may also consider the information contained in the U.S. Patent and Trademark Office's public notice regarding the *InfowarCon* service mark (attached hereto as Exhibit 2) as a public record.  See Boateng v. Interamerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000); see also Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) ("courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to the plaintiff's claim; or for documents sufficiently referred to in the complaint").  Consideration of these exhibits does not necessitate that this motion to dismiss be treated as a motion for summary judgment.  Boateng, 210 F.3d at 60; Watterson, 987 F.2d at 3.

I.    **Count III Fails to State a Claim for State-Law Trademark Dilution.**

Count III purports to allege trademark dilution under state law.  It must be dismissed because Interpact has not offered any facts that would take this case beyond a plain-vanilla claim for trademark infringement, already alleged in Counts I and II.[4]  Moreover, because Interpact's claims of state-law dilution merely parrot its claims of infringement, Count III is preempted by the federal Lanham Act.  See Three Blind Mice Designs Co., Inc. v. Cyrk, Inc., 892 F. Supp. 303

---

[3] Indeed, in its Answer, Interpact repeatedly suggests that the Agreement "speaks for itself."  (Answer ¶¶ 9-14, 17, 18.)

[4] In Count I, Interpact alleges trademark infringement pursuant to Section 43(a) of the federal Lanham Act, 15 U.S.C. §1125(a).  In Count II, Interpact alleges common law trademark infringement.  Neither of those counts are a subject of this motion to dismiss.

(D. Mass. 1995) (denying trademark dilution claim where the parties were competitors with similar goods).

To claim that a trademark has been diluted is very different than to claim that it has been infringed. Infringement claims are intended to protect "that which identifies a product's source." I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 35-36 (1st Cir. 1998). By preventing the use of "the same or similar marks in a way that confuses the public about the actual source of the goods or service," id. (quoting Star Fin. Servs., Inc. v. Aastar Mortgage Corp., 89 F.3d 5, 9 (1st Cir. 1996)), trademark infringement law "serves to protect both the trademark ... owner and the public by avoiding confusion or mistake." Lund, 163 F.3d at 36.

Anti-dilution statutes, by contrast, "protect only the trademark ... owner and are not concerned with possible confusion on the part of consumers." Id. Statutes such as Mass. Gen. Laws ch.110B, §12, were adopted "to fill a void left by the failure of trademark infringement law to curb the unauthorized use of marks where there is no likelihood of confusion between the original use and the infringing use." L.L. Bean, Inc. v. Drake Publishers, Inc., 811 F.2d 26, 30 (1st Cir. 1987). Rather than targeting the use of the same mark on similar or competing products, the anti-dilution statute "aims to protect the distinctive quality of a trademark from deterioration caused by its use on dissimilar products." Id. (emphasis added). As the First Circuit Court of Appeals has noted,

> The dilution injury "is the gradual whittling away or dispersion of the identity and hold upon the public mind of the mark or name by its use on non-competing goods." Schechter, The Rational Basis of Trademark Protection, 40 Harv. L. Rev. 813, 825 (1927). The overriding purpose of anti-dilution statutes is to prohibit a merchant of noncompetitive goods from selling its products by trading on the goodwill and reputation of another's mark.

L.L. Bean, 811 F.2d at 30 (emphases added).

The allegations of Count III fall far short of alleging any tarnishment or blurring of the *InfowarCon* mark as a result of its alleged use by MIS Training. Indeed, such allegations would be impossible to sustain in light of the undisputed fact that from at least 1998 through 2002, MIS Training alone had the right to use the *InfowarCon* mark to identify the conferences it marketed on behalf of the joint venture.[5] (Countercl. ¶¶ 4- 5.) It is plain that, at the time of the allegedly infringing trademark use in 2003 and 2004, the *InfowarCon* mark had most recently been presented to the public in association with MIS Training, which had held the rights to the mark for the entire previous five-year period. Thus, there was nothing in the prior use of the mark to connect the mark solely to Interpact – and Interpact alleges nothing to suggest otherwise. Simply put, the mark was not "distinctive"; it did not distinguish Interpact as opposed to MIS Training.

Interpact's only substantive allegation to support the purported "dilution" is its claim that "MIS [Training] has used and continues to use the *InfowarCon* mark in promoting and marketing conferences … without the written consent of Interpact." (Countercl. ¶ 41.) While such an allegation may contribute toward pleading an infringement claim, it is virtually irrelevant to the very different claim of dilution.

Count III should be dismissed with prejudice because amendment of the Counterclaims could not rectify the failure to adequately plead dilution. Central to Interpact's claims is its repeated insistence that Interpact and MIS Training, after the termination of the joint venture Agreement in 2003, have been competitors offering conferences that are "closely related in terms of the services and the prospective attendees, speakers, and exhibitors." (Countercl. ¶¶ 14, 15, 26, 28, 30.) However, as the First Circuit noted in <u>L.L. Bean</u>, the Massachusetts anti-dilution

---

[5] Interpact's allegation that the *InfowarCon* mark was assigned to the "joint venture," instead of to MIS Training alone (Countercl. ¶ 5), must be disregarded, as it is expressly contradicted by the terms of the joint venture Agreement. (Exh. 1 at 1 ("The name InfoWarCon will be registered with the Patent and Trade Mark Office within 10 days of the signing of this contract and the rights to use that name will be assigned to MIS as part of this contract.").)

statute applies to prevent blurring or tarnishment of a trademark resulting from its use on "dissimilar products" produced by "non-competitive" entities "where there is no likelihood of confusion between the original use and the infringing use." 811 F.2d at 30. It is not applicable to the use of a trademark for "closely related" conferences produced by competitors.

It was on just such grounds that this District Court in 1995 entered judgment for the defendant on a state anti-dilution claim. In the words of Judge Saris, "To the extent that the anti-dilution statute prohibits the marketing of a product resulting in a likelihood of confusion between similar, directly competitive goods, ... it is wholly preempted in this case by section 43(a) of the Lanham Act" – the very claim that Interpact has brought in Count I of the Counterclaims. Three Blind Mice Designs Co., Inc. v. Cyrk, Inc., 892 F. Supp. 303, 309 (D. Mass. 1995).

## II.    Count IV Fails to State a Claim for Federal Trademark Dilution.

Count IV, alleging violation of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c), similarly fails to state a claim for which relief can be granted. To succeed on a claim for trademark dilution under federal law, a plaintiff must show that: (1) it owns a "famous mark," as defined by the statute and case law; (2) the defendant is using the mark in commerce; (3) the defendant adopted its mark after the plaintiff's mark became famous and distinctive; and (4) the defendant's mark dilutes the plaintiff's famous mark. Hasbro, Inc. v. Clue Computing, Inc., 66 F. Supp. 2d 117, 130 (D. Mass. 1999); see 15 U.S.C. § 1125(c)(1). Interpact cannot adequately allege, let alone prove, either the first or the third of those four elements: that the *InfowarCon* mark is "famous" as the term is rigorously defined under federal law, or that its "famousness" preceded MIS Training's first use of the mark in 1998.

Under the FTDA, a mark is not famous unless it is "truly prominent and renowned." Avery Dennison Corp. v. Sumpton, 189 F.3d 883, 875 (9th Cir. 1999) (citing I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 46 (1st Cir. 1998)). "Both the text and legislative history of the … FTDA itself indicate a congressional intent that courts should be discriminating and selective in categorizing a mark as famous." I.P. Lund Trading, 163 F.3d at 56, 60-61 ("VOLA" faucet not sufficiently famous to qualify for protection from dilution under federal statute). Nevertheless, beyond its unsupported legal conclusion that the *InfowarCon* mark is "famous and distinctive within the meaning of 15 U.S.C. § 1125(c)" (Countercl. ¶ 44), Interpact has alleged no facts in support of this critical aspect of its dilution claim.  It likewise has not alleged (and could not allege) that MIS Training adopted the *InfowarCon* mark after the mark became famous.  See 15 U.S.C. § 1125(c) (allowing a remedy only if the challenged trademark use "begins after the mark has become famous").  It is undisputed that MIS Training's use of the mark began in 1997 (see Ex. 1 hereto), barely four years after Interpact's first use of the mark in commerce (Sept. 15, 1993), and that Interpact did not even file for registration of the mark until March 26, 1998.[6]  "[T]here can be no dilution under the FTDA where the allegedly famous mark did not achieve fame prior to any use by the accused infringer."  Enterprise Rent-a-Car Co. v. Advantage Rent-a-Car, Inc., 330 F.3d 1333, 1343 (Fed. Cir. 2003).  Therefore, it is not enough for Interpact to allege, baldly, that the *InfowarCon* mark today is "famous and distinctive" (Countercl. ¶ 44); it must show that the mark was "famous and distinctive" even before rights to the mark were assigned to MIS Training on December 3, 1997.  (See Exh. 1 at 1.)  This it simply cannot do.

---

[6] See Exh. 2 (showing that Interpact claimed first use of the mark in commerce on Sept. 15, 1993; that Interpact did not file to register the *InfowarCon* mark until March 26, 1998; and that the mark was not registered by the PTO until May 11, 1999 – almost a year and a half after Interpact assigned the right to the mark to MIS Training).

The FTDA sets out a non-exhaustive list of factors for determining whether a mark is "distinctive and famous":

(A)    the degree of inherent or acquired distinctiveness of the mark;

(B)    the duration and extent of use of the mark in connection with the goods or services with which the mark is used;

(C)    the duration and extent of advertising and publicity of the mark;

(D)    the geographical extent of the trading area in which the mark is used;

(E)    the channels of trade for the goods or services with which the mark is used;

(F)    the degree of recognition of the mark in the trading areas and channels of trade used by the mark's owner and the person against whom the injunction is sought;

(G)    the nature and extent of use of the same or similar marks by third parties; and

(H)    whether the mark was registered.

15 U.S.C. § 1125(c)(1).  Interpact acknowledges that it applied for and registered the *InfowarCon* mark as a part of the joint venture, and then assigned use of that name to the joint venture. (Countercl. ¶ 5.)  Because Interpact used the mark in commerce for less than four years before assigning it to MIS Training for the following <u>five</u> years – followed by a further assignment of the mark to Reed Elsevier in 2002 (Countercl. ¶ 13) – it is clear that Interpact's claim to famousness and distinctiveness under factors (A), (B), (C), (F), (G), and (H) is exceptionally weak.  For most of the life of the mark it has been held, exclusively or jointly, by parties <u>other than Interpact</u>.

Count IV also fails because Interpact does not allege any facts to support its conclusory allegation that the *InfowarCon* mark has been diluted.  Interpact's allegation (Countercl. ¶ 17) that MIS Training embedded the mark into its web-based marketing materials so that search engines would direct inquiries for "InfowarCon" to the MIS Training web site is insufficient.  In <u>Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.</u>, counterclaim plaintiff Marvel

Enterprises alleged that Twentieth Century Fox Film's use of Marvel's allegedly famous mark (the comic strip character "X-Men") on its web site caused dilution. 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002). The court allowed Twentieth Century Fox Film's Rule 12(b)(6) motion to dismiss the counterclaim where Marvel had failed to plead facts supporting its conclusion that such use had caused dilution. Id. Interpact's claim suffers from the same defect, because Interpact does not set out any facts to support its assertion that the *InfowarCon* mark was "diluted" by MIS Training's alleged acts.

Here, and in the absence of a more particularized factual pleading, this Court should not accept Interpact's conclusory legal assertion that the *InfowarCon* mark is "famous" and distinctive to Interpact, or that it has been diluted. As a matter of law, Interpact has not adequately pleaded facts critical to its federal anti-dilution claim, and Count IV of the Counterclaims should therefore be dismissed.

**III.     <u>Count V Fails to State a Claim for Conversion.</u>**

Interpact's claim of conversion must be dismissed because it is well established that intangible property, such as the conference-related information at issue here, cannot be the subject of a conversion claim. Under Massachusetts law, a party claiming conversion must allege the wrongful exercise of dominion or control over the personal property of another. <u>See</u> <u>Third Nat. Bank v. Continental Ins. Co.</u>, 388 Mass. 240, 244 (1983); <u>Data Gen. Corp. v. Grumman Sys. Support Corp.</u>, 795 F. Supp. 501, 505 (D. Mass. 1992) (applying Massachusetts law and citing Restatement (Second) of Torts § 222A). The tort of conversion does not lie for intangible rights, but is limited to physical property, or chattel. <u>See</u> Restatement (Second) of Torts § 242, cmt. f (liability for conversion does not extend to intangible rights such as "customer lists"); <u>Discover Realty Corp. v. David</u>, 2003 Mass. App. Div. 172, 175 (2003)

(holding that conversion claim could not be based on intangible property such as an owed commission or similar debt).

Interpact contends that MIS Training committed the tort of conversion by refusing to provide to Interpact, after the termination of the joint venture, "speaker lists, vendor lists, attendee lists, and other conference-related materials" allegedly created by the parties pursuant to their joint venture.  (Countercl. ¶ 51, 53.)  Interpact's allegations do not state a claim for conversion because the allegedly converted information is not personal property or "chattel," but instead intangible rights that are not subject to conversion.[7]  See Jayson Assoc., Inc. v. United Parcel Service Co., No. 04-10771, 2004 U.S. Dist. LEXIS 13191, at *4-5 (D. Mass. July 15, 2004); Harvard Apparatus, Inc. v. Cowen, 130 F. Supp. 2d 161, 164 (D. Mass. 2001) (noting that court "could not locate any authority to suggest that Massachusetts has expanded the common law tort of conversion beyond its traditional application to chattels").[8]  The facts of Jayson Associates, Inc., 2004 U.S. Dist. LEXIS 13191, at *4-5, are similar.  There, a plaintiff alleged that a corporation that had received its advertising pitch for a promotional product had converted the idea for the product.  Id.  This Court (Zobel, D.J.) dismissed the plaintiff's claim for conversion, noting that the plaintiff's "creative expressions, ideas and product line" were not tangible property.  Id.

---

[7] Interpact has not claimed that MIS Training's alleged unauthorized use of the *InfowarCon* mark constitutes conversion, and cannot do so, as trademarks also are not tangible property subject to conversion.  See Big Time Worldwide Concert & Sport Club at Town Ctr. v. Marriott Int'l, 236 F. Supp. 2d 791, 806 (E.D. Mich. 2003) (collecting cases refusing to recognize trademark conversion claims).

[8] See also Powers v. Fisher, 279 Mich. 442 (1937) (no conversion for names of customers); Olschewski v. Hudson, 87 Cal. App. 282 (1927) (same); Illinois Minerals Co. v. McCarty, 318 Ill. App. 423 (1943) (same); Meier v. Wilkens, 44 N.Y.Supp. 274 (1897) (no conversion of right to occupy market stall); Mackay v. Benjamin Franklin Realty Holding Co., 288 Pa. 207 (1927) (no conversion of idea); Thompson v. Mobil Producing Co., 163 F. Supp. 402 (D. Mont. 1958) (no conversion of confidential information); Whiteley v. Foremost Dairies, 151 F. Supp. 914 (W.D. Ark.), aff'd, 254 F.2d 36 (8th Cir. 1957) (no conversion of milk route); Stern v. Kaufman's Bakery, 191 N.Y.S.2d 734 (Sup. Ct. 1959) (no conversion of bakery route).

Count V is fatally deficient for another reason: because it is undisputed that the customer lists and other information sought by Interpact were not the property "of another." Restatement (Second) of Torts § 242. Conversion is about the taking of personal property over which the taking party has no rightful claim. Interpact's assertion, here, is different: It alleges that MIS Training has "refused" to provide to Interpact, after termination of the joint venture Agreement, data as to which both Interpact and MIS Training (as co-joint venturers) had equal claims during the life of the joint venture. Put another way, Interpact is complaining that MIS Training has not retroactively <u>shared</u> joint venture information with Interpact. Evidently, it is seeking to package its complaint as a "conversion" claim because it is plain that the joint venture Agreement contains no contractual requirement that MIS Training share such data with Interpact after the joint venture ended. Innovative as the theory may be, Interpact's effort must be denied, because the common-law tort of conversion cannot stretch that far.

## IV.    Count IX Has Failed to State a Claim for Violation of the Florida Deceptive and Unfair Trade Practices Act.

In Count IX of its Counterclaims, Interpact seeks a declaration that MIS Training has violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.165, <u>et seq.</u> The count is duplicative of Count VIII, in which Interpact seeks similar declaratory relief under Mass. Gen. Laws ch. 93A, § 11. Count IX must be dismissed because FDUTPA does not apply to this case, in which Interpact is complaining of alleged infringing activities that Interpact alleges transpired in Massachusetts, where MIS Training is located.

Like Chapter 93A, FDUTPA is a consumer protection statute. <u>Packaging Corp. Int'l. v. Travenol Laboratories</u>, 566 F. Supp. 1480 (S.D. Fla. 1983). It provides in relevant part: "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat.

§ 501.204. The statute "seeks to prohibit unfair, deceptive and/or unconscionable practices which have transpired within the territorial boundaries of this state without limitation." Millennium Communications & Fulfillment, Inc. v. Attorney General, 761 So.2d 1256, 1262 (Fla. Dist. Ct. App. 2000) (emphasis added).

Interpact's claim under FDUTPA must be dismissed because it has not alleged any practices "which have transpired within the territorial boundaries" of Florida. Cf. Millennium Communications, 761 So.2d at 1262 (applying the statute to a case in which "the offending conduct occurred entirely within" Florida, even though the plaintiffs resided outside of Florida). To the contrary, the only geographical allegations of the Counterclaims state that MIS Training is located in Massachusetts (Compl. ¶ 2; Answer ¶ 2), that Interpact is in Florida (Compl. ¶ 3; Answer ¶ 3), and that "MIS [Training] has used and continues to use the InfowarCon mark in promoting and marketing conferences from the Commonwealth of Massachusetts." (Countercl. ¶ 41) (emphasis added). Thus, FDUTPA – a law intended to protected aggrieved persons from conduct that transpires within Florida – does not apply to this action, and Count IX must be dismissed.[9]

---

[9] The same result would be compelled by a conflicts of laws analysis. "The same choice-of-law principles that determine whether a plaintiff has a claim under a particular state's common law apply to resolve conflicts between application of competing states' statutes." Bergeron v. Philip Morris, Inc., 100 F. Supp. 2d 164, 169 (E.D.N.Y. 2000) (citing Volt Sys. Dev. Corp. v. Raytheon Co., 1555 A.D.2d 309, 309-10, 547 N.Y.S.2d 280 (1st Dept. 1989) (applying New York choice-of-law principles in concluding that Chapter 93A, instead of New York consumer protection law, governs dispute)). Generally, "when facing a claim that does not arise under the Constitution or the laws of the United States, a federal court must apply the substantive law of the forum in which it sits, including that state's conflict-of-laws provisions." Dykes v. DePuy, Inc., 140 F.3d 31, 39 (1st Cir. 1998) (citing Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Massachusetts applies a "functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole." Bushkin Assoc., Inc. v. Raytheon Co., 393 Mass. 622, 473 N.E.2d 662 (1985); Millipore Corp. v. Travelers Indem. Co., 115 F.3d 21, 30 (1st Cir. 1997) (applying Bushkin). Here, where the acts complained of occurred in Massachusetts (Countercl. ¶ 41), and where MIS Training – the party whose conduct is to be regulated – is located in Massachusetts and allegedly engaged in the disputed activity in Massachusetts, it is appropriate that Massachusetts law govern this action. Therefore, Count IX, asserting claims under the Florida statute, must be dismissed.

- 13 -

**CONCLUSION**

WHEREFORE, MIS Training requests that this Court dismiss Counts III, IV, V and IX

of Interpact's Counterclaims.

Respectfully submitted,

MIS TRAINING INSTITUTE LLC

By its attorneys,

Dated:  October 22, 2004

Robert A. Bertsche, BBO #554333
Jeffrey A. Dretler, BBO#558953
Amy E. Serino, BBO#643664
PRINCE, LOBEL, GLOVSKY & TYE LLP
585 Commercial Street
Boston, MA  02109
(617) 456-8000

- 14 -