UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MIS TRAINING INSTITUTE LLC,

    Plaintiff and Counterclaim Defendant,

v.

INTERPACT, INC.,

    Defendant and Counterclaim Plaintiff.

Civil Action No. 04-10538-RGS

## AMENDED COUNTERCLAIMS

In accordance with Fed. R. Civ. P. 15(a), Defendant and Counterclaim Plaintiff Interpact, Inc. ("Interpact") hereby submits these amended counterclaims, amending and/or withdrawing Counts III, IV, V, and IX of its original counterclaims.

### Parties

1. Counterclaim Plaintiff Interpact, Inc. ("Interpact") is a Delaware corporation with its principal place of business in Seminole, Florida.

2. On information and belief, Counterclaim Defendant MIS Training Institute LLC ("MIS") is a Delaware limited liability company with a principal place of business in Framingham, Massachusetts, and is the successor-in-interest to MIS Training Institute, Inc.

### Jurisdiction

3. These are compulsory counterclaims, because the Court has denied Interpact's motion to dismiss this action, or, in the alternative, to transfer this action to United States District Court for the Middle District of Florida, where a related action is pending.

Facts

4. In 1997, MIS and Interpact entered into a five-year joint venture agreement (the "Agreement"). The Agreement required that they work together to promote, market, and conduct annual conferences on information security under the name *InforwarCon*, a concept and trade name originally developed by Winn Schwartau, the president of Interpact.

5. As part of the Agreement, Interpact applied for and obtained a federal trademark of the name *InfowarCon*, and then assigned the use of that name to the joint venture for the term of the Agreement.

6. MIS knew that, when it signed the Agreement with Interpact, the rights to the registered name *InfowarCon* would remain with Interpact upon expiration of the Agreement.

7. As part of the Agreement and the joint venture relationship, Interpact shared with MIS materials from previous *InfowarCon* conferences, including speaker lists, vendor lists, attendee lists, and other conference-related materials.

8. During the term of the joint venture, Interpact provided all materials requested by MIS to conduct the *InfowarCon* conferences from 1998 through 2002.

9. The parties conducted the *InfowarCon* conference for each of the five years required under the Agreement.

10. The last *InfowarCon* conference planned during the term of the Agreement was scheduled to take place in September 2002. That conference took place in September 2002.

11. After the September 2002 *InfowarCon* conference, the Agreement was not renewed.

12. When the Agreement was not renewed, Interpact retained the exclusive rights to the *InfowarCon* trademark.

13. In October 2002, after the last *InfowarCon* conference scheduled under the Agreement took place, Interpact contracted with a third party, Reed Exhibitions (a division of Reed Elsevier, Inc.), for use of the *InfowarCon* name and conference concept over the next 20 years.

14. MIS had full knowledge that Interpact intended to use the *InfowarCon* mark to conduct annual conferences with Reed Exhibitions. Nevertheless, MIS continued to use the *InfowarCon* mark to advertise its own competing conference in 2003, which it called *The Forum on Information Warfare*.

15. When Interpact and Reed Exhibitions attempted to promote and market their first conference in 2003, they learned that MIS was using the *InfowarCon* mark to promote and market a competing conference.

16. In marketing and producing *The Forum on Information Warfare*, MIS used attendee lists, speaker lists, vendor lists, exhibitor lists, and other materials that had been provided by Interpact as part of the Agreement and/or that had been developed by the joint venture during the term of the Agreement.

17. In marketing and producing *The Forum on Information Warfare*, MIS used the *InfowarCon* mark in its promotional brochures for its conference and embedded the mark into its web-based marketing materials so that internet search engines would direct inquiries for "InfowarCon" to the MIS website.

18. In marketing and producing *The Forum on Information Warfare*, MIS used an electronic mass mailing campaign to prospective attendees and exhibitors that indicated that the name of its conference had been renamed from the *InfowarCon* conference.

19. MIS's use of the *InfowarCon* mark was intended to make prospective speakers, attendees, and exhibitors believe that MIS owned the *InfowarCon* mark.

20. MIS's use of the *InfowarCon* mark was intended to make prospective speakers, attendees, and exhibitors believe that *The Forum on Information Warfare* was the same conference as the previous *InforwarCon* conferences, with a different name.

21. MIS understood that Interpact was conducting an *InfowarCon* conference in 2003 and that *The Forum on Information Warfare* was not the same as the *InfowarCon* conference.

22. MIS provided prospective attendees of *The Forum on Information Warfare* with a .pdf computer file that contained the *InfowarCon* mark.

23. MIS's employees left telephone messages with prospective attendees of *The Forum on Information Warfare* stating that the name of the *InfowarCon* conference had been renamed to *The Forum on Information Warfare*.

24. MIS also offered some prospective attendees and exhibitors of *The Forum on Information Warfare* from previous *InfowarCon* conferences with what they referred to as "alumni" discounts.

25. MIS's use of the *InfowarCon* mark caused actual confusion, deception, and misrepresentation as to the source of its conference and services being provided.

26. The resulting confusion caused by MIS contributed directly to a loss of profits for the 2003 *InfowarCon* conference, a loss of goodwill amongst previous *InfowarCon* attendees, speakers, and exhibitors, and ultimately led to the cancellation of Interpact's 20-year contract with Reed Exhibitions.

# COUNT I
## (Unfair Competition and Trademark Infringement in Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

27. Interpact hereby repeats and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

28. Interpact's *InfowarCon* conference and MIS's *The Forum on Information Warfare* are closely related in terms of the services and the prospective attendees, speakers, and exhibitors.

29. After expiration of the Agreement, MIS no longer had any contractual right to use the name *InforwarCon*, and had no right to market its conference *The Forum on Information Warfare* by using the *InfowarCon* mark or by informing people that *The Forum on Information Warfare* was the same conference as *InfowarCon*, under a different name.

30. The use by MIS of the *InfowarCon* mark in marketing and promoting a competing conference – *The Forum on Information Warfare* – in literature, on its website, and/or in telemarketing has caused and is likely to continue to cause confusion or mistake or deception in the minds of prospective attendees, speakers, and exhibitors as to the source of the conferences, and to create the false impression that *The Forum on Information Warfare* in some way originates with or is sponsored or endorsed by Interpact, to Interpact's irreparable harm and detriment.

31. MIS's use of the *InfowarCon* mark constitutes unfair competition and infringement of Interpact's mark, in violation of 15 U.S.C. § 1125(a).

32. As a direct and proximate result of MIS's actions, Interpact has been, and will continue to be, irreparably harmed.

## COUNT II
### (Common Law Unfair Competition and Trademark Infringement)

33. Interpact hereby repeats and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

34. Interpact had used the *InfowarCon* mark in promoting and conducting conferences before the Agreement. Pursuant to the Agreement, in 1998, Interpact applied for and obtained a federal trademark of the *InfowarCon* mark, and then assigned the use of that mark to the joint venture for the term of the Agreement.

35. Interpact has generated substantial goodwill and thereby acquired common law trademark rights in and to the trademark *InfowarCon*.

36. MIS deliberately adopted and used, and continues to use, Interpact's *InfowarCon* mark in promoting and conducting conferences.

37. Any right that MIS once had to use the *InfowarCon* mark in connection with the Agreement expired upon expiration of the Agreement.

38. MIS's use of the *InfowarCon* mark after expiration of the Agreement constitutes unfair competition and infringement of Interpact's common law rights to the exclusive use of the *InfowarCon* mark.

39. As a direct and proximate result of MIS's actions, Interpact has been, and will continue to be, irreparably harmed.

## COUNT III
### (Breach of Contract)

40. Interpact hereby repeats and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

41. Pursuant to the Agreement, in 1998, Interpact applied for and obtained federal trademark registration for the *InfowarCon* mark, and then assigned the use of that mark to MIS to use on behalf of the joint venture during the term of the Agreement.

42. Any rights that MIS once had to use the *InfowarCon* mark in connection with the Agreement expired upon expiration of the Agreement.

43. MIS's use of the *InfowarCon* mark after expiration of the Agreement constitutes a breach of the Agreement.

44. As part of the Agreement, Interpact shared with MIS materials from previous *InfowarCon* conferences, including speaker lists, vendor lists, and attendee lists, and other conference-related materials.

45. In accordance with the Agreement, Interpact also provided materials requested by MIS to conduct the *InfowarCon* conferences from 1998 through 2002.

46. After the expiration of the Agreement, Interpact requested from MIS certain materials that had been provided by Interpact as part of the Agreement and that had been developed by the joint venture in conducting the *InfowarCon* conferences during the term of the Agreement.

47. Interpact had an ownership interest in and a legal right to use the requested materials.

48. MIS refused to provide Interpact with the requested information.

49. MIS's refusal to provide Interpact with the requested materials was without justification.

50. MIS's actions constitute a breach of the Agreement.

51. As a direct and proximate result of MIS's actions, Interpact has been, and will continue to be, irreparably harmed.

## COUNT IV
### (Breach of the Covenant of Good Faith and Fair Dealing)

52. Interpact hereby repeats and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

53. Pursuant to the Agreement, Interpact and MIS entered into a joint venture relationship.

54. As a joint venture partner with Interpact, MIS owed Interpact a fiduciary duty to share the assets of the joint venture with Interpact and not to keep any joint venture assets to itself and from Interpact.

55. As part of the joint venture agreement, MIS also owed Interpact a duty of good faith and fair dealing.

56. As part of the Agreement and the joint venture relationship, Interpact shared with MIS materials from previous *InfowarCon* conferences, including speaker lists, vendor lists, and attendee lists, and other conference-related materials.

57. During the term of the joint venture, Interpact provided all materials requested by MIS to conduct the *InfowarCon* conferences from 1998 through 2002.

58. After the expiration of the Agreement, Interpact requested from MIS certain materials that had been provided by Interpact as part of the Agreement and that had been developed by the joint venture in conducting the *InfowarCon* conferences during the term of the Agreement.

59. Interpact had an ownership interest in and a legal right to use the requested materials.

60. MIS knew that the requested information was important to Interpact in conducting an *InfowarCon* conference in 2003.

61. MIS refused to provide Interpact with the requested information.

62. MIS's refusal to provide Interpact with the requested materials was without justification.

63. By its actions, MIS breached its fiduciary duty owed to Interpact and breached the covenant of good faith and fair dealing inherent in the Agreement.

64. As a direct and proximate result of MIS's actions, Interpact has been, and will continue to be, irreparably harmed.

## **COUNT V**
### **(Tortious Interference with Advantageous Business Relations)**

65. Interpact hereby repeats and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

66. Interpact has had ongoing business relationships with its customers, vendors, and attendees of its conferences for many years. Interpact has spent considerable time and money developing those relationships.

67. During the course of its joint venture with Interpact, MIS gained important knowledge about the identity of persons with whom Interpact had those business relationships.

68. After expiration of the Agreement, MIS contacted persons that it knew to have a business relationship with Interpact and misrepresented to those persons both the nature of MIS's continuing relationship with the *InfowarCon* conference and the actual promoter of the *InfowarCon* conferences after 2002.

69. In contacting those persons, MIS used – in marketing literature, during telemarketing calls, and on its website – the *InfowarCon* mark.

70. MIS's actions were taken with the express purpose of deceiving prospective conference attendees, speakers, and vendors into believing that MIS's *The Forum on Information Warfare* was related to *InfowarCon* and/or the successor to the *InfowarCon* conference.

71. MIS's actions were deceptive and improper.

72. MIS's actions were done with the improper motive of attempting to sever Interpact's established business relationships and to handicap Interpact's ability to conduct further *InfowarCon* conferences.

73. As a direct and proximate result of MIS's actions, Interpact has been, and will continue to be, irreparably harmed.

## COUNT VI
### (Tortious Interference with Contractual Relations)

74. Interpact hereby repeats and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

75. Interpact told MIS about its contractual relationship with Reed Exhibitions.

76. After expiration of the Agreement, Interpact requested from MIS information about attendees, speakers, and vendors from previous *InfowarCon* conferences. Interpact also informed MIS

that it needed the requested information to conduct the 2003 *InfowarCon* conference with Reed Exhibitions.

77. MIS refused to provide Interpact with the requested information.

78. MIS knew that its refusal to provide the requested information would negatively impact both the 2003 *InfowarCon* conference and Interpact's relationship with Reed Exhibitions.

79. Interpact requested that MIS stop using the *InfowarCon* name to promote and market its competing conference, *The Forum on Information Warfare*.

80. MIS knew that its use of the *InfowarCon* mark in 2003 would negatively impact both the 2003 *InfowarCon* conference and Interpact's relationship with Reed Exhibitions.

81. Through its actions, as stated above, MIS caused the 2003 *InfowarCon* conference to lose money and caused the cancellation of Interpact's contract with Reed Exhibitions.

82. MIS's actions were deceptive and improper.

83. MIS's actions were done with the improper motive of attempting to destroy the *InfowarCon* conference and to destroy Interpact's contractual relationship with Reed Exhibitions.

84. As a direct and proximate result of MIS's actions, Interpact has been, and will continue to be, irreparably harmed.

## COUNT VII
### (Violation of M.G.L. c. 93A)

85. Interpact hereby repeats and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

86. Interpact and MIS were at all relevant times engaged in the conduct of trade or commerce within the meaning of M.G.L. c. 93A, § 11.

87. MIS's actions as described herein constitute unfair and deceptive acts or practices, in violation of M.G.L. c. 93A

88. MIS's unfair and deceptive acts were knowing and willful.

89. As a direct and proximate result of MIS's actions, Interpact has been, and will continue to be, irreparably harmed.

### Prayer for Relief

WHEREFORE, Interpact respectfully prays that this Court enter judgment in its favor and against MIS, as follows:

a) Declaring that MIS's use of the *InfowarCon* mark constitutes unfair competition and trademark infringement in violation of 15 U.S.C. § 1125(a) and in violation of Massachusetts and Federal common law; that MIS's refusal to provide information and materials to which Interpact is legally entitled as part of the joint venture constitutes a breach of fiduciary duty and breach of the covenant of good faith and fair dealing; that MIS, by its actions, has intentionally and improperly interfered with Interpact's advantageous business relationships with customers and its contractual relationship with Reed Exhibitions; that MIS has acted knowingly and willfully; and that MIS's actions constitute a knowing and willful violation of M.G.L. c. 93A;

b) Preliminarily and permanently enjoining MIS, together with its agents, servants and employees, officers, directors, parents, subsidiaries, affiliates, successors and assigns, and all others acting or purporting to act in concert with any of them, from using the *InfowarCon* mark or otherwise infringing in any manner Interpact's exclusive rights in the *InfowarCon* mark;

c) Directing an accounting of all gains, profits and advantages that MIS has received or derived through *The Forum on Information Warfare*, through other use of the *InfowarCon* mark, and through use of the information that MIS refused to provide to Interpact;

d) Requiring MIS to deliver for impoundment and destruction after final judgment any and all products, labels, documents, and other things in its possession or control, or in the possession or control of its agents, that bear the *InfowarCon* mark, and to remove all such references to the *InfowarCon* mark on MIS's website and other electronically-stored data;

e) Awarding Interpact actual damages and treble damages, plus interest, costs of suit, and reasonable attorneys fees; and

f) Granting such other and further relief as the Court deems just and proper.

### Jury Trial

Interpact requests a trial by jury on all claims so triable.

Respectfully submitted,

Dated:  October 26, 2004

/s/  Jason W. Morgan
Jason W. Morgan (BBO #633802)
Drohan, Hughes, Hoffman & Tocchio, P.C.
175 Derby Street, Suite 30
Hingham, MA  02043
(781) 749-7200

Terrence S. Buchert (*pro hac vice*)
P.O. Box 47121
St. Petersburg, FL 33743
(727) 302-0351

*Attorneys for Defendant and Counterclaim Plaintiff Interpact, Inc.*

**CERTIFICATE OF SERVICE**

I, Jason W. Morgan, hereby certify that, on October 26, 2004, I served a true and correct copy of the foregoing, by first class mail, to counsel for Plaintiff, Robert A. Bertsche, Esq., Prince, Lobel, Glovsky & Tye LLP, 585 Commercial Street, Boston, MA 02109.

/s/  Jason W. Morgan
Jason W. Morgan