UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MIS TRAINING INSTITUTE LLC,<br><br>Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>INTERPACT, INC.,<br><br>Defendant and Counterclaim Plaintiff. | Civ. Action. No. 04-10538-RGS |

**MEMORANDUM IN SUPPORT OF
MIS TRAINING INSTITUTE LLC'S MOTION TO DISMISS
COUNTS III AND IV OF INTERPACT, INC.'S AMENDED COUNTERCLAIMS**

MIS Training Institute LLC ("MIS Training") submits this memorandum in support of its motion to dismiss Counts III and IV of the "Amended Counterclaims" (Dkt No. 29) filed by Interpact, Inc. ("Interpact") on October 26, 2004.[1] The two counts must be dismissed, first, because the omitted counterclaims may not be added by amendment except with leave of court, Fed. R. Civ. P. 13(f), and, second, because they fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).[2]

**INTERPACT'S ALLEGATIONS[3]**

In 1997, MIS Training and Interpact entered into an agreement to produce a series of educational seminars or conferences on the subject of "information warfare" (the "Agreement"

---

[1] By filing this document – without four of the counts that Interpact had previously asserted in its original counterclaims on September 17, 2004 – Interpact voluntarily dismissed its counterclaims for state and federal trademark dilution, conversion, and violation of the Florida consumer protection statute, all of which had been the subject of MIS Training's Motion to Dismiss Certain of Interpact, Inc.'s Counterclaims (Dkt. No. 26).

[2] Those counts of the Amended Counterclaims not addressed herein are the subject of MIS Training's Answer to Certain of Interpact, Inc.'s Amended Counterclaims.

[3] For purposes of this motion only, MIS Training takes as true the factual allegations of Interpact's Amended Counterclaims.

or "InfowarCon Agreement"). (Interpact Amended Counterclaims "Am. Countercl." ¶ 4.) The Agreement was for a term of five years (1998, 1999, 2000, 2001, and 2002), with an option to renew for an additional five years upon mutual agreement. (Am. Countercl. ¶¶ 8-12.) Conferences took place during each year of the Agreement, and were presented in cooperation with Interpact. (Am. Countercl. ¶ 9.) Pursuant to the Agreement, all of the conferences conducted were to be marketed under the title "InfowarCon" (Am. Countercl. ¶ 4) – a mark for which Interpact did not seek federal trademark registration until 1998, after entering into the Agreement. Interpact then assigned to MIS Training the right to use the name.[4] (Am. Countercl. ¶ 5.)

In October 2002, during the last year of the Agreement, Interpact entered into an agreement to sell the InfowarCon conferences to Reed Exhibitions, a division of Reed Elsevier Inc. ("Reed Exhibitions"), and to sponsor and promote InfowarCon conferences conducted by Reed. (Am. Countercl. ¶ 13.) Interpact and MIS Training did not renew the Agreement. (Am. Countercl. ¶ 11.) Interpact (in conjunction with Reed Exhibitions) and MIS Training then produced their own respective conferences relating to the subject of information warfare. In 2003, MIS Training produced a conference titled "The Forum on Information Warfare." (Am. Countercl. ¶ 14.) Interpact and Reed marketed and presented a conference titled "InfowarCon," which fared poorly. (Am. Countercl. ¶¶ 14-15, 26.)

In its Amended Counterclaims, Interpact alleges that while marketing and promoting its 2003 "Forum on Information Warfare," MIS Training: (i) used attendee lists, speaker lists, and

---

[4] Interpact's allegation that the *InfowarCon* mark was assigned to the "joint venture," instead of to MIS Training alone (Am. Countercl. ¶ 5), must be disregarded, as it is expressly contradicted by the terms of the Agreement. (Ex. 1 at 1 ("The name InfoWarCon will be registered with the Patent and Trade Mark Office within 10 days of the signing of this contract and the rights to use that name will be assigned to MIS as part of this contract.").) As discussed below, the Court may properly consider the terms of the Agreement (attached as Exhibit 1) in considering this motion to dismiss.

other materials that had been provided to MIS Training by Interpact or were developed by the parties during the term of the Agreement; (ii) made reference to the *InfowarCon* mark in promotional brochures; (iii) "embedded" the *InfowarCon* mark in internet-based marketing materials, with the result that internet searches for "InfowarCon" led to MIS Training's site; (iv) sent electronic mailings that "indicated" to prospective conference-goers that "the name of its conference had been renamed from the *InfowarCon* conference"; (v) left telephone messages with some prospective attendees stating that the conference had been renamed; (vi) offered so-called "alumni discounts" to some prospective attendees and exhibitors who had attended previous InfowarCon conferences; and (vii) provided prospective attendees with a computer file "that contained the *InfowarCon* mark." (Am. Countercl. ¶¶ 16-24.) Interpact contends that, by these acts, MIS Training caused confusion that contributed to the poor results of Interpact's 2003 conference and led to other harmful consequences, including Reed Exhibition's decision to cancel its contract with Interpact. (Am. Countercl. ¶¶ 15-26.)

Interpact further asserts that at some time <u>after the expiration</u> of its Agreement with MIS Training, it requested that MIS Training provide it with copies of certain speaker lists, vendor lists, attendee lists, and other conference-related materials that had been developed by the parties during the term of the Agreement, and that MIS Training allegedly refused to provide the requested materials. (Am. Countercl. ¶¶ 44, 46, 48, 56, 58 and 61.)

## ARGUMENT

### I.   Counts III and IV Must Be Dismissed Because They Are "Omitted Counterclaims" Filed Without Leave of Court.

MIS Training filed its Complaint for declaratory judgment in this action on March 17, 2004 (Dkt. No. 1), after Interpact had threatened imminent litigation. Interpact, Inc. filed its Answer and Counterclaims on September 17, 2004. (Dkt. No. 22.) MIS Training filed a

responsive pleading – its Answer to Certain Counterclaims (Dkt. No. 28) – early on October 26, 2004, two business days after filing its motion to dismiss Counts III, IV, V, and IX of those original Counterclaims (Dkt. Nos. 26, 27).

Instead of opposing the motion to dismiss, and despite the fact that MIS Training had already filed a responsive pleading, Interpact countered by filing "Amended Counterclaims" late in the day on October 26, 2004. (Dkt. No. 29.) The "Amended Counterclaims" no longer include the four claims that MIS Training had previously sought to dismiss. Therefore, those four claims must be considered to be voluntarily dismissed by Interpact.

The Amended Counterclaims do, however, include two new counterclaims, which Interpact asserts are "compulsory counterclaims" (Am. Countercl. ¶ 3): one for breach of contract (Count III) and one for breach of the implied covenant of good faith and fair dealing pursuant to Massachusetts law (Count IV). Counts III and IV must be dismissed because "omitted counterclaims" cannot be added by amendment except by leave of court. See Fed. R. Civ. P. 13(a) (compulsory counterclaims must be raised in the responsive pleading) and 13(f) (omitted counterclaims may be added only by leave of court).

Moreover, even had Interpact moved for leave to amend its counterclaims, this Court should not grant such leave because, for the reasons set out below in support of dismissing the counterclaims, such an amendment would be futile. See Maine State Bldg. and Constr. Trades Council v. United States Dep't of Labor, 359 F.3d 14, 18 (1st Cir. 2004) (affirming the district court's rejection of putative amendments on the ground that the amendments would be futile); Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994) ("Leave to amend is to be 'freely given,' Fed. R. Civ. P. 15(a), unless it would be futile").

## II.  Count III Fails to State a Claim for Breach of Contract.

Count III, alleging breach of the 1997 Agreement between MIS Training and Interpact, must be dismissed because the purported conduct of MIS Training underlying this claim – using the InfowarCon mark and refusing to provide certain information requested by Interpact after expiration of the Agreement (Am. Countercl. ¶¶ 41-49) – was not conduct prohibited by the Agreement, and in any event occurred at a time when the Agreement had already expired and was no longer in force (Am. Countercl. ¶¶ 43, 46).

Nothing in the Agreement, attached as Ex. 1 hereto,[5] prohibits the conduct targeted by Count III. Rather, in asserting this claim for "breach of contract," Interpact is asking this Court to impose on MIS Training contractual obligations to which the parties never agreed. The Court should decline to do so. See Accusoft Corp. v. Palo, 237 F.3d 31, 41-42 (1st Cir. 2001) ("we do not consider it our place to rewrite contracts freely entered into between sophisticated business entities"); Northern Heel Corp. v. Compo Indus., Inc., 851 F.2d 456, 466 (1st Cir. 1988) ("It is unbefitting that we accomplish by judicial fiat what [a party] neglected to achieve contractually. We decline to rewrite the agreement between the parties to include a representation which they were mutually content to let slide in the course of their negotiations."); Mathewson Corp. v.

---

[5]  Because Interpact's allegations are expressly linked to – and dependent upon – the InfowarCon Agreement, the Court may properly consider the terms of the Agreement (attached hereto as Exhibit 1) in considering this motion to dismiss. Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (concluding that a contrary approach would permit a plaintiff to "thwart the consideration of a critical document merely by omitting it from the complaint"). Indeed, in its Answer (Dkt. No. 22), Interpact repeatedly suggests that the Agreement "speaks for itself." (Answer ¶¶ 9-14, 17, 18.)

Likewise, the Court may also consider the information contained in the U.S. Patent and Trademark Office's public notice regarding the *InfowarCon* service mark (attached hereto as Exhibit 2) as a public record. See Boateng v. Interamerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000); see also Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) ("courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to the plaintiff's claim; or for documents sufficiently referred to in the complaint"). Consideration of these exhibits does not necessitate that this motion to dismiss be treated as a motion for summary judgment. Boateng, 210 F.3d at 60; Watterson, 987 F.2d at 3.

Allied Marine Indus., Inc., 827 F.2d 850, 853 (1st Cir. 1987) ("contracts depend on objective manifestations of consent and not on uncommunicated subjective expectations").

Interpact alleges that MIS Training breached the Agreement <u>after it had expired</u> by (i) using the *InfowarCon* mark and (ii) refusing to give Interpact certain materials that had been provided to MIS Training under the Agreement and that had been developed by the parties during the term of the Agreement. (Am. Countercl. ¶¶ 43, 46, 48, 50.) The Agreement did not prohibit this conduct, nor purport to impose any post-Agreement obligations on the parties. (Ex. 1.) In fact, Interpact assigned the rights to use the *InfowarCon* mark to MIS Training as part of the Agreement. (Ex. 1 at 1 ("The name InfoWarCon will be registered with the Patent and Trade Mark Office within 10 days of the signing this contract and the rights to use that name will be <u>assigned to MIS as part of this contract</u>." (Emphasis added.))) The Agreement did not contain any prohibition at all on MIS Training's use of the mark after the Agreement expired. (Ex. 1.)

Even if the Court accepts Interpact's unsupported legal conclusion[6] that MIS Training's rights to use the name ended with the expiration of the Agreement (Am. Countercl. ¶ 42), it does not follow that post-Agreement use of the name gives rise to a claim for <u>breach of contract</u>. Interpact has attempted to recast its trademark infringement claims, which are the subject of Counts I and II of the Amended Counterclaims, as a common-law claim for breach of contract, despite the absence of any contractual language prohibiting MIS Training's purported conduct.

Interpact's allegation that MIS Training refused, post-Agreement, to provide materials it requested also fails to support a claim for breach of contract, because Interpact has identified no provision of the Agreement imposing such an obligation. (Am. Countercl. ¶¶ 40-51.) Whatever

---

[6] In considering this motion to dismiss, the Court must accept as true only all <u>well pleaded</u> factual allegations in the Amended Counterclaims, and must draw only all <u>reasonable</u> inferences in favor of Interpact as the counterclaim plaintiff. See Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir. 1987). The Court need not credit "those 'facts' which have since been conclusively contradicted by the plaintiffs' concessions or otherwise," and should not rely on "bald assertions" or "unsupportable conclusions." Chongris, 811 F.2d at 37.

injury Interpact contends to have suffered in connection with this purported conduct of MIS Training, it does not arise from the breach of any obligation created by the parties' contract. Count III should therefore be dismissed. See Northern Heel, 851 F.2d at 466.

### III. Count IV Fails to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing.

Count IV, alleging breach of the implied covenant of good faith and fair dealing inherent in the Agreement, must be dismissed for similar reasons. The conduct at issue in Count IV is the same as that which underlies Count III: refusing to provide information requested by Interpact after expiration of the Agreement (Am. Countercl. ¶¶ 58, 61). Such conduct is not prohibited by the terms of the Agreement, and indeed is outside the Agreement's scope.

Interpact's allegation of breach is based solely on MIS Training's alleged refusal to comply with Interpact's post-Agreement request for conference-related materials. (Am. Countercl. ¶¶ 52-64.) However, the Agreement did not impose any obligation on MIS Training to provide such materials. As a matter of law, the covenant of good faith and fair dealing cannot have imposed additional obligations beyond those agreed to in the contract, and it is therefore impossible that MIS Training's conduct could have violated the covenant. See Uno Rest., Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004) (holding that the covenant may not be invoked "to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance"); see also Sparks v. Fidelity Nat'l Title Ins. Co., 294 F.3d 259, 274 (1st Cir. 2002); Lohnes v. Level 3 Communications, Inc., 272 F.3d 49, 61-62 (1st Cir. 2001).

Count IV also fails because the covenant of good faith and fair dealing, which relates to the manner in which parties perform under the contract, see Uno Rest., 441 Mass. at 385, does

not survive the expiration of the contract. See Accusoft Corp. v. Palo, 237 F.3d 1, 45 (1st Cir. 2001) (holding that the covenant "applies only to conduct during performance of the contract"); FDIC v. LeBlanc, 85 F.3d 815, 822 (1st Cir. 1996) (finding no claim for breach of the covenant of good faith and fair dealing where the alleged violation occurred after a default ended the parties' contractual relationship); see also Blank v. Chelmsford Ob/Gyn, P.C., 420 Mass. 404, 408-09 (1995). By Interpact's own admission, none of MIS Training's purportedly improper conduct occurred during the life of the Agreement.

As a matter of law, the covenant of good faith and fair dealing protects the fruits of an agreement, but does not create any additional rights or duties beyond those described in the Agreement. Likewise, any obligation of good faith and fair dealing terminated upon expiration of the Agreement. Therefore, MIS Training's purportedly improper conduct (none of which fell within the scope of the Agreement, and all of which occurred after the Agreement had expired, see Am. Countercl. ¶ 58) cannot be a breach of such implied covenant.

To the extent that Count IV purports to state that MIS Training's conduct also breached a fiduciary duty to Interpact (Am. Countercl. ¶ 63), this claim must be dismissed on similar grounds. Assuming, arguendo, that Interpact and MIS Training owed each other a fiduciary duty as a result of their business relationship (Am. Countercl. ¶¶ 53-54), it would not have survived the expiration of the Agreement. See Micromuse, Inc. v. Micromuse, PLC, 304 F. Supp. 2d 202, 214-15 (D. Mass. 2004). Interpact has failed to state a claim for breach of the covenant of good faith and fair dealing or for breach of a fiduciary duty, and Count IV should therefore be dismissed.

## CONCLUSION

WHEREFORE, MIS Training requests that this Court dismiss Counts III and IV of Interpact's Amended Counterclaims.

Respectfully submitted,

MIS TRAINING INSTITUTE LLC

By its attorneys,

Dated:  November 5, 2004

Robert A. Bertsche, BBO #554333
Jeffrey A. Dretler, BBO #558953
Amy E. Serino, BBO #643664
PRINCE, LOBEL, GLOVSKY & TYE LLP
585 Commercial Street
Boston, MA  02109
(617) 456-8000